1  LANCE G. GREENE, SBN 164971
   LAW OFFICES OF LANCE G. GREENE
2  A PROFESSIONAL CORPORATION
   1999 Avenue of the Stars, Suite 1100
3  Century City, CA 90067
   Telephone:  (310) 407-8627
4  Facsimile:   (310) 362-0347
   E-Mail:      lgglaw@sbcglobal.net
5
   Attorneys for Plaintiff,
6  ROBERT L. CHASTAIN

7

8                  **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10                        **SAN JOSE COURTHOUSE**

11  ROBERT L. CHASTAIN; CHASTAIN            )  Case No.:
    RESEARCH GROUP, INC.                    )
12                                          )  COMPLAINT FOR:
              Plaintiffs,                   )
13                                          )     1.  Fraud, Actual, Constructive, Fraud by
          vs.                               )         Deception, Fraudulent Concealment
14                                          )     2.  Breach of Implied Covenant of Good
    SUSAN L. HOWARD (CHASTAIN);             )         Faith and Fair Dealing
15  HARRIET MAJOR; DOES 1-10                )     3.  Intentional or Negligent
                                            )         Misrepresentation
16            Defendants.                   )     4.  Negligence
                                            )
17                                          )
                                            )
18                                          )  DEMAND FOR JURY TRIAL
                                            )
19                                          )     DATE: [To Be Set]
                                            )     TIME: [To Be Set]
20                                          )     PLACE: United States District Court
                                            )            San Jose
21                                          )
                                            )
22                                          )
                                            )
23                                          )
                                            )
24                                          )
                                            )
25                                          )
                                            )
26  _____

27  **TO THE ABOVE CAPTIONED DEFENDANTS AND THEIR ATTORNEYS:**

28       CHASTAIN RESEARCH GROUP, INC., a California Corporation, authorized and

                                       -1-
                                                        COMPLAINT

registered to do business in the State of California and ROBERT L. CHASTAIN, an individual and founder, President, Chief Executive Officer, General Counsel, sole shareholder/owner (since 12/22/2008), and CHASTAIN RESEARCH GROUP, INC. allege as follows:

**STATEMENT OF JURISDICTION, PARTIES AND PROCEEDINGS**

1.      At all times herein mentioned ROBERT L. CHASTAIN ("CHASTAIN"), Plaintiff, an individual, currently residing in the State of Florida, resided in the State of California, and was authorized to do business in the State of California through his sole proprietorship R & C Consulting registered in Santa Clara County and CHASTAIN RESEARCH GROUP, INC. incorporated in the State of California in Santa Clara County.

2.      At all times herein mentioned CHASTAIN RESEARCH GROUP, INC., was and remains a California Corporation, duly organized and existing under and by virtue of the laws of the State of California since September 17, 1993 and is authorized and registered to do business in the State of California (hereinafter "CRG").

3.      At all times herein mentioned SUSAN L. HOWARD formerly SUSAN L. CHASTAIN ("HOWARD"), an individual, and all times relevant herein was the legal spouse (now former spouse of Plaintiff CHASTAIN), corporate officer of CRG as Secretary, Treasurer and Chief Financial Officer (CFO) and Director on the CRG Board. HOWARD currently resides in her hometown of Omaha, Nebraska, where she relocated to in 2009 from California.

4.      HARRIET MAJOR ("MAJOR"), an individual, and all times relevant herein was the mother-in-law of Plaintiff CHASTAIN, and mother of HOWARD, Director on the

COMPLAINT

Board of CRG, direct recipient of Director Stipends and rent for her Nebraska Apartment who has direct knowledge of facts and events at issue. Defendant MAJOR continues to reside in her hometown of Omaha, Nebraska as she has her whole live and resides with Defendant HOWARD.

5.    The amount in controversy exceeds $75,000.00, exclusive of interest and costs.  This Court has subject matter jurisdiction by virtue of the diversity of citizenship of the parties and the amount in controversy pursuant to 28 U.S.C. § 1332.

6.    Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 (a) (2) because a substantial part of the events or omissions giving rise to CHASTAIN's claims for relief occurred in this District.

7.    CHASTAIN and CRG are informed and believe, and based upon such information and belief, alleges that at all times herein mentioned DEFENDANTS and each of them, were the agents of their co-defendants, and in the doing of the things herein mentioned were acting in with the permission and consent of their co-defendants, and each of them.

8.    CHASTAIN and CRG, is informed and believes, and based upon such information and belief, alleges that at all times herein mentioned each of the DEFENDANTS was the agent or masters of each of their co-Defendants, and each DEFENDANT has ratified, adopted or approved the acts or omission hereinafter set forth of the remaining DEFENDANTS, and each and every other DEFENDANT as an agent, or master of each DEFENDANT has ratified, adopted or approved the acts or omissions hereinafter set forth each of the remaining DEFENDANTS.

COMPLAINT

## LEGAL BACKGROUND AND FACTS

1.      In September 1983, CHASTAIN founded sole proprietorship R&C Consulting after finishing M.S. at Texas A&M University (**See "Exhibit 1"**) focusing on statistics, SAS programming and research design while running the Research Assistance Lab that gave assistance across the University to faculty and students. Plaintiff operated R&C consulting in Texas until September 1985. At that time, CHASTAIN moved to Palo Alto, California to attend Stanford University and graduated with a Ph.D. June 1992 (**See "Exhibit 2"**).

2.      On October 3, 1992, CHASTAIN and HOWARD were married, nine years after the founding of R& C Consulting.

3.      On September 17, 1993, CHASTAIN founded Chastain Research Group, Inc. ("CRG"), a California C Corporation (**See "Exhibit 3"**), with capital and property from R&C Consulting. CHASTAIN invested the following separate property assets into CRG.  Approximately $25,000.00 in pre-marital R&C Consulting property was transferred to CRG, plus $69,500.00 in deposits from R&C Consulting along with another $94,722 in CHASTAIN personal consulting services (out of $164,222 personal consulting services invoiced and $383,804.75 gross revenue through 1994, the first year of incorporation) for a total of at least $189,180 R&C Consulting assets transferred to CRG (**See "Exhibit 4"**).

4.      In the fall of 1994, CHASTAIN applied and was accepted at Stanford, Harvard, Columbia, Boalt (Berkeley), and other law schools.  CHASTAIN continued to earn a living while preparing for and attending Stanford University Law School full time in the fall of 1994 by hiring consultants for clinical trial clients providing statistical analysis,

COMPLAINT

statistical programming, and data management services, as CHASTAIN had been doing for over 10 years.  That fall, while CHASTAIN was attending Stanford Law School, during the first semester, he was able to recruit and obtain contracts for 7 new hires as W-2 employees of CRG. During the second semester starting in January 1995, he was able to recruit and obtain contracts for 6 more new hires as W-2 employees of CRG. At that point, Defendant left her administrative part-time job at Sequoia Hospital Redwood City to work in CRG doing payroll twice a month for which she was trained by Plaintiff.  CHASTAIN was dedicated to the success of CRG, and business blossomed under his direction and dedication to its success.  It should be noted, DEFENDANT HOWARD had no clinical trial experience and has never held any position providing statistical analysis, statistical programming, or data management services for a clinical trial company at any time.  At no time did Defendant onboard an employee she recruited or a new client, all contacts came through Plaintiff's working relations with former colleagues in the Pharmaceutical, Biotech and Medical Device industries.

5.      CHASTAIN graduated from Stanford Law School in June 1997. CHASTAIN joined the law firm of Wilson Sonsini Goodrich & Rosati (WSGR) as a full-time Associate on September 1, 1997. CHASTAIN was admitted to the California Bar on November 24, 1997 (SBN 190022).

6.      Shortly after CHASTAIN joined WSGR, CRG was sued in U.S. District Court by Trilogy Consulting company for Trade Secret violations (**See "Exhibit 5"**). DEFENDANT HOWARD conspired with newly onboarded CRG employee who was a former Trilogy employee and HOWARD illegally solicited companies with proprietary

COMPLAINT

client and consultant lists stolen from Trilogy. In one fell swoop, in less than 6 months, Defendant destroyed Plaintiff's new legal career and wasted monies spent on law school as well as incurring significant legal fees paid by CRG. Although Plaintiff settled the lawsuit without paying any monies to Trilogy, CRG revenue and profits plummeted as did the number of employees from 28 in 1999 to 4 by 2002 (**See "Exhibit 6"**).  Companies and consultants refused to do business with CRG because of the uncertainty of whether CRG was finding consultants or clients through Trilogy's proprietary information and the threat of potential litigation.

7.      Direct losses for PLAINTIFFS CHASTAIN and CRG were caused by HOWARD's fraud, deception, forgery and conspiring to financially destroy CHASTAIN and CRG reputations and good standing in the community.  But for the conduct of HOWARD, CHASTAIN and CRG would not have suffered catastrophic financial damages, losses, or career devastation.

8.      Having lost his legal career at WSGR, CHASTAIN returned to CRG in 1998 resuming his position as majority owner as shown in the August 18, 1998 annual minutes transferring 51% of the shares to him (**See "Exhibit 7"**) and his position as Chief Executive Officer (CEO).  His wife at that time, DEFENDANT HOWARD, remained CRG Secretary, Treasurer, Chief Financial Officer (CFO) and member/Director of the Board.  CHASTAIN also resumed providing consulting services to CRG.

9.      On October 27, 2008, Plaintiff updated his recent application for CRG to be certified as a Service-Disabled Veteran Owned Small Business (SDVOSB) to obtain set-aside Federal Contracts (**See "Exhibit 8"**).   DEFENDANT HOWARD told Plaintiff that

COMPLAINT

he had filed a fraudulent statement with the Federal government because CRG was a woman owned company.  Defendant claimed she was majority owner of CRG with 51% of the 515,000 shares (262,650 shares) and that Plaintiff was minority owner with 49% (252,350 shares) by showing CRG minutes that gave Plaintiff 49% (**See "Exhibit 9"**). Plaintiff asked Defendant to transfer 2% so that he did not have to withdraw the SDVOSB application, but Defendant refused. Said minutes were found to have been fraudulently authored by Defendant by forensic expert because they were authored by Defendant on that same date October 27, 2008 (**See "Exhibit 10"**).

10.     The next day, October 28, 2008, upon when Defendant again refused to transfer 2% to Dr. Chastain, Dr. Chastain separated from Defendant (**See "Exhibit 11"**) and quit working for CRG forsaking his CRG medical insurance, long-term disability, and SEP-IRA benefits.  Then on the next day, October 29, 2008, Dr. Chastain took a permanent position with University of California San Francisco (UCSF) (**See "Exhibit 12"**) until April 24, 2009 (**See "Exhibit 13"**) and did not return to CRG until December 22, 2008 Marital Settlement Agreement (MSA) was signed transferring all shares to Plaintiff as 100% sole owner of CRG.

11.     On July 14, 2021 DEFENDANT HOWARD filed a lawsuit in San Mateo County (FAM0101854) seeking more money from Plaintiff 13 years after signing a 2008 MSA even though DEFENDANT HOWARD received half the proceeds from joint marital assets and a final settlement check in 2012.  There were no children stemming from marriage and no alimony issues.  This was another blatant attack on Plaintiff to extort more money from him.

COMPLAINT

12.     After the initial hearing on the Family Law Case on October 19, 2021, Dr. Chastain received an email on November 16, 2021 from Naomi Parker (**See "Exhibit 14"**), former attorney for Chastain Family Trust, with an attachment containing a facsimile sent to Ms. Parker from DEFENDANT HOWARD on August 26, 2008 (**See "Exhibit 15"**) with new re-issued CRG stock certificates (13 and 14, cancelling 11 and 12).  CRG stock certificates 13 and 14 issued 4 days before Defendant sent Ms. Parker the fax, have 262,650 shares (51%) issued to Dr. Chastain and 252,350 shares (49%).  This is substantial proof that Defendant knowingly lied about being majority owner some 60 days after issuing stock certificates 13 and 14.  At all times since incorporation, up to that point in time, Defendant was Secretary and Treasurer/Chief Financial Officer who kept all corporate records including minutes, stock certificates and stock ledger.   Dr. Chastain was either in law school or employed full-time in the practice of law from 1994 through end of 1997 prior to the Trilogy lawsuit.

13.     In the 3 years immediately after Dr. Chastain quit CRG due to Defendant's false assertion, CRG sustained losses of $346,236 (-23.5%) in 2009, $505,309 (-44.9%) in 2010, and $267,182 (-43%) in 2011 for a total of $1,118,727 (**See "Exhibit 16"**) mainly due to the damage to Dr. Chastain's reputation in quitting CRG and Defendant's lack of any direct experience in clinical trial research.

14.     Furthermore, if Dr. Chastain had discovered Defendant's fraud in 2008, Dr. Chastain would have fired Defendant immediately, thus avoiding paying Defendant an additional $101,129.14 in Nebraska expenses post 2008 (**See "Exhibit 17"**).  Besides walking away from his initial separate property investment of $189,180.00 Dr. Chastain as

COMPLAINT

Plaintiff asserts that he is owed an additional $1,219,856.14 in personal consulting services rendered to CRG due to Defendant's fraudulent acts on or about October 27, 2008.

15.     Besides 2008 fraud concerning the MSA with confirmed discovery on November 16, 2021, Dr. Chastain discovered Defendant's original intent to defraud, and the main fraudulent act perpetrated in 1998 by Defendant in Defendant's **November 23, 2021** Family Law case Response #8 (**See "Exhibit 18"**) in reply to discovery request by Dr. Chastain as Petitioner.  Defendant's Response #8 contains stock certificates that are not in Petitioner's possession, stock certificates 9, 10, 11 and 12.  These stock certificates typed by Defendant shows that Defendant issued Two hundred sixty-two Thousand Six Hundred Fifty shares (51%) to herself on August 24, 1998 and only Two hundred fifty-two Thousand Three Hundred Fifty shares (49%) to Dr. Chastain (**See "Exhibit 19"**) for which Defendant had no authority to do and expressly violated her Fiduciary duty as Director, Secretary and CFO to transfer only 49% to herself, thus, in effect stealing 2% from Plaintiff.   Certificates 11 and 12 issued on 9/15/2005 show these same amounts transferred into the Chastain Family Trust (**See "Exhibit 19"**)

16.     CRG minutes of August 18, 1998 show that 51% percent of shares should have been transferred to Dr. Chastain consistent with his belief that he was majority owner of the company he founded in 1983 from August 18, 1998 until October 27, 2008.  Curiously, Defendant's November 23, 2021 Family Law case Response #3 (**See "Exhibit 20"**)shows only 10% being transferred to Dr. Chastain in the Defendant's copy of CRG minutes from 8/18/1998.  Whether or not Defendant was trying to cheat Plaintiff out of more shares, this is inconsistent with the original authority of 51% in the original August

COMPLAINT

18, 1998 minutes as agreed to by all 3 directors, including CHASTAIN, HOWARD, and MAJOR (**See "Exhibit 7"**).

17.    But for Defendant hiding and mis-representing her non-compliance in transferring 51% of CRG shares to Dr. Chastain after the August 18, 1998 meeting, Dr. Chastain would have resigned from CRG in 1998 as he did in 2008, refused to provide further income to CRG by invoicing his services through CRG, divorced DEFENDANT HOWARD in 1998 and sued for the return of the company he founded in 1983.  But for Defendant's fraudulent acts, Dr. Chastain would not have contributed **$2,078,539.31** from personal consulting services invoiced by CRG in 1999 through 2008 (**See "Exhibit 21"**) nor would he have contributed his experience and expertise to provide **$9,941,251.35** in gross receipts (**See "Exhibit 22"**) over that same time period or paid DEFENDANT HOWARD **$783,398.33** in wages (**See "Exhibit 23"**).

18.    At no time has Defendant contributed her own personal or jointly owned monies into either the sole proprietorship, R&C consulting or CRG.  At no time has Defendant worked in clinical trials or provided statistical analysis, statistical programming, or data management services.

19.    Throughout the entire marriage, Defendant never held a full-time job. Defendant mainly did administrative tasks and bi-monthly payroll for CRG as trained by CHASTAIN.  Defendant did not independently hire employees or find clients outside of Plaintiff's professional contacts.  Defendant, by her own admission, her work logs, and her internet history, mainly played internet checkers and bridge when she wasn't helping family members rather than working for CRG.   She spent months away from CHASTAIN

COMPLAINT

and CRG in Nebraska, Texas and Florida helping her mother and her sisters at the expense of CHASTAIN and CRG.

20.     Dr. Chastain had to liquidate all of his retirement earned while working in the company he founded after Defendant canceled all of CRG's lines of credit.  To date Dr. Chastain has no IRA or 401(k) retirement funds while HOWARD enjoys her life as a millionaire at the expense of CHASTAIN and CRG.  As shown above in (**See "Exhibit 24"**), CRG gross receipts in 1999 through 2008 were $9,941,251.35 (**See "Exhibit 22"**) while total gross receipts to date are **$19,603,878** (**See "Exhibit 25"**) for which Dr. Chastain has nothing to show for any of his efforts.

21.     Plaintiffs CHASTAIN and CRG contend that HOWARD and MAJOR conspired to obtain an unfair advantage by "in effect" stealing CRG ownership and unjustly rewarding themselves with corporate monies against their duties as Directors and conspired to obtain over $70,000 towards the purchase of their house in 2009 and in which they currently reside.  MAJOR received $24,712.59 in Director stipends beginning in 2002 which continued quarterly until 3rd quarter 2008 on 9/25/2008 (**See "Exhibit 26"**). Plaintiff CHASTAIN separated from HOWARD approximately one month after the last Director stipend was paid (10/28/2008) with a Marital Settlement Agreement (MSA) signed on 12/22/2008 when Defendants were removed from the CRG Board of Directors. However, Defendants HOWARD and MAJOR began raiding CRG corporate funds in the last quarter of 2008 (11/25/2008), approximately one month after marital separation and one month before MSA was signed to pay for the entire amount of MAJOR's Nebraska apartment in which continued for 9 months and totaled $13,585 (**See "Exhibit 27"**) until

COMPLAINT

1   Defendant HOWARD's employment was terminated and she was no longer Treasurer and

2   CFO of CRG.  Besides those abuses of their duties as Directors and HOWARD's position

3   as Treasure and CFO, during 2009, after Defendants were no longer Directors, they also

4   used the CRG corporate credit card for personal purchases such as gas, food, and other

5   personal items at COSTCO.

6          22.     Plaintiff contends that he did not discover or know of any facts that would

7   have caused a reasonable person to discover that his wife and mother-in-law would have

8   conspired and acted to harm him in any way.  Plaintiff contends that a reasonable and

9   diligent investigation would **NOT** have disclosed such information before November 23,

10  2021 because at all times the relevant and accurate CRG documents were in Defendants'

11  possession and intentionally hidden or fraudulently altered.  To date, Defendant

12  HOWARD has not returned the CRG corporate book or a CRG stock ledger of any kind.

13  On November 23, 2021 Defendant HOWARD in the Family Law case filed against

14  Plaintiff in July 2021 provided CRG stock certificates dating back to 1998.  But for

15  Defendant HOWARD providing these documents, the fraud would have still gone

16  undetected.  Subsequently, Plaintiff has re-constructed the CRG stock ledger from those

17  CRG stock certificates number 9-15 disclosed by Defendant HOWARD (**See "Exhibit**

18  **28"**).

19         23.     Contributing factors that allowed Defendants to conceal their acts and to

20  intentionally avoid detection were many.  In 1998, Plaintiff CHASTAIN was dealing with

21  the loss of his dream job as a Life-Science Securities attorney at Wilson Sonsini Goodrich

22  & Rosati after investing 3 years of tuition and coursework at Stanford Law School,

-12-

defending himself and CRG in Federal Court for illegal actions by his wife at the time, Defendant HOWARD.  Plaintiff was also suffering from disabilities incurred as a result of a service-connected injury in Republic of Vietnam in 1971 as United States Marine (1969-1972), (**See "Exhibit 29"**).  Plaintiff CHASTAIN was not able to work or participate fully in CRG corporate matters in 2002 and 2003 because he underwent right knee Total Knee Replacement (TKR) in 2002 and then left TKR in 2003.   Plaintiff was also suffering from Post-Traumatic Stress Disorder (PTSD) from his time in combat.  Although not formally diagnosed until 2005 (**See "Exhibit 30"**)and only recently awarded service connection (**See "Exhibit 31"**), Plaintiff sought and received psychiatric help for his PTSD as early as 1973 upon returning to his hometown of Lockport New York continuing to the present as shown in medical records at the VA and elsewhere, including Stanford Health Care.  It is Plaintiff's contention that Defendant HOWARD preyed on those disabilities, counting on his PTSD symptoms of detachment, numbness, and depression to prevent him from questioning or reviewing Defendant HOWARD's motives or actions.

24.     Plaintiffs CHASTAIN and CRG demand **<u>$3,545,827.97</u>** in damages, $189,222 Plaintiff CHASTAIN contributed to CRG from separate funds in 1993; $1,343,249.88 in CRG losses from Defendant's fraudulent acts; $101,129.14 in Nebraska expenses paid by CRG post 2008; $24,712.59 for Director Stipends paid by CRG to Defendant MAJOR 2002-2008; $13,585 for Nebraska apartment rent paid by CRG for the sole benefit of Defendant MAJOR 2008-2009; $783,398.33 in CRG wages paid Defendant HOWARD from 1999-2009 plus $2,079,539.31 Plaintiff CHASTAIN independently contributed in personal consulting services offset by CHASTAIN's compensation of

COMPLAINT

$988,966.28 in 1999 through 2008.  This will in no way compensate Plaintiff for the loss of his legal career, legal expenses in 1998, legal expenses in fending himself against Defendant HOWARD in 2016-2017 and again in 2021-2023 or lost profits from CRG but will prevent Defendants HOWARD and MAJOR from unjustly enriching themselves at CRG and CHASTAIN expense.  In the case of Defendant HOWARD, she has "gas-lighted" him and used his PTSD as a weapon against him for over 25 years.  It is only fair that Plaintiff CHASTAIN be compensated for some of his devasting financial, career and personal losses due Defendant HOWARD's fraud and Defendant MAJOR's  conspiracy to defraud and complicity in HOWARD's schemes.

## PERTINENT AGREEMENTS AND RELATED DOCUMENTS

25. CHASTAIN refers to and incorporates the following pertinent agreements, corporate articles, and documents in support of this Complaint as follows:

26. CRG By-laws

27. MSA of 12/22/2008

28. Memorandum re Director Responsibilities

29. Employment Agreement and Addendum


## FIRST CAUSE OF ACTION
### (Fraud against All DEFENDANTS)

30.    CHASTAIN and CRG refer to and incorporate herein by such references the allegations of Paragraphs 1-29 as set forth herein above as though fully set forth herein.

31.    CHASTAIN is informed and believes and thereon alleges that sometime prior to August 18, 1998, HOWARD and MAJOR prepared and developed a scheme to

-14-

COMPLAINT

steal CRG for financial gain and to harm CHASTAIN because Defendants were afraid Plaintiff would terminate HOWARD's employment and marriage.  Unknown to Plaintiff at the time, although Defendants HOWARD and MAJOR agreed to return majority ownership of CRG to Plaintiff, they did NOT, but instead fraudulently transferred a minority of shares to Plaintiff.

32.     CHASTAIN and HOWARD were divorced on December 22, 2008 after signing a Marital Settlement Agreement based on lies. Throughout the entirety of the dissolution proceedings, HOWARD continued to use her fraudulent claim of majority ownership in CRG to deceive CHASTAIN to thwart, defraud and manipulate the divorce settlement for financial gain and pure greed. HOWARD was Secretary and Treasurer of CRG continuously for over 10 years and was solely responsible for keeping all corporate records including all minutes, memos, and stock certificates.

33.     HOWARD's intentional conduct caused substantial harm and financial losses to CHASTAIN and CRG and an unearned windfall for her.

34.     In early 2022, CHASTAIN hired an independent computer scientist expert for a forensic investigation and identified 8/18/1998 minutes authored by HOWARD dated 10/27/2008 giving CHASTAIN 49% minority ownership in CRG (**See "Exhibit 10"**).

35.      Upon further investigation, the same independent computer scientist expert identified 8/18/1998 minutes dated 8/18/1998 also authored by HOWARD gave CHASTAIN 51% (**See "Exhibit 10"**).   In essence, HOWARD had stolen CRG for financial gain through falsified documents and duped CHASTAIN into working for her.

36.     CHASTAIN is informed and believes and thereon alleges that based upon

COMPLAINT

the representations. CHASTAIN, in reliance upon HOWARD's representations that he was the minority owner of 49% of CRG, was forced to negotiate marital settlement terms in 2008 based upon the underlying fraud.

37.    CHASTAIN is informed and believes and thereon alleges that he has fulfilled all of his financial obligations in the underlying family law matter based upon fraud and forgery by deception of HOWARD, all to his detriment.  In that matter HOWARD received half of all community property and there were no children or alimony issues.  HOWARD also received a final settlement check in 2012, but falsely told the court CHASTAIN made no efforts to pay as ordered.  In fact, HOWARD was overpaid due to mediator miscalculations on the FL-142 and mediator's failure to put values to any of the property in the marital settlement agreement.

38.    CHASTAIN is informed and believes and thereon alleges that during the period of August 1998 throughout the marriage and employment with CRG, DEFENDANT HOWARD, in breach of her fiduciary responsibilities to CRG, and subsequent fiduciary responsibilities regarding the former marital estate, committed fraud by deception.  HOWARD's conduct in creating false CRG stock certificates and false CRG minutes for her own financial benefit and greed, suited her intended purpose to defraud and hurt CHASTAIN and enrich herself at CHASTAIN's expense.

39.    CHASTAIN is informed and believes and thereon alleges that as a proximate result of DEFENDANT HOWARD's fraud by deception by submitting false stock certificates and minutes to CHASTAIN, that CHASTAIN and CRG have been damaged as set forth above in an amount believed to be not less than $3,545,827.97 and to be proven at

COMPLAINT

trial but not less than the jurisdictional limit of this court.

## SECOND CAUSE OF ACTION

**(Breach of Implied Covenant of Good Faith
and Fair Dealing against All DEFENDANTS)**

40.     CHASTAIN and CRG refer to and incorporate herein by such references the allegations of Paragraphs 1-39 as set forth herein above as though fully set forth herein.

41.     CHASTAIN and CRG are informed and believes and thereon alleges that on or about Summer 1997 while Plaintiff was studying for and subsequently passed the California Bar Exam and continuing thereafter while Plaintiff began work at Wilson Sonsini Goodrich & Rosati (WSGR) as a full-time Associate Attorney through November of 2021 DEFENDANT HOWARD entered into a scheme to defraud and interfere in the business practices of CHASTAIN and CRG. Said interference has caused detriment to the reputation and financial standing of CHASTAIN and CRG due to the said scheme.

42.     CHASTAIN and CRG are informed and believe and thereon allege that despite CHASTAIN and CRG'S efforts to overcome the detriment to them, HOWARD's fraud and breach of duties as outlined in the CRG Articles of Incorporation, CRG By-laws, CRG memoranda, and her subsequent appointment to the CRG Board of Directors and as corporate officer as Secretary, Treasurer/CFO to CRG, CHASTAIN and CRG were irreparably harmed due to her conduct and the conspiracy or silence of Defendant MAJOR.

43.     CHASTAIN and CRG are informed and believe and thereon allege that HOWARD's 1998 original breach of confidentiality and conspiring with a former Trilogy employee to illegally solicit companies with proprietary client and consultant lists stolen from Trilogy was just the beginning of HOWARD's nefarious conduct to harm

COMPLAINT

CHASTAIN and CRG.  Ultimately, HOWARD's conduct caused CRG to lose employees, contracts and reputation that has not been repaired and caused millions of dollars in lost revenue and contracts.  Further, HOWARD's conduct destroyed CHASTAIN's legal career as a corporate securities attorney with WSGR which prevented CHASTAIN from being hired by other top ten Silicon Valley law firms.

44.     CHASTAIN is informed and believes and thereon alleges that, but for the intentional conduct of HOWARD, CRG and CHASTAIN would be thriving today. While HOWARD enjoys the fruits of her falsely acquired retirement from CRG employment due in large part to CHASTAIN's extensive clinical trial experience and expertise, CHASTAIN has no IRA, 401(k) or retirement savings.

45.     CHASTAIN is informed and believes and thereon alleges that commencing in August 1998 and continuing thereafter that DEFENDANT HOWARD further breached the CRG Articles of Incorporation, CRG By-laws, CRG memoranda and established business practices by creating false and fraudulent documents and stock certificates which purported to establish that she was the majority business owner of CRG. In furtherance of DEFENDANT's fraud and breach of Good Faith and Fair Dealing, HOWARD'S creation of fraudulent stock certificates and corporate minutes caused CRG to lose certification as a SDVOSB. This loss of certification caused harm to CHASTAIN and CRG.

46.     CHASTAIN is informed and believes and thereon alleges that reliance upon HOWARD's representations that she was the majority shareholder of CRG, caused CHASTAIN to step away from CRG.  The losses sustained by CRG as direct result of HOWARD's conduct is in excess of $3,000.000.00.  HOWARD continued to use the

COMPLAINT

assets of CRG as her own personal ATM even after the marriage using her CRG corporate credit card to charge lunches and gasoline at COSTCO. At no time did HOWARD attempt to do CRG business in Nebraska other than collect a paycheck and have CRG pay her living expenses (monthly Nebraska office charges were over $3,600).  CHASTAIN and CRG were irreparably harmed.

47.     CHASTAIN and CRG are informed and believe and thereon allege that as a proximate result of DEFENDANT HOWARD's fraud and breaches of her duties as Secretary, Treasurer and Director of CRG, that she deliberately, and with malice, failed to act fairly and in good faith. Defendant MAJOR at no time fulfilled her responsibility as a CRG Director to question or correct and in fact aided and abetted Defendant HOWARD's actions as her only biological daughter to the detriment of CRG and CHASTAIN. CHASTAIN and CRG have been damaged as set forth above in an amount believed to be not less than $3,000,000.00 and to be proven at trial but not less than the jurisdictional limit of this court.

**THIRD CAUSE OF ACTION**
**(Negligent Misrepresentation against HOWARD)**

48.     CHASTAIN and CRG refer to and incorporate herein by such references the allegations of Paragraphs 1-47 as set forth herein above as though fully set forth herein.

49.     CHASTAIN is informed and believes and thereon alleges that in August 1998 and throughout her employment with CRG, DEFENDANT HOWARD breached her duties as Secretary, Treasurer and Director of CRG, failed to maintain integrity of contracts, used third party contracts with Trilogy in breach of confidentiality clauses and failed to perform her duties and responsibilities to CRG and CHASTAIN.

-19-

COMPLAINT

50.    CHASTAIN is informed and believes and thereon alleges that because of HOWARD's undermining CHASTAIN and CRG's business purposes and contracts and breaching her duty of care, DEFENDANT HOWARD caused CHASTAIN and CRG harm.

51.    CHASTAIN is informed and believes and thereon alleges that DEFENDANT HOWARD made untrue, inaccurate, and misleading representations to CHASTAIN, failed to divulge vital and necessary information to CHASTAIN regarding the true status of majority ownership of CRG, and concealed the corporate minutes, stock certificates, stock ledger and other CRG documents.

52.    CHASTAIN is informed and believes and thereon alleges that DEFENDANT had no reasonable grounds to breach her duties as Secretary, Treasurer and Director of CRG, nor to create false stock certificates and false corporate minutes to manipulate the majority ownership of CRG and to manipulate and "gaslight" CHASTAIN 3except to gain financial advantage.

53.    CHASTAIN is informed and believes and thereon alleges that he and CRG relied, in a reasonable manner, upon the misrepresentations of DEFENDANTs HOWARD, MAJOR and DOE defendants.

54.    CHASTAIN is informed and believes and thereon alleges that his reliance upon DEFENDANT HOWARD's representations was detrimental in that it has caused CHASTAIN and CRG substantial economic harm in an amount believed to be at least $3,000,000.00.  Had CHASTAIN known that the representations of DEFENDANT HOWARD were in fact not true CHASTAIN would not have so relied upon them.

COMPLAINT

55.     CHASTAIN is informed and believes and thereon alleges that his and CRG's reliance on DEFENDANT's representations was a substantial factor in causing CHASTAIN and CRG's harm.

**FOURTH CAUSE OF ACTION**
**(Negligence against All DEFENDANTS)**

56.     CHASTAIN and CRG refer to and incorporate herein by such references the allegations of Paragraphs 1-55 as set forth herein above as though fully set forth herein.

57.     CHASTAIN is informed and believes and thereon alleges that in August 1998 and continuing until today, DEFENDANT HOWARD breached her duties as Secretary, Treasurer and Director of CRG by failing to perform her duties. DEFENDANT MAJOR breached her duties as Director of CRG by failing to perform her duties.

58.     CHASTAIN is informed and believes and thereon alleges that because of Defendants' negligent, reckless, or deliberate undermining CHASTAIN and CRG's business purposes and contracts and breaching the duty of care that existed between them regarding CRG and its directors, DEFENDANTs HOWARD and MAJOR caused him and CRG harm.

59.     CHASTAIN is informed and believes and thereon alleges that DEFENDANTs had no reasonable grounds to negligently, recklessly, or deliberately breach their respective duties as officers or Directors of CRG, nor to create false stock certificates and corporate minutes to manipulate the majority ownership of CRG and continually cover-up the fraud.

60.     CHASTAIN is informed and believes and thereon alleges that he and CRG relied, in a reasonable manner, upon the misrepresentations of DEFENDANT HOWARD,

COMPLAINT

1   MAJOR and DOE defendants.

2       61.    CHASTAIN is informed and believes and thereon alleges that his reliance

3   upon DEFENDANT HOWARD's representations was detrimental in that it has caused

4   CHASTAIN and CRG substantial economic harm in an amount believed to be at least

5   $3,000,000.00 and had CHASTAIN known that the representations of DEFENDANT

6

7   were in fact not true CHASTAIN would not have so relied upon them.

8       62.    CHASTAIN is informed and believes and thereon alleges that his and CRG's

9   reliance on DEFENDANT's representations was a substantial factor in causing

10

11  CHASTAIN and CRG's harm.

12              **AS TO ALL CLAIMS FOR RELIEF:**

13      1.    For damages in the amount of $3,545,827.97, the exact amount of which will

14
    be proven at trial;
15

16      2.    For additional general and special damages to the extent allowed by law;

17      3.    For interest on said sum at the legal rate of 10% per annum commencing

18
    from the earliest date allowed by law to the date of judgment.
19

20      4.    For reasonable attorneys fees to the extent allowed by law;

21      5.    For costs of suit incurred herein; and

22      6.    For such other and further relief as this Court deems just and proper

23

24

25  DATED: October 31, 2022          LAW OFFICES OF LANCE G. GREENE
                                     A Professional Corporation
26
                                     By: _____
27
                                         Lance G. Greene,
28                                       Attorneys for Plaintiff

                        -22-
                                            COMPLAINT

**EXHIBIT "1"**

CHASTAIN, ROBERT LEE                          ID# 8230862

**TEXAS A&M UNIVERSITY**
College Station, Texas

311 BORDERBROOK, BRYAN, TEX  77801

AND PLACE OF BIRTH:                  OLEAN, NY                                                    Page 1

ADMISSION:    GRADUATE,  HOUGHTON COLLEGE
              BA        RO

SOCIAL SECURITY NUMBER:

| Descriptive Title | Course Number | Hours Th - Pr | | Grade | Cr Hrs | Gr Pts | Descriptive Title | Course Number | Hours Th - Pr | | Grade | Cr Hrs | Gr Pts |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GRADUATE COLLEGE | | | | | | | 1ST SUMMER TERM 1983 | | | | | | |
| | | | | | | | EXPER DESIGN IN ED | EPSY 637 | 9 | 0 | A | 3 | 12 |
| EDUCATIONAL PSYCHOLOGY | | | | | | | SOCIAL DEMOGRAPHY | SCC  622 | 9 | 0 | A | 3 | 12 |
| | | | | | | | 8237862 | | | 6 | | 6 | 24 |
| FALL SEMESTER 1982 | | | | | | | | | | | | | |
| EDUCATIONAL STATISTICS | EPSY 439 | 3 | 0 | A | 3 | 12 | 2NO SUMMER TERM 1983 | | | | | | |
| MEAS & EVAL IN EDUCATN | EDSY 622 | 3 | 0 | A | 3 | 12 | EDUCATIONAL PSYCHOLOGY | EPSY 692 | 9 | 0 | A | 3 | 12 |
| FOUNDATNS OF GUIDANCE | EPSY 630 | 3 | 0 | A | 3 | 12 | 8230862 | | | 3 | | 3 | 12 |
| SEMINAR IN EPSY | EPSY 682 | 1 | 0 | A | 1 | 4 | | | | | | | |
| CONTRACTS AND GRANTS | 101 > 079 | 3 | 0 | A | 3 | 12 | | | | | | | |
| 8230862 | | 13 | | | 13 | 52 | | | | | | | |
| TRANS., CANISIUS COLLEGE | | | | | | | DEGREE OF MASTER OF SCIENCE (EPSY) | | | | | | |
| FAMILY COUNSELIN | EDC   589 | | | A | 3 | | CONFERRED 8-13-83 | | | | | | |
| RESEARCH TECHIQ | EDC   615 | | | A | 3 | | | | | | | | |
| 8230862 | | TOTAL | | | 6 | | GRADUATE DOCTORAL   8-29-83 | | | | | | |
| | | | | | | | EDUCATIONAL PSYCHOLOGY | | | | | | |
| SPRING SEMESTER 1983 | | | | | | | | | | | | | |
| TECHNQS OF COUNSELING | EPSY 631 | 3 | 0 | A | 3 | 12 | FALL SEMESTER 1983 | | | | | | |
| METHODS OF GROUP GUID | EPSY 633 | 3 | 0 | A | 3 | 12 | TEST CONSTRUCTION | EPSY 625 | 3 | 0 | A | 3 | 12 |
| SEMINAR IN EPSY | EPSY 682 | 1 | 0 | A | 1 | 4 | SP TP:SURVEY RESEARCH | EPSY 689 | 3 | 0 | A | 3 | 12 |
| SEMINAR IN EPSY | EPSY 682 | 1 | 0 | A | 1 | 4 | THEORY OF EPSY RSEARCH | EPSY 690 | 3 | 0 | S | 3 | |
| BEHAVIOR MODIFICATION | PSY  612 | 3 | 0 | A | 3 | 12 | STAT IN RESEARCH II | STAT 652 | 3 | 0 | A | 3 | 12 |
| 8230862 | | 11 | | | 11 | 44 | 8230862 | | | 9 | | 12 | 36 |

CONTINUED ON PAGE 2

Grading System:  A-Excellent, B-Good, C-Satisfactory, D-Passing, F-Failing, I-Incomplete, Q-Dropped course with no penalty, WP-Withdrew passing, WF-Withdrew failing, S-Satisfactory, U-Unsatisfactory, X-Grade not reported, NG-No grade. Course with suffix "H" denotes participation in Honors Program. Semester: 16 weeks. Summer Session: Consists of two terms of 5½ weeks each and an 11-week summer semester. Semester Credit Hour: A class meeting one hour per week for 16 weeks.

Entitled to honorable dismissal unless otherwise stated. Not an official transcript without imprinted seal of Texas A&M University and signature of registrar. This record may not be released or transferred to any other person, agency or party without the student's written consent.

CHASTAIN, ROBERT LEE

IL# 8230362

**PARENT OR GUARDIAN:**                        SELF

**DATE OF ENTRANCE:**    08/30/82                        NON-RESIDENT

| Descriptive Title | Course Number | Hours Th - Pr | | Grade | Cr Hrs | Gr Pts | Descriptive Title | Course Number | Hours Th - Pr | | Grade | Cr Hrs | Gr Pts |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | SPRING SEMESTER 1985 | | | | | | |
| | | | | | | | PRIN OF HUMAN DEVLOPMNT | PSY 634 | 3 | 0 | O | | |
| | | | | | | | METH MULTIVARIATIC ANLY | STAT 636 | 3 | 0 | A | 3 | 12 |
| SPRING SEMESTER 1984 | | | | | | | 8230862 | | | 3 | | 3 | 12 |
| RSRCH APPL ED MEASRMNT | EPSY 626 | 3 | 0 | A | 3 | 12 | | | | | | | |
| SP TP:META ANALYSIS | EPSY 689 | 3 | 0 | O | | | | | | | | | |
| FAC ANLY BEHAV SCIENT | PSY 672 | 2 | 3 | A | 3 | 12 | | | | | | | |
| DR STAT:NON PARA METH | STAT 509 | 3 | 0 | A | 3 | 12 | | | | | | | |
| 8230862 | | | 9 | | 9 | 36 | | | | | | | |
| | | | | | | | | | | | | | |
| 1ST SUMMER TERM 1984 | | | | | | | | | | | | | |
| PROBLEMS | EPSY 685 | 6 | 0 | A | 2 | 8 | | | | | | | |
| PROBLEMS | EPSY 685 | 12 | 0 | A | 4 | 16 | | | | | | | |
| 8230862 | | | 6 | | 6 | 24 | | | | | | | |
| | | | | | | | | | | | | | |
| FALL SEMESTER 1984 | | | | | | | | | | | | | |
| SP TP:CONSULTATION | EPSY 639 | 3 | 0 | A | 3 | 12 | | | | | | | |
| LST SQ & REGRESS ANLYS | STAT 608 | 3 | 0 | A | 3 | 12 | | | | | | | |
| 8230862 | | | 6 | | 6 | 24 | | | | | | | |

Entitled to honorable dismissal unless otherwise stated. Not an official transcript without imprinted seal of Texas A&M University and signature of registrar. This record may not be released or transferred to any other person, agency or party without the student's written consent.

**EXHIBIT "2"**

OFFICE OF THE REGISTRAR     STANFORD UNIVERSITY     STANFORD, CALIFORNIA 94305-3005

NAME: CHASTAIN, ROBERT LEE
STUDENT NUMBER: 3567179
BIRTHDATE:
BIRTHPLACE: OLEAN, NY
MATRICULATION DATE: SEPTEMBER 1985

PRIOR DEGREE: TEXAS A. & M. UNIVERSITY
　　COLLEGE STATION    TX  MS    08/83    MAJOR(S):
　　HOUGHTON COLLEGE                     LAW 06/94
　　HOUGHTON          NY  BA    08/80    EDUCATION 04/85

DEGREE & DATE CONFERRED:
J.D.
June 15, 1997
Ph.D., EDUCATION*,**
June 14, 1992

Page 1

| DEPT # | COURSE | UNITS/GRADE | DEPT # | COURSE | UNITS/GRADE | DEPT # | COURSE | UNITS/GRADE | DEPT # | COURSE | UNITS/GRADE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GRADUATE | | | | | | | | | | | |
| | | | | WINTER 1986-87 | | | WINTER 1988-89 | | | SPRING 1991-92 | |
| | | | EDUC 315 | CULTURAL TRANS | 3 + | EDUC 802 | TGR DISS | 0 P | | TERMINAL GRADUATE | |
| | AUTUMN 1985-86 | | EDUC 350C | EDUCATION | 3 P | | | | | | |
| EDUC 229 | DEV SOC COMP | 3 A | PSYC 211 | DEV PSYCH | 3 A- | | SPRING 1988-89 | | | AUTUMN 1994-95 | |
| EDUC 250C | STAT ANALY RES | 4 A+ | | | | EDUC 802 | TGR DISS | 0 P | LAW 201A | CIVIL PROCEDURE | 4 B |
| EDUC 316 | COGN PSYCHOLOG | 3 A- | | SPRING 1986-87 | | | | | LAW 205A | CONTRACTS | 4 B |
| EDUC 350A | PSYCHGCLSTU/ED | 0 P | EDUC 201 | HIST OF EDU US | 3 + | | AUTUMN 1989-90 | | LAW 207G | CRIMINAL LAW | 4 B+ |
| PSYC 256 | DECISION MAKNG | 3 + | EDUC 203 | CONTEMPTHOUGHT | 3 + | EDUC 802 | TGR DISS | 0 S | LAW 210 | INTRO TO LAW | 1 KM |
| | | | EDUC 350D | EDUCTNL PSYCH | 3 P | | | | LAW 219 | RESRCH & LEGL WRTG | 1 KM |
| | WINTER 1985-86 | | | | | | | | LAW 223A | TORTS | 4 B- |
| EDUC 250D | STAT ANLY RES | 4 A | | | | | WINTER 1989-90 | | | | |
| EDUC 255 | HUMAN ABILITS | 3 A+ | | SUMMER 1986-87 | | EDUC 802 | TGR DISS | 0 S | | SPRING 1994-95 | |
| EDUC 317 | RESEARCH TECHG | 4 A | EDUC 490 | DIR RESEARCH | 3 + | | | | LAW 203A | CONST LAW I-A | 4 C+ |
| | | | | | | | | | LAW 217A | PROPERTY I-A | 4 K |
| | SPRING 1985-86 | | | AUTUMN 1987-88 | | | SPRING 1989-90 | | LAW 219 | RESRCH & LEGL WRTG | 1 KM |
| EDUC 343 | MOTIVATN PROC | 3 A+ | EDUC 208A | INTRO CURRIC | 4 + | EDUC 802 | TGR DISS | 0 S | LAW 232 | ACCOUNTING | 2 B+ |
| EDUC 416 | SEMINR APTITUD | 3 P | EDUC 353 | PROB IN MEASUR | 3 P | | | | LAW 275 | ECONOMICS | 3 K |
| EDUC 480 | DIR READING | 2 P | EDUC 490 | DIR RESEARCH | 2 P | | | | LAW 537 | QUANT. METH./FIN. | 1 KM |
| PSYC 210 | COG PSYCHOLOGY | 3 + | | | | | AUTUMN 1990-91 | | LAW 538 | QUANT. METH./STAT. | 1 KM |
| | | | | | | EDUC 802 | TGR DISS | 5 S | LAW 604 | BIOTECH,LEG.& POL. | 3 A- |
| | | | | WINTER 1987-88 | | | | | LAW 641 | SPREADSHEETS | 1 KM |
| | SUMMER 1985-86 | | EDUC 480 | DIR READING | 3 + | | | | | | |
| EDUC 490 | DIR RESEARCH | 9 P | EDUC 490 | DIR RESEARCH | 6 + | | SPRING 1990-91 | | | AUTUMN 1995-96 | |
| | | | | | | EDUC 802 | TGR DISS | 9 S | LAW 239B | BUSINESS ASSNS. | 4 B- |
| | AUTUMN 1986-87 | | | SPRING 1987-88 | | | | | LAW 308 | LAW & ECON SEM | 2 B+ |
| EDUC 350B | PSYCH STUDY IN EDU | 3 P | EDUC 480 | DIR READING | 3 + | | AUTUMN 1991-92 | | LAW 355 | TAXATION I | 4 A- |
| PSYC 213 | PERSONALITY | 3 + | EDUC 490 | DIR RESEARCH | 6 + | | TERMINAL GRADUATE | | LAW 460 | INTEL PROPERTY | 3 K |
| | | | | AUTUMN 1988-89 | | | WINTER 1991-92 | | | | |
| | | | EDUC 490 | DIR RESEARCH | 3 + | | TERMINAL GRADUATE | | | | |

** CONTINUED **

TRANSCRIPT IS PRINTED ON PAPER WITH CARDINAL-RED BORDER. SEE OTHER SIDE FOR GRADE EXPLANATION.
Information must be kept confidential and must not be disclosed to other parties without the
written consent of the student.

Issued to: ROBERT L CHASTAIN, JD/PH.D, ESQ
310 BALLYMORE CIRCLE
SAN JOSE CA 95136-3932

As University Registrar,
I certify this record to be correct:

This transcript is not official without signature. Raised seal not required.

To be valid, this POSTALBOXX™ field must display a colored background.

OFFICE OF THE REGISTRAR        STANFORD UNIVERSITY        STANFORD, CALIFORNIA  94305-3005

NAME: CHASTAIN, ROBERT LEE
STUDENT NUMBER: 3567179

Page 2

| DEPT # | COURSE | UNITS/GRADE |
|--------|--------|-------------|
| | **SPRING 1995-96** | |
| LAW 261 | INTL INTEL PROP | 3 A- |
| LAW 344 | SECURED TRANS | 3 B- |
| LAW 360 | TAX OF BUS. ENT. | 3 A- |
| LAW 434 | CAPITAL MARKETS | 4 K |
| LAW 467 | PATENTS | 2 B+ |
| | | |
| | **AUTUMN 1996-97** | |
| LAW 233 | ANTITRUST | 4 K |
| LAW 400 | DIRECTED RESEARCH | 3 KM |
| LAW 451 | TECH BUS ASSET | 3 B |
| | | |
| | **SPRING 1996-97** | |
| LAW 247 | BUSINESS, LAWYERS | 4 A |
| LAW 327 | INTL BUS TRANS | 3 B- |
| LAW 332 | INTL LAW, ESSENT | 1 KM |
| LAW 370 | LIBEL LAW | 1 KM |
| LAW 383 | PRESS LAW | 1 KM |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*PSYCHOLOGICAL STUDIES IN EDUCATION
\*\*MINOR: PSYCHOLOGY
      DATE PRINTED - 10/02/01
      \*\*\* END OF RECORD \*\*\*

TRANSCRIPT IS PRINTED ON PAPER WITH CARDINAL-RED BORDER. SEE OTHER SIDE FOR GRADE EXPLANATION.
Information must be kept confidential and must not be disclosed to other parties without the
written consent of the student.

As University Registrar,
I certify this record to be correct:

Issued to: ROBERT L CHASTAIN, JD/PH.D, ESQ
           310 BALLYMORE CIRCLE
           SAN JOSE CA 95136-3932

This transcript is not official without signature. Raised seal not required.

To be valid, this POSTALBOXX™ field must display a colored background.

**EXHIBIT "3"**

1830554

ENDORSED
F I L E D

in the office of the Secretary of State
of the State of California

SEP 17 1993

*March Fong Eu*
MARCH FONG EU, Secretary of State

# ARTICLES OF INCORPORATION
## OF
# CHASTAIN RESEARCH GROUP, INC.

**ONE:** The name of this corporation is **CHASTAIN RESEARCH GROUP, INC.**

**TWO:** The purpose of this corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

**THREE:** The name and address in this state of the corporation's initial agent for service of process is:

> **ROBERT L. CHASTAIN**
> 2220 Homestead Court, #116
> Los Altos, California 94024

**FOUR:** This corporation is authorized to issue only one class of shares of stock which shall be designated common stock. The total number of shares it is authorized to issue is one million (1,000,000) shares.

**FIVE:** The names and addresses of the persons who are appointed to act as the initial directors of this corporation are:

**ROBERT L. CHASTAIN**
2220 Homestead Court, #116
Los Altos, California 94024

**SUSAN L. CHASTAIN**
2220 Homestead Court, #116
Los Altos, California 94024

**SIX:** The liability of the directors of the corporation for monetary damages shall be eliminated to the fullest extent permissible under California law.

**SEVEN:** The corporation is authorized to indemnify the directors and officers of the corporation to the fullest extent permissible under California law.

**IN WITNESS WHEREOF,** the undersigned, being all the persons named above as the initial directors, have executed these Articles of Incorporation.


Dated: _____9/17/93_____


_Robert L. Chastain_                    _Susan L. Chastain_
**ROBERT L. CHASTAIN**                   **SUSAN L. CHASTAIN**


The undersigned, being all the persons named above as the initial directors, declare that they are the persons who executed the foregoing Articles of Incorporation, which execution is their act and deed.


Dated: _____9/17/93_____


_Robert L. Chastain_                    _Susan L. Chastain_
**ROBERT L. CHASTAIN**                   **SUSAN L. CHASTAIN**


2



## State of California
### OFFICE OF THE SECRETARY OF STATE

1830554

## CORPORATION DIVISION

I, *MARCH FONG EU*, Secretary of State of the State of California, hereby certify:

That the annexed transcript has been compared with the corporate record on file in this office, of which it purports to be a copy, and that same is full, true and correct.

*IN WITNESS WHEREOF,* I execute this certificate and affix the Great Seal of the State of California this

**SEP 2 1 1993**



*March Fong Eu*

Secretary of State

**EXHIBIT "4"**

| what | amount | |
|---|---|---|
| sep property | $ 24,958.00 | |
| deposits | $ 69,500.00 | |
| RLC R&C personal consulting | $ 94,722.00 | out of $164,222 RLC consulting services and CRG $383,804.75 total |
| | $ 189,180.00 | |

| Equipment | Serial# | Cost |
|---|---|---|
| HP Pavilion 04 Computer | MX22507702 | $2,380.00 |
| Dell Dimension 4100 | 49K0N01 | $1,890.00 |
| Sony VAIO Computer | 2422923 | $400.00 |
| Toshiba Satellite LapTop | 52092504P | $2,245.00 |
| 2 Wire LAN Home Portal | 271000086373 | $680.00 |
| HP LaserJet 6P Printer | USDH084510 | $450.00 |
| HP OfficeJet 500 | SG81JB21S0 | $144.00 |
| Fellowes Shredder | | $194.00 |
| Panasonic Digital Phone | | $75.00 |
| Sub-total | | $8,458.00 |
| Cash | | $16,500.00 |
| | | $24,958.00 |

| | Type | Date | | Amount | | | Balance | |
|---|---|---|---|---|---|---|---|---|
| 0 | | | | | | | | |
| 1 | | 08/01/1993 | | | RLC CRG Syntex contract | | | |
| 2 | Deposit | 10/05/1993 | $ | 1,856.25 | R & C transfer 1099 | $ | 1,856.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 3 | Deposit | 10/19/1993 | $ | 4,647.50 | R & C transfer 1099 | $ | 6,503.75 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 3 | Deposit | 10/23/1993 | $ | 3,382.50 | R & C transfer 1099 | $ | 9,886.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 4 | Deposit | 10/30/1993 | $ | 4,963.75 | R & C transfer 1099 | $ | 14,850.00 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 5 | Deposit | 11/08/1993 | $ | 2,800.00 | R & C transfer 1099 | $ | 17,650.00 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 6 | Deposit | 12/15/1993 | $ | 4,500.00 | R & C transfer 1099 | $ | 22,150.00 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 7 | Deposit | 11/06/1993 | $ | 8,593.75 | Syntex | $ | 30,743.75 | ZOld1 Bus ChkDowney 10/93-9/98 |
| 8 | Deposit | 11/11/1993 | $ | 4,276.25 | Syntex | $ | 35,020.00 | ZOld1 Bus ChkDowney 10/93-9/99 |
| 9 | Deposit | 11/19/1993 | $ | 3,891.25 | Syntex | $ | 38,911.25 | ZOld1 Bus ChkDowney 10/93-9/100 |
| 10 | Deposit | 11/29/1993 | $ | 7,823.75 | Syntex | $ | 46,735.00 | ZOld1 Bus ChkDowney 10/93-9/101 |
| 11 | Deposit | 12/04/1993 | $ | 3,258.75 | Syntex | $ | 49,993.75 | ZOld1 Bus ChkDowney 10/93-9/102 |
| 12 | Deposit | 12/16/1993 | $ | 4,290.00 | Syntex | $ | 54,283.75 | ZOld1 Bus ChkDowney 10/93-9/103 |
| 13 | Deposit | 12/26/1993 | $ | 3,423.75 | Syntex | $ | 57,707.50 | ZOld1 Bus ChkDowney 10/93-9/104 |
| 14 | Deposit | 01/21/1994 | $ | 6,792.50 | Syntex | $ | 64,500.00 | ZOld1 Bus ChkDowney 10/93-9/105 |
| 15 | Deposit | 04/08/1994 | $ | 5,000.00 | R & C transfer 1099 | $ | 69,500.00 | ZOld1 Bus ChkDowney 10/93-9/111 |

**Chastain Research Group, Inc.**
**Profit & Loss Detail**
January 1993 through December 1994

3:01 PM
01/23/22
Accrual Basis

| | Type | Date | Amount | Name | Balance | Split |
|---|------|------|--------|------|---------|-------|
| 0 | | | | | | |
| 1 | Deposit | 10/05/1993 | $ 1,856.25 | R & C transfer 1099 | $ 1,856.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 2 | Deposit | 10/19/1993 | $ 4,647.50 | R & C transfer 1099 | $ 6,503.75 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 3 | Deposit | 10/23/1993 | $ 3,382.50 | R & C transfer 1099 | $ 9,886.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 4 | Deposit | 10/29/1993 | $ 500.00 | National Jury Project | $ 10,386.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 5 | Deposit | 10/30/1993 | $ 4,963.75 | R & C transfer 1099 | $ 15,350.00 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 6 | Deposit | 11/06/1993 | $ 8,593.75 | Syntex | $ 23,943.75 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 7 | Deposit | 11/08/1993 | $ 2,800.00 | R & C transfer 1099 | $ 26,743.75 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 8 | Deposit | 11/11/1993 | $ 4,276.25 | Syntex | $ 31,020.00 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 9 | Deposit | 11/19/1993 | $ 3,891.25 | Syntex | $ 34,911.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 10 | Deposit | 11/29/1993 | $ 7,823.75 | Syntex | $ 42,735.00 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 11 | Deposit | 12/04/1993 | $ 3,258.75 | Syntex | $ 45,993.75 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 12 | Deposit | 12/09/1993 | $ 2,850.00 | Stanford University - Dick Snow | $ 48,843.75 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 13 | Deposit | 12/15/1993 | $ 4,500.00 | R & C transfer 1099 | $ 53,343.75 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 14 | Deposit | 12/16/1993 | $ 4,290.00 | Syntex | $ 57,633.75 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 15 | Deposit | 12/26/1993 | $ 2,730.00 | Matrix Pharmaceutical, Inc. | $ 60,363.75 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 16 | Deposit | 12/26/1993 | $ 3,423.75 | Syntex | $ 63,787.50 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 17 | Deposit | 01/03/1994 | $ 2,080.00 | Matrix Pharmaceutical, Inc. | $ 65,867.50 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 18 | Deposit | 01/21/1994 | $ 6,792.50 | Syntex | $ 72,660.00 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 19 | Deposit | 01/27/1994 | $ 1,820.00 | Matrix Pharmaceutical, Inc. | $ 74,480.00 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 20 | Deposit | 02/01/1994 | $ 2,626.00 | Matrix Pharmaceutical, Inc. | $ 77,106.00 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 21 | Deposit | 02/06/1994 | $ 4,510.00 | Syntex | $ 81,616.00 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 22 | Deposit | 02/10/1994 | $ 2,130.00 | Liposome Technology, Inc. | $ 83,746.00 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 23 | Deposit | 02/14/1994 | $ 5,460.00 | Matrix Pharmaceutical, Inc. | $ 89,206.00 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 24 | Deposit | 02/17/1994 | $ 5,376.25 | Syntex | $ 94,582.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 25 | Deposit | 02/25/1994 | $ 3,666.00 | Matrix Pharmaceutical, Inc. | $ 98,248.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 26 | Deposit | 03/08/1994 | $ 1,976.00 | Matrix Pharmaceutical, Inc. | $ 100,224.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 27 | Deposit | 03/12/1994 | $ 1,664.00 | Matrix Pharmaceutical, Inc. | $ 101,888.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 28 | Deposit | 03/18/1994 | $ 1,560.00 | Matrix Pharmaceutical, Inc. | $ 103,448.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 29 | Deposit | 03/27/1994 | $ 12,345.00 | Syntex | $ 115,793.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 30 | Deposit | 04/02/1994 | $ 6,390.00 | Syntex | $ 122,183.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 31 | Deposit | 04/02/1994 | $ 4,056.00 | Matrix Pharmaceutical, Inc. | $ 126,239.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 32 | Deposit | 04/08/1994 | $ 5,000.00 | R & C transfer 1099 | $ 131,239.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 33 | Deposit | 04/15/1994 | $ 1,898.00 | Matrix Pharmaceutical, Inc. | $ 133,137.25 | ZOld1 Bus ChkDowney 10/93-9/97 |

**3:01 PM**
**01/23/22**
**Accrual Basis**

<div align="center">

**Chastain Research Group, Inc.**
**Profit & Loss Detail**
January 1993 through December 1994

</div>

| 34 | Deposit | 04/22/1994 | $ | 1,202.50 | National Jury Project | $ 133,839.75 | ZOld1 Bus ChkDowney 10/93-9/97 |
|----|---------|------------|---|----------|-----------------------|--------------|--------------------------------|
| 35 | Deposit | 04/30/1994 | $ | 2,697.50 | Matrix Pharmaceutical, Inc. | $ 137,037.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 36 | Deposit | 05/11/1994 | $ | 1,924.00 | Matrix Pharmaceutical, Inc. | $ 138,961.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 37 | Deposit | 05/16/1994 | $ | 13,560.00 | Syntex | $ 152,521.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 38 | Deposit | 05/26/1994 | $ | 3,978.00 | GW Consulting | $ 156,499.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 39 | Deposit | 05/27/1994 | $ | 7,261.00 | Matrix Pharmaceutical, Inc. | $ 163,760.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 40 | Deposit | 05/31/1994 | $ | 1,872.00 | Matrix Pharmaceutical, Inc. | $ 165,632.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 41 | Deposit | 06/04/1994 | $ | 4,470.00 | Syntex | $ 170,102.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 42 | Deposit | 06/10/1994 | $ | 4,935.00 | Syntex | $ 175,037.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 43 | Deposit | 06/10/1994 | $ | 1,820.00 | Matrix Pharmaceutical, Inc. | $ 176,857.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 44 | Deposit | 06/13/1994 | $ | 4,277.00 | GW Consulting | $ 181,134.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 45 | Deposit | 06/16/1994 | $ | 3,796.00 | Matrix Pharmaceutical, Inc. | $ 184,930.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 46 | Deposit | 07/01/1994 | $ | 6,930.00 | Syntex | $ 191,860.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 47 | Deposit | 07/01/1994 | $ | 4,459.00 | GW Consulting | $ 196,319.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 48 | Deposit | 07/07/1994 | $ | 4,108.00 | Liposome Technology, Inc. | $ 200,427.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 49 | Deposit | 07/15/1994 | $ | 4,472.00 | GW Consulting | $ 204,899.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 50 | Deposit | 07/21/1994 | $ | 8,293.00 | Liposome Technology, Inc. | $ 213,192.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 51 | Deposit | 08/02/1994 | $ | 7,052.00 | Liposome Technology, Inc. | $ 220,244.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 52 | Deposit | 08/05/1994 | $ | 4,810.00 | GW Consulting | $ 225,054.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 53 | Deposit | 08/13/1994 | $ | 4,251.00 | GW Consulting | $ 229,305.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 54 | Deposit | 08/16/1994 | $ | 8,105.00 | Liposome Technology, Inc. | $ 237,410.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 55 | Deposit | 08/24/1994 | $ | 3,796.00 | GW Consulting | $ 241,206.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 56 | Deposit | 08/29/1994 | $ | 5,000.00 | UCSF - HIAA | $ 246,206.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 57 | Deposit | 09/01/1994 | $ | 7,479.00 | Liposome Technology, Inc. | $ 253,685.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 58 | Deposit | 09/12/1994 | $ | 2,000.00 | UCSF - HIAA | $ 255,685.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 59 | Deposit | 09/22/1994 | $ | 4,472.00 | GW Consulting | $ 260,157.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 60 | Deposit | 09/23/1994 | $ | 7,966.00 | Liposome Technology, Inc. | $ 268,123.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 61 | Deposit | 09/23/1994 | $ | 1,560.00 | Matrix Pharmaceutical, Inc. | $ 269,683.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 62 | Deposit | 10/06/1994 | $ | 4,758.00 | GW Consulting | $ 274,441.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 63 | Deposit | 10/06/1994 | $ | 3,666.00 | Liposome Technology, Inc. | $ 278,107.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 64 | Deposit | 10/12/1994 | $ | 4,680.00 | Matrix Pharmaceutical, Inc. | $ 282,787.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 65 | Deposit | 10/20/1994 | $ | 3,952.00 | GW Consulting | $ 286,739.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 66 | Deposit | 10/20/1994 | $ | 8,203.00 | Liposome Technology, Inc. | $ 294,942.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 67 | Deposit | 10/28/1994 | $ | 6,305.00 | Matrix Pharmaceutical, Inc. | $ 301,247.25 | ZOld1 Bus ChkDowney 10/93-9/97 |

**Chastain Research Group, Inc.**
**Profit & Loss Detail**
**January 1993 through December 1994**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 68 | Deposit | 11/01/1994 | $ 4,160.00 | GW Consulting | $ 304,407.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 69 | Deposit | 11/03/1994 | $ 11,322.00 | Liposome Technology, Inc. | $ 316,729.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 70 | Deposit | 11/12/1994 | $ 4,517.50 | Matrix Pharmaceutical, Inc. | $ 321,246.75 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 71 | Deposit | 11/15/1994 | $ 4,992.00 | GW Consulting | $ 326,238.75 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 72 | Deposit | 11/15/1994 | $ 13,134.00 | Liposome Technology, Inc. | $ 339,372.75 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 73 | Deposit | 11/18/1994 | $ 8,585.00 | Matrix Pharmaceutical, Inc. | $ 347,957.75 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 74 | Deposit | 12/02/1994 | $ 17,084.50 | Liposome Technology, Inc. | $ 365,042.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 75 | Deposit | 12/15/1994 | $ 5,460.00 | Matrix Pharmaceutical, Inc. | $ 370,502.25 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 76 | Deposit | 12/21/1994 | $ 13,302.50 | Liposome Technology, Inc. | $ 383,804.75 | ZOld1 Bus ChkDowney 10/93-9/97 |
| 77 | | | $ 383,804.75 | | $ 383,804.75 | |
| 78 | | | $ 383,804.75 | | $ 383,804.75 | |
| 79 | | | $ 383,804.75 | | $ 383,804.75 | |

**EXHIBIT "5"**

FEB. 23. 1998 1:00PM··· MOUNTAIN DRILED CA/CORPORATION Case 5:22-cv-06745-VKD Document 1-1 Filed 11/01/22 Page 41 of 151 NO. 3041 P. 11/22

TRO

1  KEKER & VAN NEST, L.L.P.
   JEFFREY R. CHANIN - #103649
2  KARIN KRAMER - #87346
   REBECCA K. SULLIVAN - #189299
3  710 Sansome Street
   San Francisco, CA 94111-1704
4  Telephone: (415) 391-5400

5  Attorneys for Plaintiff
   TRILOGY CONSULTING CORPORATION
6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                   SAN JOSE DIVISION

11  TRILOGY CONSULTING              )  Case No. *To Be Assigned*
    CORPORATION,                    )
12                                  )
         Plaintiff,                 )  **PLAINTIFF TRILOGY
13                                  )  CONSULTING CORPORATION'S
    v.                              )  FIRST SET OF REQUESTS FOR
14                                  )  PRODUCTION OF DOCUMENTS
    THE CHASTAIN RESEARCH GROUP,    )  TO DEFENDANT ROBERT
15  INC., ROBERT CHASTAIN, AND      )  CHASTAIN**
    SUSAN CHASTAIN,                 )
16                                  )
         Defendants.                )
17  _____)

18  PROPOUNDING PARTY: PLAINTIFF TRILOGY CONSULTING CORPORATION

19  RESPONDING PARTY:  DEFENDANT ROBERT CHASTAIN

20  SET NUMBER:        ONE

21  TO DEFENDANT ROBERT CHASTAIN AND TO HIS COUNSEL OF RECORD:

22       Pursuant to Rule 34 of the Federal Rules of Civil procedure, defendant Trilogy

23  Consulting Corporation ("Trilogy") propounds the following requests for production on

24  Defendant Robert Chastain ("Chastain"). Trilogy requests that Chastain produce the

25  requested documents and things, as more specifically demanded hereafter, at the offices

26  of Keker & Van Nest, 710 Sansome Street, San Francisco, California 94111, or at such

27  other location as counsel for the parties may agree, on or before 5:00 p.m., February 23,

28

1  1998.

2          These discovery requests are deemed continuing.  If Kime acquires additional

3  knowledge or information with respect to any of these discovery requests after service of

4  its responses, Kime is requested to serve a supplemental response to each such discovery

5  request.

6          The following definitions and instructions apply:

7                          **DEFINITIONS AND INSTRUCTIONS**

8          Unless the context indicates otherwise, the following words and phrases have the

9  meanings given:

10         A.     "Robert Chastain," "you" or "your" mean and refer to Robert Chastain, and

11  to all of his employees, agents, officers, directors, representatives, consultants, accountants

12  and attorneys, including any person who has served in any such capacity at any time.

13         B.     "Trilogy" refers to Trilogy Consulting Corporation, including any of its

14  predecessors, subsidiaries, and divisions.

15         C.     "CRG" refers to Chastain Research Group, and any of its employees,

16  representatives, affiliates or agents.

17         D.     "Kime" refers to Connie Kime, any of her employees, agents, officers,

18  directors, representatives, consultants, accountants and attorneys, including any person who

19  has served in any such capacity at any time.

20         E.     "Kulpa" refers to Kenneth Kulpa and to all of his employees, agents,

21  officers, directors, representatives, consultants, accountants and attorneys, including any

22  person who has served in any such capacity at any time.

23         F.     The term "document" is used in the broadest possible sense as interpreted

24  under the Federal Rules of Civil Procedure and includes, without limitation, all originals

25  and copies, duplicates, drafts, and recordings of any written, printed, graphic,

26  electronically stored, or otherwise recorded matter, however produced or reproduced, and

27  all "writings" as defined in Federal Rule of Evidence 1001, including, without limitation,

28

the following: abstracts, advertisements, agendas, agreements, analyses of any kind, appointment calendars, articles, assignments, blueprints, books, brochures, charts, circulars, compilations, computer runs and printouts, computer data files in machine readable form, contracts, diaries, letters, reports (including reports or notes of telephone or other conversations), memoranda, brochures, books, ledgers, drawings, photographs, specifications, drafts, catalogs, instructions, invoices, bills of materials, minutes, orders, publications, purchase orders, proposals, working papers, laboratory notebooks and other writings of whatsoever nature, whether on paper, magnetic tape or other information storage means, including film and computer memory devices; and where any such items contain any marking not appearing on the original or are altered from the original, then such items shall be considered to be separate original documents. If the original of the document is unavailable or was not reviewed or received by a particular person, "document" includes any identical copy of the original.

G. The term "person" or "persons" includes any individual, firm, proprietorship, partnership, association, joint venture, corporation, governmental agency, other entity, or combination of any of the above.

H. The term "date" means the exact day, month, and year, if ascertainable, and, if not, the best approximation thereof.

I. The term "relate," "relates," or "relating" means concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning, discussing, consisting of, comprising, showing, commenting on, evidencing, describing the subject matter.

J. The term "communication" means every manner or method of disclosure or transfer or exchange of information, whether orally or by document, and whether face to face, by telephone, mail, personal delivery or otherwise.

K. All documents shall be produced in the booklet, binder, file, folder, envelope, electronic storage device, or other container in which the documents are kept or

1    maintained by you.  If for any reason the container cannot be produced, please produce

2    copies of all labels or other identifying markings.  Documents attached to each other

3    should not be separated.

4        L.    If you cannot respond to a document request fully, after a diligent attempt

5    to obtain the requested information, answer the document request to the extent possible,

6    specify the portion of the request you are unable to answer, and provide whatever

7    information you have regarding the unanswered portion.

8        M.    If a document once existed, but has been lost, destroyed, or otherwise is no

9    longer in your possession, identify the document and state the details concerning the loss

10   or destruction of such document, including the name and address of the present custodian

11   of any such document known to you.

12       N.    In the event any document is withheld on any claim of privilege, including

13   a claim of attorney/client privilege or work product immunity, provide a detailed privilege

14   log which describes the basis for your claim and the information withheld, including

15   sufficient details to enable the claim of privilege or immunity to be adjudicated.

16       O.    The words "and" and "or" shall be construed in the conjunctive or

17   disjunctive, whichever makes the request more inclusive.

18       P.    Any pronouns shall be construed to refer to the masculine, feminine, or

19   neuter gender, in singular or plural, as in each case is most appropriate.

20       Q.    As used herein, "all," "any," "each," and "every" means "all, each and

21   every."

22       R.    The term "including" means including, but not limited to.

## REQUEST FOR PRODUCTION OF DOCUMENTS

## REQUEST NO. 1.

25       Any and all documents possessed, created, or generated by Kulpa or Kime

26   containing information related to the business of Trilogy, including without limitation,

27   information pertaining to clients, prospective clients, or consultants or prospective

28

-4-

consultants, and information related to the Western Users of SAS Software ("WUSS") group.

**REQUEST NO. 2.**

Any and all documents which identify or otherwise relate to companies or persons with whom Kulpa or Kime have done business, or are soliciting business, for you, Susan Chastain or CRG, including those companies with whom Kulpa or Kime have placed or intend to place consultants, including without limitation correspondence, notes of meetings, and telephone billing records.

**REQUEST NO. 3.**

Any and all documents containing information which Kulpa or Kime have given to, or have created for you, Susan Chastain or CRG.

**REQUEST NO. 4.**

Any and all documents relating to Kulpa's or Kime's decision to leave, or termination from Trilogy, including contacts with any prospective employer, job offers or records of meetings or communications with you, Susan Chastain or CRG.

**REQUEST NO. 5.**

Any and all documents or things which refer or relate to Kulpa's or Kime's employment or other business relationship with you, Susan Chastain or CRG, including, but not limited to, employment contracts, partnership agreements, letters of intent, or correspondence related to any such relationship.

**REQUEST NO. 6.**

For those clients or consultants of you, Susan Chastain, or CRG that you, Susan Chastain or CRG assert were independently developed by you, Susan Chastain or CRG, provide a list of such clients, along with any and all records of any contact or effort by Kulpa or Kime or any other employee, agent, officer, director, representative, consultant, accountant, or attorney of you, Susan Chastain or CRG to develop such clients or consultants.

-5-

1 **REQUEST NO. 7.**

2    For those clients or consultants of you, Susan Chastain or CRG that you, Susan

3 Chastain or CRG assert were ascertainable from public sources, provide such public source

4 you, Susan Chastain or CRG contend you, Susan Chastain or CRG relied on, along with

5 records of any effort made to ascertain those clients or consultants.

6 **REQUEST NO. 8.**

7    For any laptop or desktop computer purchased by you, Susan Chastain or CRG for

8 Kulpa or Kime, or which Kulpa or Kime use for the your, Susan Chastain's or CRG's

9 business, any and all documents related to the date of purchase of such computer or the

10 date such computer was given to Kulpa or Kime for their use.

11

12 DATED: February 19, 1998              KEKER & VAN NEST, L.L.P.

13

14                              By:    _____

15                                     REBECCA K. SULLIVAN
                                       Attorneys for Plaintiff
16                                     TRILOGY CONSULTING CORPORATION

17

18

19

20

21

22

23

24

25

26

27

28

-6-

## PROOF OF SERVICE

I am over the age of eighteen years and not a party to this action. My business address is 710 Sansome Street, San Francisco, California 94111. On the date specified below, I caused the following documents to be served:

**PLAINTIFF TRILOGY CONSULTING CORPORATION'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ROBERT CHASTAIN**

( x )(BY MAIL)   I am employed in the County where the mailing described below occurred, and am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Services. I placed a true copy thereof (to which was attached a copy of this document(s)) in a sealed envelope(s) with postage thereon fully prepaid. The envelope(s) will be deposited with the United States Postal Service on this day in the ordinary course of business in San Francisco, California, following ordinary business practices.

( )(BY PERSONAL SERVICE)  I caused such envelope(s) to be delivered by hand to the addressee(s) listed below.

( x )   (BY FACSIMILE)  I caused the document(s) listed above to be served by telefaxing said document(s) to the number(s) listed below at the location(s) shown as follows.

The envelope(s) were addressed to the following:

Thomas E. Kuhnle                        Roberta Hayashi, Esq.
Ulrico S. Rosales                       Berliner, Cohen
McCutchen, Doyle, Brown & Enersen       10 Almaden Blvd., 11th Floor
3150 Porter Drive                       San Jose, CA 95113
Palo Alto, CA 94304-1212                Fax.:(408).998.5388
Fax.: (650).849.4800

Executed on February 20, 1998, at San Francisco, California.

I, Rufino Buenaventura, declare under penalty of perjury that the foregoing is true and correct.

_____
Rufino Buenaventura

1  McCUTCHEN, DOYLE, BROWN & ENERSEN, LLP
   ULRICO S. ROSALES (SB #139809)
2  THOMAS E. KUHNLE (SB #178055)
   3150 Porter Drive
3  Palo Alto, California 94304-1212
   Telephone:  (650) 849-4400
4
   Attorneys for Defendants
5  Chastain Research Group, Inc.,
   Robert Chastain, Susan Chastain
6

7

8                    UNITED STATES DISTRICT COURT

9         NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

10

11  TRILOGY CONSULTING            No. C-98 20161
    CORPORATION,
12                               RESPONSE OF ROBERT CHASTAIN
            Plaintiff,            TO TRILOGY CONSULTING
13                               CORPORATION'S FIRST SET OF
        v.                       REQUESTS FOR PRODUCTION OF
14                               DOCUMENTS

15  CHASTAIN RESEARCH GROUP, INC.,
    ROBERT CHASTAIN, AND SUSAN
16  CHASTAIN,

17          Defendants.

18
    PROPOUNDING PARTY:  Plaintiff Trilogy Consulting Corporation
19
    RESPONDING PARTY:  Defendant Robert Chastain
20
    SET NUMBER:  One
21
            Pursuant to Rule 34 of the Federal Rules of Civil
22
    Procedure and Northern District Civil Local Rule 34, defendant
23
    Robert Chastain ("Chastain") hereby responds to Plaintiff Trilogy
24
    Consulting Corporation's ("Trilogy") first set of requests for
25
    production of documents.
26

            RESPONSE OF ROBERT CHASTAIN TO TRILOGY CONSULTING CORPORATION'S FIRST SET OF
                        REQUESTS FOR PRODUCTION OF DOCUMENTS
                                   No. C-98 20161

50025698_6/20898-002

**GENERAL OBJECTIONS**

1. Chastain's response is based upon his present knowledge, information, and belief. Each response is at all times subject to additional or different information that discovery or further investigation may disclose. These responses are subject to modification and supplementation as appropriate in view of such additional or different information that discovery or further investigation may reveal.

2. Chastain reserves all objections or other questions as to the competency, relevance, materiality, privilege, or admissibility at trial or in any other proceeding in this or any other action for any purpose whatever of any information provided in this response.

3. Chastain objects to these requests for production of documents to the extent they call for information protected by the work product doctrine, the attorney-client privilege, or any other recognized privilege or doctrine. To the extent that any such information is inadvertently produced, such production shall not waive these respective doctrines and privileges.

4. Chastain objects to these requests for production of documents to the extent they are unreasonable in light of the stipulated temporary restraining order and/or irrelevant to the preliminary injunction hearing.

These general objections are incorporated by reference into each specific response and objection below.

50025898_6

1       **SPECIFIC RESPONSES AND OBJECTIONS**

2       REQUEST FOR PRODUCTION NO. 1:

3               Any and all documents possessed, created, or generated

4       by Kulpa or Kime containing information related to the business

5       of Trilogy, including without limitation, information pertaining

6       to clients, prospective clients, or consultants or prospective

7       consultants, and information related to the Western Users of SAS

8       Software ("WUSS") group.

9       RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

10              Chastain objects to this request on the grounds that it

11      is overbroad, unduly burdensome, oppressive, and harassing.

12      Chastain further objects to this request on the grounds that it

13      seeks information which is irrelevant to any issues in this case

14      and is not reasonably calculated to lead to the discovery of

15      admissible evidence.  Chastain further objects to this request on

16      the grounds that the term "business of Trilogy" is vague and

17      ambiguous.

18      REQUEST FOR PRODUCTION NO. 2:

19              Any and all documents which identify or otherwise

20      relate to companies or persons with whom Kulpa or Kime have done

21      business, or are soliciting business, for you, Susan Chastain or

22      CRG, including those companies with whom Kulpa or Kime have

23      placed or intend to place consultants, including without

24      limitation correspondence, notes of meetings, and telephone

25      billing records.

26

RESPONSE OF ROBERT CHASTAIN TO TRILOGY CONSULTING CORPORATION'S FIRST SET OF
REQUESTS FOR PRODUCTION OF DOCUMENTS
No. C-98 20161
3

50025698_6

1  RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

2        Chastain objects to this request on the grounds that it

3  is overbroad, unduly burdensome, oppressive, and harassing.

4  Chastain further objects to this request on the grounds that it

5  seeks information which is irrelevant to any issues in this case

6  and is not reasonably calculated to lead to the discovery of

7  admissible evidence.  Without waiving these objections, Chastain

8  agrees to produce telephone billing records in his possession,

9  custody or control.

10  REQUEST FOR PRODUCTION NO. 3:

11        Any and all documents containing information which

12  Kulpa or Kime have given to, or have created for you, Susan

13  Chastain or CRG.

14  RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

15        Chastain objects to this request on the grounds that it

16  is overbroad, unduly burdensome, oppressive, and harassing.

17  Chastain further objects to this request on the grounds that it

18  seeks information which is irrelevant to any issues in this case

19  and is not reasonably calculated to lead to the discovery of

20  admissible evidence.

21  REQUEST FOR PRODUCTION NO. 4:

22        Any and all documents relating to Kulpa's or Kime's

23  decision to leave, or termination from Trilogy, including

24  contacts with any prospective employer, job offers or records of

25  meetings or communications with you, Susan Chastain or CRG.

26

50025698_8

RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

Chastain has produced all such documents in his possession, custody and control.

REQUEST FOR PRODUCTION NO. 5:

Any and all documents or things which refer or relate to Kulpa's or Kime's employment or other business relationship with you, Susan Chastain or CRG, including, but not limited to, employment contract, partnership agreements, letters of intent, or correspondence related to any such relationship.

RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

Chastain has produced all such documents in his possession, custody and control.

REQUEST FOR PRODUCTION NO. 6:

For those clients or consultants of you, Susan Chastain, or CRG that you, Susan Chastain or CRG assert were independently developed by you, Susan Chastain or CRG, provide a list of such clients, along with any and all records of any contact or effort by Kulpa or Kime or any other employee, agent, officer, director, representative, consultant, accountant, or attorney of you, Susan Chastain or CRG to develop such clients or consultants.

RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

Chastain objects to this request on the grounds that it is overbroad, unduly burdensome, oppressive, and harassing. Chastain further objects to this request on the grounds that it seeks information which is irrelevant to any issues in this case

RESPONSE OF ROBERT CHASTAIN TO TRILOGY CONSULTING CORPORATION'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
No. C-98 20161
5

50025698_6

1  and is not reasonably calculated to lead to the discovery of

2  admissible evidence.  Without waiving these objections, Chastain

3  has produced a list of independently developed contacts and all

4  of the contracts between Chastain Research Group and its clients

5  for consulting services.

6  REQUEST FOR PRODUCTION NO. 7:

7           For those clients or consultants of you, Susan Chastain

8  or CRG that you, Susan Chastain or CRG assert were ascertainable

9  from public sources, provide such public source you, Susan

10  Chastain or CRG contend you, Susan Chastain or CRG relied on,

11  along with records of any effort made to ascertain those clients

12  or consultants.

13  RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

14           Chastain objects to this request on the grounds that it

15  is overbroad, unduly burdensome, oppressive, and harassing.

16  Without waiving this objection, Chastain has produced a list of

17  the public sources which may contain information about current

18  and potential clients and consultants

19  REQUEST FOR PRODUCTION NO. 8:

20           For any laptop or desktop computer purchased by you,

21  Susan Chastain or CRG for Kulpa or Kime, or which Kulpa or Kime

22  use for the your, Susan Chastain's or CRG's business, any and all

23  documents related to the date of purchase of such computer or the

24  date such computer was given to Kulpa or Kime for their use.

25

26

50025698_6

1   RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

2            Chastain has produced all such documents in his

3   possession, custody and control.

4   DATED:  September 6, 2002.

5                              McCUTCHEN, DOYLE, BROWN & ENERSEN, LLP

6

7

8                              By: _____
                                   THOMAS E. KUHNLE (SB #178055)
9                                  Attorneys for Defendants
                                   Chastain Research Group, Inc.,
10                                 Robert Chastain, Susan Chastain

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

50025896_6

1

<u>VERIFICATION</u>

2    I have read the foregoing RESPONSE OF ROBERT CHASTAIN

3 TO TRILOGY CONSULTING CORPORATION'S FIRST SET OF REQUESTS FOR

4 PRODUCTION OF DOCUMENTS and know the contents thereof, and

5 certify that the same is true of my own knowledge.

6

7

8 DATE:_____          By:_____

9                                              Robert Chastain

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

RESPONSE OF ROBERT CHASTAIN TO TRILOGY CONSULTING CORPORATION'S FIRST SET OF
REQUESTS FOR PRODUCTION OF DOCUMENTS
No. C-98 20161
8

PROOF OF SERVICE

1  
2      I am over 18 years of age, not a party to this action

3  and employed in Palo Alto, California at 3150 Porter Drive, Palo

4  Alto, California 94304-1212.  I am readily familiar with the

5  practice of this office for collection and processing of

6  correspondence for mailing with the United States Postal Service

7  and correspondence is deposited with the United States Postal

8  Service that same day in the ordinary course of business.

9      Today I served the attached:

10     RESPONSE OF ROBERT CHASTAIN TO TRILOGY
       CONSULTING CORPORATION'S FIRST SET OF
11     REQUESTS FOR PRODUCTION OF DOCUMENTS

12 by causing a true and correct copy of the above to be placed in

13 the United States Mail at Palo Alto, California in sealed

14 envelope(s) with postage prepaid, addressed as follows:

15 Jeffrey R. Chanin, Esq.        Sharon Kirsch, Esq.
   Keker & Van Nest, LLP          Berliner Cohen
16 710 Sansome St.                10 Almaden Blvd, 11th Floor
   San Francisco, CA.  94111-1704 San Jose, CA.  95113-5388

17     I declare under penalty of perjury under the laws of

18 the State of California that the foregoing is true and correct

19 and that this declaration was executed on March 25, 1998.

20

21

22                            _____
                                    Suga A. Ikeda
23

24

25

26

50025698_6

## DOCUMENTS REQUESTED

### REQUEST NO. 1.

Any and all documents possessed, created, or generated by Kulpa or Kime containing information related to the business of Trilogy, including without limitation, information pertaining to clients, prospective clients, or consultants or prospective consultants.

### REQUEST NO. 2.

Any and all documents which identify or otherwise relate to any attempt by Kulpa or Kime to gain for CRG the business of a Trilogy former, current or prospective client or consultant from January 1, 1997, up to and including the present day, including without limitation, correspondence, notes of meetings, and telephone billing records.

### REQUEST NO. 3.

Any and all documents reflecting or relating to any communication or meeting between you and Kulpa or Kime from January 1, 1997 to present, including without limitation calendars, telephone billing records, expense reports, note, and correspondence.

### REQUEST NO. 4.

Any and all documents relating to any attempt by Kulpa or Kime to gain the business of any person or company not a former, current or prospective client of or

0143734                              - 5 -

consultant for Trilogy.

REQUEST NO. 5.

Any and all documents containing information which Kulpa or Kime has given to, or has created for you, Robert Chastain or CRG.

REQUEST NO. 6.

Any and all documents relating to Kulpa's or Kime's decision to leave, or termination from Trilogy, including contacts with prospective employers, job offers or records of meetings, and communication with you, Robert Chastain or CRG.

REQUEST NO. 7.

Any and all documents or things not already produced by CRG which refer or relate to Kulpa's or Kime's employment or other business relationship with you, Robert Chastain or CRG, including, but not limited to, employment contracts, partnership agreements, letters of intent or communication about such a relationship.

REQUEST NO. 8.

Any and all documents identifying individuals or companies who were clients of CRG on or before June 1, 1997.

REQUEST NO. 9.

Any and all documents identifying individuals or companies who became clients of CRG between June 1, 1997 and October 1, 1997.

REQUEST NO. 10.

Any and all documents identifying individuals or companies who became clients of CRG from October 1, 1997 to the present.

REQUEST NO. 11.

Any and all documents identifying individuals or companies who were consultants with or for CRG on or before June 1, 1997.

REQUEST NO. 12.

Any and all documents identifying individuals or companies who became consultants with or for CRG between June 1, 1997 and October 1, 1997.

REQUEST NO. 13.

Any and all documents identifying individuals or companies who became consultants with or for CRG from October 1, 1997 to the present.

REQUEST NO. 14.

Any and all documents referring to or reflecting contacts prior to June 1, 1997 with any of the individuals or companies identified in your responses to Request Nos. 8, 9 and 10, including without limitation all records of communications or meetings with such individual or companies and any contracts entered into or involving those individual companies.

REQUEST NO. 15.

Any and all documents referring to or reflecting contacts between June 1, 1997

0143734                                      - 7 -

and October 1, 1997 with any of the individuals or companies identified in your responses to Request No. 8, 9 and 10 including without limitation all records of communications or meetings with such individual or companies and any contracts entered into or involving those individual companies.

REQUEST NO. 16.

Any and all documents referring to or reflecting contacts from October 1, 1997 through the present with any of the individuals or companies identified in your responses to Request Nos. 8, 9 and 10 including without limitation all records of communications or meetings with such individual or companies and any contracts entered into or involving those individual companies.

REQUEST NO. 17.

All documents referring to or reflecting contracts to provide consulting services involving the individuals or companies identified in your responses to Request Nos. 11, 12 and 13, including, without limitation, contracts, letters of intent, phone bills, expense reports, notes, electronic mail, and correspondence.

REQUEST NO.18.

For your, Robert Chastain's or CRG's clients or consultants as of November 12, 1997, that you, Robert Chastain, or Kulpa assert were ascertainable from public sources, provide such public source relied on, along with records of any effort made to ascertain those clients or consultants from such public sources.

0143734                          - 8 -

REQUEST NO. 19.

For any laptop or desktop computer purchased by you, Robert Chastain or
CRG for Kulpa or Kime, or which Kulpa or Kime use for the business of CRG,
Robert Chastain, or you, any and all documents related to the date of purchase of such
computer or the date such computer was given to Kulpa or Kime for their use.

REQUEST NO. 20.

Any and all documents referring to or reflecting contacts prior to October 1,
1997 with any of the companies or individuals identified in documents numbered
C00116-C00130, produced by the Chastain Research Group in this case on February
10, 1997.

REQUEST NO. 21.

Any and all documents referring to or reflecting contacts after October 1, 1997
with any of the companies or individuals identified in documents numbered C00116-
C00130, produced by the Chastain Research Group in this case on February 10, 1997.

**EXHIBIT "6"**

# Chastain Research Group, Inc.

# Employee Earnings Summary

## January through December 1999

| 0 | Employee |
|---|---|
| 1 | Abarcar, Maribel |
| 2 | Borrow, Jennifer A |
| 3 | Chiruvolu, Padmaja |
| 4 | Chiu, Tajer |
| 5 | DeRuntz, Kristina M |
| 6 | Du, David |
| 7 | Edington, Audra S |
| 8 | Frahm, Lindley C |
| 9 | Gonzalez, Therese V |
| 10 | Griffin, Kathleen E. |
| 11 | Hansson, Cherise R |
| 12 | Harris, Brad J |
| 13 | Hiller, Jordan B |
| 14 | Hynes, Kristin M |
| 15 | Jones Taylor, Marlene |
| 16 | Julius, Joanne R. |
| 17 | Lu, Mei |
| 18 | McFarland, Randi O |
| 19 | O'Brien, Cynthia A. |
| 20 | Rooney, Julie A |
| 21 | Rossi, Michael J |
| 22 | Ryan, Destini D |
| 23 | Salehi, Anthony T. |
| 24 | Terrell, Bruce H |
| 25 | Varnes, Kathryn G |
| 26 | Verschoor, Steven |
| 27 | Young, James P |
| 28 | Zhong, Ming |

**EXHIBIT "7"**

Minutes for Meeting of Board of Directors
of CHASTAIN RESEARCH GROUP, INC.


The board of directors held a meeting at 7:00 P.M. on August 18, 1998 at 310 Ballymore Circle, San
Jose, California, 95136.

The following directors, marked as present next to their names, were in attendance and constituted a
quorum of the full board.

     [X] Present    { } Absent    **ROBERT L. CHASTAIN**
     [X] Present    { } Absent    **SUSAN L. CHASTAIN**
     [X] Present    { } Absent    **HARRIET MAJOR**

All items on the agenda for the annual meeting were reviewed and upon motions, seconded, and
unanimously approved it was:

### ELECTION OF OFFICERS

**RESOLVED**, regarding Article 3, Section 3 of corporate Bylaws (Election of Board), that all 3
Directors are re-elected to another annual term with Robert L. Chastain as the Chairperson.

### TRANSFER OF SHARES

**RESOLVED** that 51% of all shares will be transferred to Robert L. Chastain effective August 18,
1998 due to his increasing role as Chief Executive Officer and General Counsel. The remainder of
all shares shall continue to be retained by Susan L. Chastain.

### EXECUTIVE ADVISORY BOARD

**RESOLVED** that Robert L. Chastain will look into and examine the benefits of joining an
Executive Advisory Board established by Art Keller. If it proves beneficial, Chastain Research
Group, Inc. will join the Advisory Board.

Since there was no further business, upon motion duly made and seconded, the meeting was
adjourned at 9:00 P.M.


       **SUSAN L. CHASTAIN**, Secretary


Minutes of **Chastain Research Group, Inc.**

1

**EXHIBIT "8"**



Center for Veterans Enterprise

VetBiz Vendor Information Pages

# Search Results

Print This Page | Back to Search Results

**Business Summary**

Last Updated: 10/27/2008 Times Viewed: 8

| Veteran Owned Small-Business Information | |
|---|---|
| Business Name | Chastain Research Group, Inc. |
| Business Owner | Dr Robert L Chastain |
| Job Title | Pres-CEO |
| Daytime Phone | 650-566-8066 |
| Fax Number | 650-566-8076 |
| Email | bob@chastain.com |
| Business Address | 6 Shorebreeze Court |
| City | East Palo Alto |
| State/Territory | CA |
| County | San Mateo |
| Zip | 94303 2053 |
| Web Site | www.chastain.com |
| DUNS | 883825531 |
| NAICS | |
| FSC | |
| PSC | |
| Year Business Established | 1993 |
| Average $ Annual Revenue | $1,429,528.00 |
| Largest $ Contract Completed to Date | $340,000.00 |
| Bonding Level per Contract | $0.00 |
| Aggregate $ | $0.00 |
| Cage Code # | |
| Federal Certifications | HubZone |
| Federal Contracts | N |
| VA Contracts | N |
| Commercial Contracts | N |
| Purchase Card | N |
| Veteran-Owned Small Business | Y |

- Search for a Business
- Register Your Business
- Update a Business Profile
- Help
- Veteran Resources
- Contact CVE
- Home



| | |
|---|---|
| **Service-Disabled Veteran-Owned Small Business** | Y |
| **Registered for Government Business** | Y |
| **Registered for Non-Government Business** | Y |
| **Number of Employees** | 10 |
| **Number of Operating Locations** | 1 |
| **Geographical Service Area(s)** | all |
| **FedBizOpps Notification** | Y |
| **VA's Annual Forecast Notification** | Y |
| **Highest level of Personnel Clearance** | None |
| **Highest level Facility Clearance** | None |

### Capabilities Keywords

data management, statistics, biostatistics, analysis, analytical reporting, clinical trials research

### Capabilities Narrative

Chastain Research Group, Inc. specializes in statistical analysis, statistical programming with both SAS and SPlus, and data management for Clinical Trial Research, including IND, Phases I thru IV, NDA, BLA, PMA, DMC, DCC, post-marketing support. We support biotechnology, pharmaceutical and medical device companies for FDA submissions.

**Print This Page**                    **Back to Search Results**

Search | Register | Update | Help | Home | Contact | Veteran Resources

| Privacy & Security Statement | Disclaimers | Accessibility | Contact VA |
|---|---|---|---|

*The VetBiz Registry is a service of the Department of Veterans Affairs and the Center for Veterans Enterprise.*

**EXHIBIT "9"**

Minutes for Meeting of Board of Directors
of CHASTAIN RESEARCH GROUP, INC.

The board of directors held a meeting at 7:00 P.M. on August 18, 1998 at 310 Ballymore
Circle, San Jose, California, 95136.

The following directors, marked as present next to their names, were in attendance and
constituted a quorum of the full board.

    [X] Present    { } Absent    **ROBERT L. CHASTAIN**
    [X] Present    { } Absent    **SUSAN L. CHASTAIN**
    [X] Present    { } Absent    **HARRIET MAJOR**

All items on the agenda for the annual meeting were reviewed and upon motions,
seconded, and unanimously approved it was:

### ELECTION OF OFFICERS

**RESOLVED**, regarding Article 3, Section 3 of corporate Bylaws (Election of Board),
that all 3 Directors are re-elected to another annual term with Robert L. Chastain as the
Chairperson.

### TRANSFER OF SHARES

**RESOLVED** that 49% of all shares will be transferred to Robert L. Chastain effective
August 18, 1998 due to his increasing role as Chief Executive Officer and General
Counsel.  The remainder of all shares shall continue to be retained by Susan L. Chastain.

### EXECUTIVE ADVISORY BOARD

**RESOLVED** that Robert L. Chastain will look into and examine the benefits of joining
an Executive Advisory Board established by Art Keller.  If it proves beneficial, Chastain
Research Group, Inc. will join the Advisory Board.

Since there was no further business, upon motion duly made and seconded, the meeting
was adjourned at 9:00 P.M.

**SUSAN L. CHASTAIN**, Secretary

**EXHIBIT "10"**

1

## DECLARATION OF CHARLES ADAMS

2      I, CHARLES ADAMS, declare as follows:

3      1.      I am a certified computer examiner (CCFE), Director of Forensics and Chief

4  Executive Officer of ESICloud LLC ("ESICloud"), a legal computer forensics company based in

5  Los Angeles, California.  I have nearly twenty-five (25) years computer forensics and electronic

6  data discovery experience and have provided client services to identify, preserve, examine, and

7  produce Electronically Stored Information ("ESI") from thousands of storage and computing

8  devices over the years across a multitude of platforms.

9      2.      I have been qualified as a computer expert, addressing evidence chain of custody,

10  metadata, data recovery, general computing systems and eDiscovery in both Federal and State

11  courts.  I am certified by the California State Bar, as an authorized MCLE course provider.  I

12  lecture and teach on a regular basis on topics specifically associated to computer forensics, chain

13  of custody, eDiscovery and privacy related concerns.

14      3.      I have performed forensic services for, among others, the United States Department

15  of Interior, the White House, State of California Labor Commission, US Fish & Wildlife, City of

16  Los Angeles, County of Los Angeles, Los Angeles Unified School District, Fortune 100

17  Corporations, and major law firms throughout the United States.  I have worked with Field Agents

18  of the State of California Labor Commissioner's Office and California Highway Patrol in the

19  service of search warrants to effectuate the search and seizure of electronic data and devices.

20      4.      ESICloud's services have been used in conjunction with investigations, data

21  recovery, data reconstruction, data authentication, and general litigation.

22      5.      Prior to my current position at ESICloud the past three (3) years, I was the Chief

23  Technology Officer and Director of Forensics of Myriad Technologies LLC ("Myriad") between

24  2013 and 2017, at which time I was promoted to President and Chief Executive Officer until my

25  departure in 2019.  Myriad had two (2) offices in California, and offices in Nevada and Alaska.

26  Myriad's primary business was computer forensics and eDiscovery solutions which it provided on

27  a nationwide basis.

28      6.      Throughout the years, I have handled numerous investigations related to analyzing

and qualifying the legitimacy of ESI metadata and system artifacts to establish timelines and/or actions related to specific activities, such as trade secret theft, patent infringement, copyright violations and/or fraud matters.

7.     I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently thereto under oath.

**Engagement and Retention**

8.     ESICloud was engaged on February 22, 2022 by attorney, Lance Greene, Esq. of the Law Offices of Lance G. Greene (hereafter "Greene") in the above-captioned matter on behalf of its client, Robert Chastain, an individual (hereafter "Chastain"), to provide consulting and data analysis services.  More specifically, I was requested to review and analyze the metadata of three (3) Microsoft Word (.DOC) and two (2) Rich Text Format (.RTF) files provided by Chastain to determine the dates the files were created, last modified and last printed.  A list of those files is attached hereto as **Exhibit A**.

**Forensic Imaging**

9.     On February 22, 2022, I received via FedEx, a Kingston DataTraveler 3.0 USB thumb drive with serial number 60A44C3FACCEF051296A0063 (hereafter "Thumb Drive").  Prior to my examination and following ESICloud protocols, I created a forensic image of the Thumb Drive which is an exact bit for bit mirror copy of the original Thumb Drive. This was done to properly preserve the integrity of the digital data contained thereon.  The original Thumb Drive was then placed into our evidence locker and my analysis was conducted utilizing the forensic image.

**Defining Metadata**

10.     There are primarily two types of metadata that are reviewed when performing an analysis to determine the date and time a file was created and/or last modified and by whom. First, there is systems metadata which is metadata created by the operating system about a file. Second, there is application metadata that is specific to the application used to create and/or modify a file.

**Systems Metadata**

11.     When a file is created and it is saved to a hard drive, the operating system assigns a creation date and time which is the date the file was saved to a specific location on a hard drive.  It also identifies the date for which the file was last modified.  If it is a newly created file, the creation date and last modified date will be the same.  If the same file is subsequently modified and resaved, the last modified date and time will be updated to the current date and time.  However, the creation date and time will remain unchanged.

12.     The creation date is volatile and unreliable as it may not reflect the true date a file was created.  It only identifies the date a file was last saved to a specific location on a hard drive.  For this reason, the last modified date is typically used to identify the last known creation date and time and the last time the file had been modified.

### Application Metadata

13.     Specific applications create metadata information that is specific to the application used to create a file.  For instance, a Microsoft Word document may contain metadata information, such as the number of pages of a document, the title of a document, the company name, author information and version history information.  A PDF may contain metadata relating to the make and model of a scanner used to create the PDF.  A photo may contain metadata relating to the make and model of the camera and the camera settings used to take the photo.

### Conclusions

14.     Upon my review and examination of the files identified on Exhibit A, I was able to make the following conclusions based on the associated systems and application metadata:

a.   A Rich Text Format file, named "MINUTES.19980818 (majority 51 percent back to Bob).rtf" (MD5 Hash: 52e30a9be4b676490d791c3c561c047b) was last modified on August 18, 1998 at 10:21:08 PM (PDT).  A copy of this file is attached hereto as Exhibit B.

b.   A Microsoft Word document, named "MINUTES.19980818 (majority 51 percent back to Bob).doc" (MD5 Hash: cee21d8d166274cf567240afd7d8d932) was last modified on August 18, 1998 at 10:21:44 PM (PDT).  The author of the file was Susan Chastain.  A copy of this file is attached hereto as Exhibit C.

c.   A Microsoft Word document, named "MINUTES.19980818 (10 percent to Bob).doc" (MD5 Hash: 5eb18a98962502479ab940cf4c062a82) was last modified on July 14, 1999 at 6:55:50 PM (PDT) and last printed on July 14, 1999 at 4:53:00 PM (PDT).  The author of the file was Susan Chastain.  A copy of this file is attached hereto as Exhibit D.

d.   A Microsoft Word document, named "MINUTES.19980818 (minority 49 percent back to Bob).doc" (MD5 Hash: 8637ae7422ac50e6d1010d83b04093c5) was last modified on October 27, 2008 at 7:14:28 PM (PDT).  The author of the file was Susan Chastain.  A copy of this file is attached hereto as Exhibit E.

e.   A Rich Text Format file, named "MINUTES.19980818 (minority 49 percent back to Bob).rtf" (MD5 Hash: a2b2353ae78b44c5e33fd63591354c16) was last modified on October 27, 2008 at 7:14:30 PM (PDT).  A copy of this file is attached hereto as Exhibit F.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 14, 2022 at Los Angeles, California.

*/s/ Charles Adams*
CHARLES ADAMS

**EXHIBIT "11"**

FL-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, Sta    :number, and address)*: | FOR COURT USE ONLY |
|---|---|
| – Kristi Cotton Spence                                100279<br>Law Offices of Kristi Cotton Spence<br>1777 Borel Place, #204<br>San Mateo, CA 94402<br>TELEPHONE NO.: 650-350-1110    FAX NO.*(Optional)*: 650-350-1116<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Mediator | FILED<br>SAN MATEO COUNTY |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo<br>STREET ADDRESS: 400 County Center<br>MAILING ADDRESS: Redwood City, CA 94063<br>CITY AND ZIP CODE:<br>BRANCH NAME: | NOV 2 1 2008<br>Clerk of the Superior Court<br>By _____ DEPUTY CLERK |
| **MARRIAGE OF**<br>PETITIONER: ROBERT L. CHASTAIN<br><br>RESPONDENT: SUSAN L. CHASTAIN | |

| PETITION FOR<br>[X] **Dissolution of Marriage**<br>☐ **Legal Separation**<br>☐ **Nullity of Marriage**        ☐ AMENDED | CASE NUMBER:<br><br>101854 |
|---|---|

1. RESIDENCE (Dissolution only)    [X] Petitioner    ☐ Respondent    has been a resident of this state for at least six months and of this county for at least three months immediately preceding the filing of this *Petition for Dissolution of Marriage*.

2. STATISTICAL FACTS
   a. Date of marriage: 10/03/92
   b. Date of separation: 10/28/08                 Years:16
   c. Time from date of marriage to date of separation *(specify)* :
      Months:

3. DECLARATION REGARDING MINOR CHILDREN *(include children of this relationship born prior to or during the marriage or adopted during the marriage)*:
   a. [X] There are no minor children.
   b. ☐ The minor children are:

| Child's name | Birthdate | Age | Sex |
|---|---|---|---|

   ☐ Continued on Attachment 3b.
   c. If there are minor children of the Petitioner and Respondent, a completed *Declaration Under Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)* (form FL-105) must be attached.
   d. ☐ A completed voluntary declaration of paternity regarding minor children born to the Petitioner and Respondent prior to the marriage is attached.

4. SEPARATE PROPERTY
   Petitioner requests that the assets and debts listed    ☐ in *Property Declaration* (from FL-160)    ☐ in Attachment 4
   [X] below be confirmed as separate property.

   Item                                                                                          Confirm to
   To be determined by written agreement of the
   parties or by court order.

---

**NOTICE: You may redact (black out) social security numbers from any written material filed with the court in this case other than a form used to collect child or spousal support.**

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
FL-100 [Rev. January 1, 2005]

[Martin Dean's ESSENTIAL FORMS™]

PETITION-MARRIAGE
(Family Law)

CHASTAIN

Family Code, §§ 2330, 3409;
www.courtinfo.ca.gov

MARRIAGE OF *(last name, first name of ...rties)*:

CASE NUMBER:

---

5. **DECLARATION REGARDING COMMUNITY AND QUASI-COMMUNITY ASSETS AND DEBTS AS CURRENTLY KNOWN**
   a. ☐ There are no such assets or debts subject to disposition by the court in this proceeding.
   b. ☒ All such assets and debts are listed ☐ in *Property Declaration* (form FL-160) ☐ in Attachment 5b.
      ☒ below *(specify)*:   To be determined by written agreement of the parties or by court order.

6. **Petitioner requests**
   a. ☒ dissolution of the marriage based on
      (1) ☒ irreconcilable differences. (Fam. Code, §2310(a).)
      (2) ☐ incurable insanity. (Fam. Code, §2310(b).)
   b. ☐ legal separation of the parties based on
      (1) ☐ irreconcilable differences. (Fam. Code, §2310(a).)
      (2) ☐ incurable insanity. (Fam. Code, §2310(b).)
   c. ☐ nullity of void marriage based on
      (1) ☐ incestuous marriage. (Fam. Code, §2200.)
      (2) ☐ bigamous marriage. (Fam. Code, §2201.)
   d. ☐ nullity of voidable marriage based on
      (1) ☐ petitioner's age at time of marriage. (Fam. Code, §2210(a).)
      (2) ☐ prior existing marriage. (Fam. Code, §2210(b).)
      (3) ☐ unsound mind. (Fam. Code, §2210(c).)
      (4) ☐ fraud. (Fam. Code, §2210(d).)
      (5) ☐ force. (Fam. Code, §2210(e).)
      (6) ☐ physical incapacity. (Fam. Code, §2210(f).)

7. **Petitioner requests** that the court grant the above relief and make injunctive (including restraining) and other orders as follows:

| | Petitioner | Respondent | Joint | Other |
|---|---|---|---|---|
| a. Legal custody of children to ......... | ☐ | ☐ | ☐ | ☐ |
| b. Physical custody of children to ......... | ☐ | ☐ | ☐ | ☐ |
| c. Child visitation be granted to ......... | ☐ | ☐ | ☐ | ☐ |

   As requested in form: ☐ FL-311  ☐ FL-312  ☐ FL-341(C)  ☐ FL-341(D)  ☐ FL-341(E)  ☐ Attachment 7c.
   d. ☐ Determination of parentage of any children born to the Petitioner and Respondent prior to the marriage.
   e. Attorney fees and costs payable by  each to pay own   ☐ ☐
   f. Spousal support payable to (earnings assignment will be issued) per agreement ☐ ☐
   g. ☐ Terminate the court's jurisdiction (ability) to award spousal support to Respondent.
   h. ☒ Property rights be determined.
   i. ☐ Petitioner's former name be restored to *(specify)*:
   j. ☐ Other *(specify)*:

      ☐ Continued on Attachment 7j.

8. **Child support**–If there are minor children born to or adopted by the Petitioner and Respondent before or during this marriage, the court will make orders for the support of the children upon request and submission of financial forms by the requesting party. An earnings assignment may be issued without further notice. Any party required to pay support must pay interest on overdue amounts at the "legal" rate, which is currently 10 percent.

9. **I HAVE READ THE RESTRAINING ORDERS ON THE BACK OF THE SUMMONS, AND I UNDERSTAND THAT THEY APPLY TO ME WHEN THIS PETITION IS FILED.**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: 11/20/08

ROBERT L. CHASTAIN                                    ▶ *Robert L. Chastain*
(TYPE OR PRINT NAME)                                      (SIGNATURE OF PETITIONER)

Date:

_____                     ▶ _____
(TYPE OR PRINT NAME)                                      (SIGNATURE OF ATTORNEY FOR PETITIONER)

---

**NOTICE:** Dissolution or separation may automatically cancel the rights of a spouse under the other spouse's will, trust, retirement plan, power of attorney, pay on death bank account, survivorship rights to any property owned in joint tenancy, and any other similar thing. It does not automatically cancel the right of a spouse as beneficiary of the other spouse's life insurance policy. You should review these matters, as well as any credit cards, other credit accounts, insurance polices, retirement plans, and credit reports to determine whether they should be changed or whether you should take any other actions. However, some changes may require the agreement of your spouse or a court order (see Family Code sections 231-235).

FL-100 [Rev. January 1, 2005]

Martin Dean's
ESSENTIAL FORMS™

**EXHIBIT "12"**



# University of California
# Verification of Employment

**November 4, 2008  at 10:01:58 AM**

**Employee Name:**    ROBERT L CHASTAIN
**Location:**              UC San Francisco

**Most Recent Hire Date:**   10/29/2008
**Separation Date:**

| Position | % Time | Begin Date | End Date | Rate/Amount |
|---|---|---|---|---|
| PROGRAMMER/ANALYST II | 50 | 10/29/2008 | Indefinite | 96,000.00 Annual |

|  | Current Year-to-Date | Prior Calendar Year |
|---|---|---|
| Total Gross Earnings | 0.00 | 0.00 |
| Federal Taxable Earnings | 0.00 | 0.00 |

**EXHIBIT "13"**

# APPLICATION FOR COBRA CONTINUATION
UBEN 102 (4/09) University of California Human Resources and Benefits

Read cover sheet for instructions.

## 1. APPLICANT INFORMATION

| NAME OF COBRA CONTINUATION APPLICANT (Last, First, Middle Initial) | DAYTIME PHONE | SEX |
|---|---|---|
| Chastain, Robert L. | ( 650 ) 855-4876 | ☑ M ☐ F |

| MAILING ADDRESS (Number, Street, City, State, ZIP) | HIRE DATE OF EMPLOYEE/RETIREE |
|---|---|
| 6 Shorebreeze Court   East Palo Alto, California 94303-2053 | 10/29/2008 |

| NAME OF EMPLOYEE/RETIREE (Last, First, Middle Initial) | ☑ Check if same as above | EMPLOYEE/RETIREE SOCIAL SECURITY NUMBER | CAMPUS/LAB |
|---|---|---|---|
| | | ▓▓▓▓ | 02 San Francisco |

## 2. QUALIFYING EVENT AND QUALIFYING BENEFICIARIES (Indicate the reason for COBRA continuation and date of event)

| 18-month maximum COBRA continuation period: | DATE OF COBRA QUALIFYING EVENT: 04 \| 24 \| 2009 | 36-month maximum COBRA continuation period: | DATE OF COBRA QUALIFYING EVENT: \| \| |
|---|---|---|---|

☑ Employment termination
☐ Layoff
☐ Reduction of hours
☐ Approved leave without pay
☐ Loss of eligibility

☐ Divorce/legal separation/annulment
☐ Termination of domestic partner relationship
☐ Death of employee/retiree
☐ Child's or grandchild's loss of eligibility
☐ Adult dependent relative's loss of eligibility
☐ Domestic partner's child's/grandchild's loss of eligibility

Indicate all covered qualified beneficiaries who are eligible to elect COBRA continuation coverage:

☑ Employee (or former employee)
☑ Spouse or domestic partner (or former spouse/partner)
☐ Dependent child(ren)/grandchild(ren)
☐ Adult dependent relative (enrolled before 1/1/04)

## 3. CURRENT COVERAGE

| | NAME OF CURRENT PLAN | UC GROUP POLICY NO. (if applicable) | DATE UC COVERAGE ENDS |
|---|---|---|---|
| WELLNESS PLAN | StayWell | | 05 \| 31 \| 2009 |
| MEDICAL PLAN | Anthem BC PPO | | 05 \| 31 \| 2009 |
| DENTAL PLAN | Delta Dental PPO | | 05 \| 31 \| 2009 |
| VISION PLAN | VSP | 0101923 | 05 \| 31 \| 2009 |
| HEALTH FSA | CONEXIS | ANNUAL CONTRIBUTION    MONTHLY CONTRIBUTION | \| \| |

If you **do** elect COBRA continuation, your coverage will begin on 06 \| 01 \| 2009
COBRA begin date

➡ To elect COBRA continuation, UC must receive a copy of this form by this date 07 \| 30 \| 2009
Application form due date

**Note:** If the University does not receive this form by this due date, **you will lose all rights to COBRA coverage.**

## 4. ELECTION OF COBRA CONTINUATION (Applicant or family member must complete this section.)

List yourself and eligible family members to be continued under the group plan(s). Attach separate sheet if necessary.

| LAST NAME | FIRST NAME | MIDDLE INITIAL | SEX | BIRTHDATE | RELATIONSHIP TO EMPLOYEE/ RETIREE (SEE COVER PAGE)* | INDICATE THE PLAN(S) YOU WANT TO CONTINUE UNDER COBRA CONTINUATION. | SOCIAL SECURITY NO. |
|---|---|---|---|---|---|---|---|
| Chastain | Susan | L. | ☐M ☑F | MO 09 DY 03 YR 58 | ENTER CODE 2 | MEDICAL ☑ DENTAL ☑ VISION ☐ WELLNESS ☐ HEALTH FSA ☐ | ▓▓▓▓ |
| Chastain | Robert | L. | ☑M ☐F | MO 08 DY 05 YR 50 | ENTER CODE 1 | MEDICAL ☑ DENTAL ☑ VISION ☐ WELLNESS ☐ HEALTH FSA ☐ | ▓▓▓▓ |
| | | | ☐M ☐F | MO \| DY \| YR | ENTER CODE | MEDICAL ☐ DENTAL ☐ VISION ☐ WELLNESS ☐ HEALTH FSA ☐ | |

## 5. SIGNATURES

I agree to pay the total monthly premium directly to the plan carrier(s) in accordance with their procedures. I understand that failure to pay premiums will result in the termination of my group coverage. I also understand that UC will not contribute toward the cost of my group coverage under COBRA except under terms of the American Recovery and Reinvestment Act (ARRA).

| COBRA CONTINUATION APPLICANT (Parent or legal guardian if dependents are minor children) | | | DATE |
|---|---|---|---|
| *Robert L. Chastain* (signature) | | | May 10, 2009 |

| BENEFITS REPRESENTATIVE | PHONE | CAMPUS/LAB | DATE |
|---|---|---|---|
| *Alba M. Ingram* (signature) | ( 415 ) 476-6720 | 02 San Francisco | April 22, 2009 |

(2)

**EXHIBIT "14"**

9/28/22, 9:22 AM
Case 5:22-cv-06747-VKD    Document 1    Filed 11/01/22    Page 84 of 151
Gmail - Re: Chastain Family Trust (new attachment)

 Gmail

**Robert Chastain <drbobchastain@gmail.com>**

---

## Re: Chastain Family Trust (new attachment)

1 me age

---

**Law Office of Naomi E. Parker** <naomilaw@aol.com>          Tue, Nov 16, 2021 at 11:47 AM
Reply-To: "Law Office of Naomi E. Parker" <naomilaw@aol.com>
To "drbobcha tain@gmail.com" drbobcha tain@gmail com

New attachement.

NAOMI E. PARKER

*Law Office of Naomi E. Parker*
*1999 S. Bascom Ave., Suite 905*
*Campbell, CA 95008*
*(408) 559 3489*


Original Me age
From: Robert Chastain <drbobchastain@gmail.com>
To: Law Office of Naomi E. Parker <naomilaw@aol.com>
Sent: Tue, Nov 16, 2021 9:39 am
Subject Re Cha tain Family Tru t

Naomi.
I don;t know who Robert Letters is bit this is not the Chastain Family Trust document nor is it the stock certificates.

Dr. Robert L. Chastain, MS, MBA, JD, PhD, Esq.
Founder, Owner: Chastain Research Group, Inc. (ChRG®) www.chastain.com
Attorney-At-Law: California Bar Number 190022, Nebraska Bar Number 21559
Thi me age may contain confidential information or privileged communication (attorney client)
If you have received this message in error, please delete immediately or contact me by email or cell:
Cell: (650) 814-1773
Fax: (800) 407-2528
Di clo ure of any part of thi me age by per on other than the intended recipient( ) i prohibited
Disclosure of any part of this message by the intended recipient(s) to third parties is prohibited.


On Tue, Nov 16, 2021 at 8 28 AM Law Office of Naomi E Parker   naomilaw@aol com  wrote
    Robert:

    Attached is copies of what I have that relates to your corporation.

    If you want a full copy of the estate planning documents I will mail them to you via US Post and I charge a fee of $150.00.

    Be t Regard

    NAOMI E. PARKER

    *Law Office of Naomi E Parker*
    *1999 S. Bascom Ave., Suite 905*
    *Campbell, CA 95008*
    *(408) 559-3489*


    -----Original Message-----
    From  Robert Cha tain   drbobcha tain@gmail com

To: naomilaw@aol.com
Sent: Mon, Nov 15, 2021 1:20 pm
Subject  Cha  tain Family Tru  t

Hi Naomi,
I retained McManis-Faulkner to represent me and sent an email to Brandon Rose authorizing you to release the trust document  to them  When I  poke with Brandon on Friday la  t week, he  aid you were on vacation and hadn't had a chance.  Their servers were down and I hadn't spoken with him in over 3 weeks so I'm stepping in to get what I need.
I just called your office and received instructions to send you an email.
Ideally I would like a copy of the entire tru  t, but the only document  I need immediately are the  tock certificate that went into the trust at any time.
I have copies of the ones, #13, #14 coming out, but not any before that. My ex made the statement that the stock certificates in 2007 changed her ownership from 49% to 51% so that Chastain Research Group, Inc would have a competitive advantage a  a woman owned company rather than a  ervice di  abled veteran owned  mall bu  ine
My timeline shows the Trust was active from 2005 until 2008, but she was secretary and chief financial officer in charge of the books until her termination in 2010.  I don't have the original books or stock certificates to refute her claim or prove I was majority owner during the time of the Family Trust.
It would be be  t if you could plea  e  end a copy of all of the  tock certificate  to me directly by either email or mail and bill me.
Please send to:
My permanent address:
6931 Turnberry Circle
Navarre, FL  32566
Thank you.
Sincerely,

Dr. Robert L. Chastain, MS, MBA, JD, PhD, Esq.
Founder, Owner: Chastain Research Group, Inc. (ChRG®) www.chastain.com
Attorney-At-Law: California Bar Number 190022, Nebraska Bar Number 21559
Thi  me   age may contain confidential information or privileged communication (attorney client)
If you have received this message in error, please delete immediately or contact me by email or cell:
Cell: (650) 814-1773
Fax: (800) 407-2528
Di  clo  ure of any part of thi  me   age by per  on  other than the intended recipient(  ) i  prohibited
Disclosure of any part of this message by the intended recipient(s) to third parties is prohibited.

---

 **Scan  0235 pdf**
7530K

**EXHIBIT "15"**

08/26/2008    08:45    CHASTAIN RESEARCH GROUP, INC. → 14085595161        NO.655    P01



**CHASTAIN**
R E S E A R C H
G R O U P

Chastain Research Group, Inc.
6 Shorebreeze Court
East Palo Alto, CA 94303
Office    (650) 566-8066
Fax        (650) 566-8076
chastain@chastain.com
www.chastain.com

# facsimile transmittal

| | | | |
|---|---|---|---|
| **To:** | Naomi Parker | **Voice:** | |
| | | **Fax:** | 408-559-5161 |
| **From:** | Susan Chastain | **Date:** | 8/26/08 |
| **Re:** | New Stock Certificates | **Pages:** | 3 (including cover sheet) |
| **CC:** | | | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

Naomi,

We have re-issued stock certificates for our company. These certificates (13 and 14) are included in this fax. The old certificates (11 and 12) have been cancelled on our end.   Please let me know if you need anything else.

Regards,
Susan Chastain

The information contained in these documents is confidential and may also be privileged and is intended for the exclusive use of the addressee designated above. If you are not the addressee any disclosures, reproduction, distribution, or any other dissemination or use of this communication is strictly prohibited. If you have received this transmission in error please contact us immediately by telephone so that we can arrange for its return.



252,350



**EXHIBIT "16"**

| Income | Jan - Dec 2007 | Jan - Dec 2008 | $ Change | Jan - Dec 2009 | $ Change | Jan - Dec 2010 | $ Change | Jan - Dec 2011 | $ Change | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Consulting Income | 1,678,276.66 | 1,471,024.90 | | 1,125,832.17 | | 619,953.27 | | 346,002.60 | | |
| Expert Witness | 0.00 | 2,250.00 | | 0.00 | | 0.00 | | 0.00 | | |
| Interest | 479.92 | 504.67 | | 144.57 | | 34.56 | | 4.10 | | |
| Placement Services | 18,000.00 | 0.00 | | 0.00 | | 0.00 | | 0.00 | | |
| Other Income | 0.00 | 0.00 | | 0.00 | | 601.85 | | 7,500.00 | | |
| Total Income | 1,696,756.58 | 1,473,779.57 | | 1,125,976.74 | | 620,589.68 | | 353,506.70 | | |
| Losses | | | 222,977.01 | | 347,802.83 | | 505,387.06 | | 267,082.98 | **1,343,249.88** |

**EXHIBIT "17"**

| 0 check | Date | Name | Amount | Cumulative | account |
|---|---|---|---|---|---|
| 1 | 8272 | 12/26/2008 | Wyndham Hill apartments, Omaha, NE | $ 1,515.00 | $ 1,515.00 | boa 18185-00652 |
| 2 | 8277 | 12/28/2008 | Moving expenses | $ 500.00 | $ 2,015.00 | boa 18185-00652 |
| 3 | 8266 | 12/31/2008 | Salary | $ 921.53 | $ 2,936.53 | boa 18185-00652 |
| 4 | | 1/8/2009 | WC NE First Comp | $ 258.00 | $ 3,194.53 | |
| 5 | 8349 | 2/2/2009 | Wyndham Hill apartments, Omaha, NE | $ 1,515.00 | $ 4,709.53 | boa 18185-00652 |
| 6 | 8372 | 2/28/2009 | Salary in Nebraska | $ 1,000.00 | $ 5,709.53 | boa 18185-00652 |
| 7 | 8381 | 3/1/2009 | Wyndham Hill apartments, Omaha, NE | $ 1,515.00 | $ 7,224.53 | boa 18185-00652 |
| 8 | 8387 | 3/15/2009 | Salary in Nebraska | $ 1,000.00 | $ 8,224.53 | boa 18185-00652 |
| 9 | 8398 | 3/31/2009 | Salary in Nebraska | $ 1,000.00 | $ 9,224.53 | boa 18185-00652 |
| 10 | 8407 | 3/31/2009 | Wyndham Hill apartments, Omaha, NE | $ 1,515.00 | $ 10,739.53 | boa 18185-00652 |
| 11 | 8411 | 4/15/2009 | Salary in Nebraska | $ 1,000.00 | $ 11,739.53 | boa 18185-00652 |
| 12 | 8426 | 4/30/2009 | Salary in Nebraska | $ 2,000.00 | $ 13,739.53 | boa 18185-00652 |
| 13 | 8422 | 4/30/2009 | Wyndham Hill apartments, Omaha, NE | $ 1,515.00 | $ 15,254.53 | boa 18185-00652 |
| 14 | 8439 | 5/15/2009 | Salary in Nebraska | $ 2,000.00 | $ 17,254.53 | boa 18185-00652 |
| 15 | 8451 | 5/31/2009 | Salary in Nebraska | $ 2,000.00 | $ 19,254.53 | boa 18185-00652 |
| 16 | 8456 | 6/1/2009 | Wyndham Hill apartments, Omaha, NE | $ 1,515.00 | $ 20,769.53 | boa 18185-00652 |
| 17 | 8464 | 6/15/2009 | Salary in Nebraska | $ 1,000.00 | $ 21,769.53 | boa 18185-00652 |
| 18 | 8475 | 6/19/2009 | Genworth LTC | $ 2,028.00 | $ 23,797.53 | |
| 19 | 8478 | 6/28/2009 | Wyndham Hill apartments, Omaha, NE | $ 1,515.00 | $ 25,312.53 | boa 18185-00652 |
| 20 | 8489 | 6/30/2009 | Salary in Nebraska | $ 2,000.00 | $ 27,312.53 | boa 18185-00652 |
| 21 | 8505 | 7/31/2009 | Salary in Nebraska | $ 1,000.00 | $ 28,312.53 | boa 18185-00652 |
| 22 | 8515 | 7/31/2009 | Wyndham Hill apartments, Omaha, NE | $ 1,515.00 | $ 29,827.53 | boa 18185-00652 |
| 23 | 8518 | 8/15/2009 | Salary in Nebraska | $ 1,000.00 | $ 30,827.53 | boa 18185-00652 |
| 24 | 8529 | 8/21/2009 | Office Furniture | $ 1,199.40 | $ 32,026.93 | |
| 25 | 8535 | 8/31/2009 | Salary in Nebraska | $ 1,000.00 | $ 33,026.93 | boa 18185-00652 |
| 26 | 8546 | 9/15/2009 | Salary in Nebraska | $ 1,000.00 | $ 34,026.93 | boa 18185-00652 |
| 27 | 8555 | 9/20/2009 | Office Furniture | $ 434.68 | $ 34,461.61 | amex |
| 28 | 8556 | 9/21/2009 | Rent | $ 1,000.00 | $ 35,461.61 | boa 18185-00653 |
| 29 | 8561 | 9/30/2009 | Salary in Nebraska | $ 1,000.00 | $ 36,461.61 | boa 18185-00652 |
| 30 chk | | 9/30/2009 | Cox Omaha 1/11/09-9/30/09 | $ 2,135.58 | $ 38,597.19 | boa 18185-00652 |
| 31 | 211 | 10/1/2010 | First National Bank-Omaha mortgage | $ 1,112.00 | $ 39,709.19 | GTB 011901329 |
| 32 | | 10/13/2009 | Office Equip | $ 3,072.95 | $ 42,782.14 | BOA Visa |
| 33 | 8574 | 10/15/2009 | Salary in Nebraska | $ 1,000.00 | $ 43,782.14 | boa 18185-00652 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 34 | 8583 | 10/15/2009 | computer expense | $ | 2,000.79 | $ | 45,782.93 | |
| 35 | | 10/15/2009 | Moving expenses 2009 on P&L | $ | 4,512.37 | $ | 50,295.30 | |
| 36 | 8583 | 10/15/2009 | Office Furniture | $ | 237.48 | $ | 50,532.78 | amex |
| 37 | 8585 | 10/31/2009 | Salary in Nebraska | $ | 1,000.00 | $ | 51,532.78 | boa 18185-00652 |
| 38 | 243 | 11/1/2010 | First National Bank-Omaha mortgage | $ | 1,112.00 | $ | 52,644.78 | GTB 011901329 |
| 39 | | 11/13/2009 | Office Depot | $ | 373.86 | $ | 53,018.64 | amex |
| 40 | 8751 | 11/15/2009 | Salary in Nebraska | $ | 26,000.00 | $ | 79,018.64 | Wells Fargo x7635 |
| 41 | | 11/18/2009 | Office Furniture | $ | 588.43 | $ | 79,607.07 | NE Furn Mart |
| 42 | 8303 | 11/18/2009 | Office reimbursement | $ | 2,280.06 | $ | 81,887.13 | |
| 43 | | 11/27/2009 | Rent | $ | 1,200.00 | $ | 83,087.13 | |
| 44 | | 12/14/2009 | Rent | $ | 2,268.55 | $ | 85,355.68 | |
| 45 | | 12/16/2009 | computer expense | $ | 2,663.89 | $ | 88,019.57 | Best Buy |
| 46 | | 3/24/2010 | Rent | $ | 2,500.00 | $ | 90,519.57 | |
| 47 | 131 | 6/4/2010 | First National Bank-Omaha mortgage | $ | 1,000.00 | $ | 91,519.57 | GTB 011901329 |
| 48 | 151 | 7/1/2010 | First National Bank-Omaha mortgage | $ | 1,000.00 | $ | 92,519.57 | GTB 011901329 |
| 49 | 172 | 8/1/2010 | First National Bank-Omaha mortgage | $ | 1,000.00 | $ | 93,519.57 | GTB 011901329 |
| 50 | 187 | 9/1/2010 | First National Bank-Omaha mortgage | $ | 1,000.00 | $ | 94,519.57 | GTB 011901329 |
| 51 | 211 | 10/1/2010 | First National Bank-Omaha mortgage | $ | 1,112.00 | $ | 95,631.57 | GTB 011901329 |
| 52 | 243 | 11/1/2010 | First National Bank-Omaha mortgage | $ | 1,112.00 | $ | 96,743.57 | GTB 011901329 |
| 53 | 270 | 12/1/2010 | First National Bank-Omaha mortgage | $ | 1,112.00 | $ | 97,855.57 | GTB 011901329 |
| 54 | 283 | 12/31/2010 | First National Bank-Omaha mortgage | $ | 1,112.00 | $ | 98,967.57 | GTB 011901329 |
| 55 | 295 | 1/10/2011 | First National Bank-Omaha mortgage | $ | 1,112.00 | $ | 100,079.57 | GTB 011901329 |
| 56 | 320 | 2/22/2011 | First National Bank-Omaha mortgage | $ | 1,049.57 | $ | 101,129.14 | GTB 011901329 |
| 57 | | | | $ | 101,129.14 | | | |

**EXHIBIT "18"**

Response #8



INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA

# CHASTAIN RESEARCH GROUP, INC.

The Corporation is authorized to issue 1,000,000 Common Shares — No Par Value

The shares represented by this certificate have not been registered under any federal or state securities law. They have been acquired for investment and may not be transferred without an effective registration statement pursuant to such laws or an opinion of legal counsel satisfactory to the Corporation that registration is not required.

**This Certifies that** Susan L. Chastain *is the owner of*

Two hundred sixty-two Thousand Six Hundred Fifty *fully paid and non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.*

*Dated* August 24, 1998



NUMBER
10

SHARES

INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA

# CHASTAIN RESEARCH GROUP, INC.

The Corporation is authorized to issue 1,000,000 Common Shares — No Par Value

The shares represented by this certificate have not been registered under any federal or state securities law. They have been acquired for investment and may not be transferred without an effective registration statement pursuant to state laws or an opinion of legal counsel satisfactory to the Corporation that registration is not required.

**This Certifies That** Robert L. Chastain *is the owner of*

Two hundred fifty-two Thousand Three Hundred Fifty *fully paid and non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.*

*Dated* August 24, 1998



INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA

# CHASTAIN RESEARCH GROUP, INC.

The Corporation is authorized to issue 1,000,000 Common Shares - No Par Value

The shares represented by this certificate have not been registered under any federal or state securities law. They have been acquired for investment and may not be transferred without an effective registration statement pursuant to such laws or an opinion of legal counsel satisfactory to the Corporation that registration is not required.

This Certifies that SUSAN L. CHASTAIN, TRUSTEE OF THE ROBERT AND SUSAN CHASTAIN TRUST DATED 09/15/2005 _is the owner of_ Two Hundred Sixty-two Thousand Six Hundred Fifty _fully paid and non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed._

_In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation._

_Dated_ 9-15-05

SECRETARY                                        PRESIDENT



INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA

# CHASTAIN RESEARCH GROUP, INC.

The Corporation is authorized to issue 1,000,000 Common Shares - No Par Value

The shares represented by this certificate have not been registered under any federal or state securities law. They have been acquired for investment and may not be transferred without an effective registration statement pursuant to such laws or an opinion of legal counsel satisfactory to the Corporation that registration is not required.

**This Certifies that** ROBERT L. CHASTAIN, TRUSTEE OF THE ROBERT AND SUSAN CHASTAIN TRUST DATED 09/15/2005 *is the owner of*

Two Hundred Fifty-two Thousand Three Hundred Fifty *fully paid and non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.*

*Dated* 9-15-05

SECRETARY                                                    PRESIDENT

**EXHIBIT "19"**



NUMBER

9

SHARES

262,650

INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA

# CHASTAIN RESEARCH GROUP, INC.

The Corporation is authorized to issue 1,000,000 Common Shares — No Par Value

The shares represented by this certificate have not been registered under any federal or state securities law. They have been acquired for investment and may not be transferred without an effective registration statement pursuant to such laws or an opinion of legal counsel satisfactory to the Corporation that registration is not required.

**This Certifies that** Susan L. Chastain _is the owner of_

Two hundred sixty-two Thousand Six Hundred Fifty _fully paid and_

non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated August 24, 1998



NUMBER
10

SHARES

INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA

# CHASTAIN RESEARCH GROUP, INC.

The Corporation is authorized to issue 1,000,000 Common Shares - No Par Value

The shares represented by this certificate have not been registered under any federal or state securities law. They have been acquired for investment and may not be transferred without an effective registration statement pursuant to such laws or an opinion of legal counsel satisfactory to the Corporation that registration is not required.

**This Certifies that** _____Robert L. Chastain_____ *is the owner of*

Two hundred fifty-two Thousand Three Hundred Fifty *fully paid and*

*non-assessable Shares of the above Corporation transferable only on the*

*books of the Corporation by the holder hereof in person or by duly authorized*

*Attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed*

*by its duly authorized officers and to be sealed with the Seal of the Corporation.*

*Dated* _____August 24, 1998_____



# CHASTAIN RESEARCH GROUP, INC.

INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA

The Corporation is authorized to issue 1,000,000 Common Shares — No Par Value

The shares represented by this certificate have not been registered under any federal or state securities laws. They have been acquired for investment and may not be transferred to whom an effective registration statement pursuant to such laws or on opinion of legal counsel satisfactory to the Corporation that registration is not required.

**This Certifies that** SUSAN L. CHASTAIN, TRUSTEE OF THE
ROBERT AND SUSAN CHASTAIN TRUST DATED
09/15/2005                                  *is the owner of*

Two Hundred Sixty-two Thousand Six Hundred Fifty ———— *fully paid and*

*non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.*

*Dated* 9-15-05

SECRETARY                                                PRESIDENT



NUMBER
12

SHARES
252-350

INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA

# CHASTAIN RESEARCH GROUP, INC.

The Corporation is authorized to issue 1,000,000 Common Shares -- No Par Value

The shares represented by this certificate have not been registered under any federal or state securities law. They have been acquired for investment and may not be transferred without an effective registration statement pursuant to such laws or an opinion of legal counsel satisfactory to the Corporation that registration is not required.

This Certifies that ROBERT L. CHASTAIN, TRUSTEE OF THE ROBERT AND SUSAN CHASTAIN TRUST DATED 09/15/2005 is the owner of Two Hundred Fifty-two Thousand Three Hundred Fifty fully paid and non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated   9-15-05

SECRETARY

PRESIDENT

**EXHIBIT "20"**

Response #3

Minutes for Meeting of Board of Directors
of CHASTAIN RESEARCH GROUP, INC.

The board of directors held a meeting at 7:00 P.M. on August 18, 1998 at 310 Ballymore Circle, San Jose, California, 95136.

The following directors, marked as present next to their names, were in attendance and constituted a quorum of the full board.

|  |  |  |
|---|---|---|
| [X] Present | { } Absent | **ROBERT L. CHASTAIN** |
| [X] Present | { } Absent | **SUSAN L. CHASTAIN** |
| [X] Present | { } Absent | **HARRIET MAJOR** |

All items on the agenda for the annual meeting were reviewed and upon motions, seconded, and unanimously approved it was:

## ELECTION OF OFFICERS

**RESOLVED,** regarding Article 3, Section 3 of corporate Bylaws (Election of Board), that all 3 Directors are re-elected to another annual term with Robert L. Chastain as the Chairperson.

## TRANSFER OF SHARES

**RESOLVED** that 10% of all shares will be transferred to Robert L. Chastain effective August 18, 1998 due to his increasing role as Chief Executive Officer and General Counsel. The remainder of all shares shall continue to be retained by Susan L. Chastain.

## EXECUTIVE ADVISORY BOARD

**RESOLVED** that Robert L. Chastain will look into and examine the benefits of joining an Executive Advisory Board established by Art Keller. If it proves beneficial, Chastain Research Group, Inc. will join the Advisory Board.

Since there was no further business, upon motion duly made and seconded, the meeting was adjourned at 9:00 P.M.


**SUSAN L. CHASTAIN**, Secretary

Minutes of **Chastain Research Group, Inc.**

1

**EXHIBIT "21"**

| Year | Amount | Balance |
|------|--------------|--------------|
| 1999 | $ 1,266,713.50 | $ 1,266,713.50 |
| 2000 | $ 1,159,797.27 | $ 2,426,510.77 |
| 2001 | $ 509,690.82 | $ 2,936,201.59 |
| 2002 | $ 401,124.47 | $ 3,337,326.06 |
| 2003 | $ 536,861.65 | $ 3,874,187.71 |
| 2004 | $ 716,095.86 | $ 4,590,283.57 |
| 2005 | $ 758,235.25 | $ 5,348,518.82 |
| 2006 | $ 1,423,741.56 | $ 6,772,260.38 |
| 2007 | $ 1,696,756.58 | $ 8,469,016.96 |
| 2008 | $ 1,472,234.39 | $ 9,941,251.35 |
|      | $ 9,941,251.35 | |

| Year | Consultant | Amount | Balance |
|---|---|---|---|
| 1998 | Robert Chastain | $ 20,962.50 | $ 20,962.50 |
| 1999 | Robert Chastain | $ 69,192.53 | $ 90,155.03 |
| 2000 | Robert Chastain | $ 181,356.25 | $ 271,511.28 |
| 2001 | Robert Chastain | $ 146,595.50 | $ 418,106.78 |
| 2002 | Robert Chastain | $ 133,122.25 | $ 551,229.03 |
| 2003 | Robert Chastain | $ 180,482.25 | $ 731,711.28 |
| 2004 | Robert Chastain | $ 307,060.00 | $ 1,038,771.28 |
| 2005 | Robert Chastain | $ 192,883.75 | $ 1,231,655.03 |
| 2006 | Robert Chastain | $ 369,566.25 | $ 1,601,221.28 |
| 2007 | Robert Chastain | $ 358,708.75 | $ 1,959,930.03 |
| 2008 | Robert Chastain | $ 119,609.28 | $ 2,079,539.31 |
| | | $ 2,079,539.31 | |

**EXHIBIT "22"**

| SLC-W2 | SLC-IRA | SLC Total | Year |
|---|---|---|---|
| $ 104,600.00 | $ 7,845.00 | $ 112,445.00 | 1999 |
| $ 123,000.08 | $ 10,368.00 | $ 133,368.08 | 2000 |
| $ 166,000.08 | $ 10,500.00 | $ 176,500.08 | 2001 |
| $ 24,000.00 | $ 2,250.00 | $ 26,250.00 | 2002 |
| $ 24,166.66 | $ 3,625.00 | $ 27,791.66 | 2003 |
| $ 24,000.00 | $ 4,250.00 | $ 28,250.00 | 2004 |
| $ 24,000.00 | $ 6,000.00 | $ 30,000.00 | 2005 |
| $ 60,000.00 | $ 15,000.00 | $ 75,000.00 | 2006 |
| $ 57,124.94 | $ 14,281.19 | $ 71,406.13 | 2007 |
| $ 51,349.94 | $ 12,187.44 | $ 63,537.38 | 2008 |
| $ 46,000.00 | $ 2,850.00 | $ 48,850.00 | 2009 |
| $ 704,241.70 | $ 89,156.63 | **$ 793,398.33** | Total |

**EXHIBIT "23"**

| SLC-W2 | SLC-IRA | SLC Total | Year |
|---|---|---|---|
| $ 104,600.00 | $  7,845.00 | $ 112,445.00 | 1999 |
| $ 123,000.08 | $ 10,368.00 | $ 133,368.08 | 2000 |
| $ 166,000.08 | $ 10,500.00 | $ 176,500.08 | 2001 |
| $  24,000.00 | $  2,250.00 | $  26,250.00 | 2002 |
| $  24,166.66 | $  3,625.00 | $  27,791.66 | 2003 |
| $  24,000.00 | $  4,250.00 | $  28,250.00 | 2004 |
| $  24,000.00 | $  6,000.00 | $  30,000.00 | 2005 |
| $  60,000.00 | $ 15,000.00 | $  75,000.00 | 2006 |
| $  57,124.94 | $ 14,281.19 | $  71,406.13 | 2007 |
| $  51,349.94 | $ 12,187.44 | $  63,537.38 | 2008 |
| $  46,000.00 | $  2,850.00 | $  48,850.00 | 2009 |
| $ 704,241.70 | $ 89,156.63 | **$ 793,398.33** | Total |

**EXHIBIT "24"**

| RLC-W2 | RLC-IRA | RLC Total | Year |
|---|---|---|---|
| $ 30,450.00 | $ 2,283.75 | $ 32,733.75 | 1999 |
| $ 24,000.00 | $ 2,023.20 | $ 26,023.20 | 2000 |
| $ 24,000.00 | $ 1,900.80 | $ 25,900.80 | 2001 |
| $ 83,333.38 | $ 12,000.00 | $ 95,333.38 | 2002 |
| $ 85,000.00 | $ 12,000.00 | $ 97,000.00 | 2003 |
| $ 139,100.08 | $ 13,000.00 | $ 152,100.08 | 2004 |
| $ 127,500.07 | $ 18,000.00 | $ 145,500.07 | 2005 |
| $ 160,000.00 | $ 20,000.00 | $ 180,000.00 | 2006 |
| $ 119,375.00 | $ 20,500.00 | $ 139,875.00 | 2007 |
| $ 78,750.00 | $ 15,750.00 | $ 94,500.00 | 2008 |
| $ 871,508.53 | $ 117,457.75 | **$ 988,966.28** | Total |

**EXHIBIT "25"**

| Year | Amount | Balance |
|------|-------------|---------------|
| 1993 | $ | $ - |
| 1994 | $ 383,804.75 | $ 383,804.75 |
| 1995 | $ 606,242.00 | $ 990,046.75 |
| 1996 | $ 914,495.95 | $ 1,904,542.70 |
| 1997 | $ 1,188,378.75 | $ 3,092,921.45 |
| 1998 | $ 1,026,774.75 | $ 4,119,696.20 |
| 1999 | $ 1,266,713.50 | $ 5,386,409.70 |
| 2000 | $ 1,159,797.27 | $ 6,546,206.97 |
| 2001 | $ 509,690.82 | $ 7,055,897.79 |
| 2002 | $ 401,124.47 | $ 7,457,022.26 |
| 2003 | $ 536,861.65 | $ 7,993,883.91 |
| 2004 | $ 716,095.86 | $ 8,709,979.77 |
| 2005 | $ 758,235.25 | $ 9,468,215.02 |
| 2006 | $ 1,423,741.56 | $ 10,891,956.58 |
| 2007 | $ 1,696,756.58 | $ 12,588,713.16 |
| 2008 | $ 1,472,234.39 | $ 14,060,947.55 |
| 2009 | $ 1,125,998.00 | $ 15,186,945.55 |
| 2010 | $ 620,689.00 | $ 15,807,634.55 |
| 2011 | $ 353,506.70 | $ 16,161,141.25 |
| 2012 | $ 604,385.28 | $ 16,765,526.53 |
| 2013 | $ 478,136.56 | $ 17,243,663.09 |
| 2014 | $ 513,079.00 | $ 17,756,742.09 |
| 2015 | $ 319,498.75 | $ 18,076,240.84 |
| 2016 | $ 217,242.50 | $ 18,293,483.34 |
| 2017 | $ 249,070.00 | $ 18,542,553.34 |
| 2018 | $ - | $ 18,542,553.34 |
| 2019 | $ 247,350.00 | $ 18,789,903.34 |
| 2020 | $ 306,525.00 | $ 19,096,428.34 |
| 2021 | $ 338,490.00 | $ 19,434,918.34 |
| 2022 | $ 168,960.00 | $ 19,603,878.34 |
|      | $ 19,603,878.34 | |

**EXHIBIT "26"**

| Name of Shareholder | Address | Date of Issuance | -- Certificate Issued -- Certificate Number | Number of Shares | Percent of Shares |
|---|---|---|---|---|---|
| Robert Chastain | 310 Ballymore Circle San Jose, CA 95136 | 8/24/1998 | 9 | 262,650 | 51% |
| Susan Chastain | 310 Ballymore Circle San Jose, CA 95136 | 8/24/1998 | 10 | 252,350 | 49% |
| **Chastain Family Trust** | **310 Ballymore Circle San Jose, CA 95136** | 9/15/2005 | **11** | **262,650** | 51% |
| **Chastain Family Trust** | **310 Ballymore Circle San Jose, CA 95136** | 9/15/2005 | **12** | **252,350** | 49% |
| Robert Chastain | 6 Shorebreeze Ct East Palo Alto, CA 94303 | 8/22/2008 | 13 | 262,650 | 51% |
| Susan Chastain | 6 Shorebreeze Ct East Palo Alto, CA 94303 | 8/22/2008 | 14 | 252,350 | 49% |
| **Robert Chastain** | **6 Shorebreeze Ct East Palo Alto, CA 94303** | **12/22/2008** | **15** | **515,000** | 100% |

**11:51 AM**
**10/25/22**

# Chastain Research Group, Inc.
# Vendor QuickReport
## All Transactions

| Type | Date | Num | Memo | Account | | Amount |
|------|------|-----|------|---------|---|--------|
| **Harriet Major** | | | | | | |
| Check | 09/20/2002 | 6080 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 612.51 |
| Check | 12/26/2002 | 6165 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 612.51 |
| Check | 03/25/2003 | 6254 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 612.51 |
| Check | 06/23/2003 | 6319 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 612.51 |
| Check | 09/19/2003 | 6395 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 612.51 |
| Check | 12/20/2003 | 6464 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 612.51 |
| Check | 03/27/2004 | 6552 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 612.51 |
| Check | 06/25/2004 | 6625 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 612.51 |
| Check | 09/01/2004 | 6686 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 612.51 |
| Check | 12/17/2004 | 6773 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| Check | 03/25/2005 | 6854 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| Check | 06/28/2005 | 6928 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| Check | 09/30/2005 | 7008 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| Check | 12/15/2005 | 7066 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| Check | 03/22/2006 | 7137 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| Check | 06/27/2006 | 7230 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| Check | 09/15/2006 | 7340 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| Check | 12/26/2006 | 7460 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| Check | 03/24/2007 | 7544 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| Check | 06/30/2007 | 7650 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| Check | 09/20/2007 | 7747 | Director's stipend | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| Check | 12/17/2007 | 7855 | Director's stipend for 4th quarter 2007 | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| Check | 03/27/2008 | 7981 | Director's stipend for 1st quarter 2008 | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| Check | 06/25/2008 | 8065 | Director's stipend for 2nd quarter 2008 | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| Check | 09/25/2008 | 8153 | Director's stipend for 3rd quarter 2008 | ZOld2 BOA Chk x0652 1/97-1/10 | $ | 1,200.00 |
| | | | | | $ | 24,712.59 |

**EXHIBIT "27"**

# Other Name QuickReport
### All Transactions

| Type | Date | Num | Memo | Account | Clr | Amount |
|------|------|-----|------|---------|-----|--------|
| **Wyndham Hill Apartments** | | | | | | |
| Check | 11/25/2008 | 8247 | 9230 Burt, Apartment 316 | ZOld2 BOA Chk x0652 1/97-1/10 | √ | 1,465.00 |
| Check | 12/26/2008 | 8272 | 9230 Burt, Apartment 316 plus garage | ZOld2 BOA Chk x0652 1/97-1/10 | √ | 1,515.00 |
| Check | 02/02/2009 | 8349 | 9230 Burt, Apt #316 plus garage | ZOld2 BOA Chk x0652 1/97-1/10 | √ | 1,515.00 |
| Check | 03/01/2009 | 8381 | 9230 Burt, Apt #316 plus garage | ZOld2 BOA Chk x0652 1/97-1/10 | √ | 1,515.00 |
| Check | 03/31/2009 | 8407 | April rent | ZOld2 BOA Chk x0652 1/97-1/10 | √ | 1,515.00 |
| Check | 04/30/2009 | 8422 | May rent | ZOld2 BOA Chk x0652 1/97-1/10 | √ | 1,515.00 |
| Check | 06/01/2009 | 8456 | June rent | ZOld2 BOA Chk x0652 1/97-1/10 | √ | 1,515.00 |
| Check | 06/28/2009 | 8478 | July rent | ZOld2 BOA Chk x0652 1/97-1/10 | √ | 1,515.00 |
| Check | 07/31/2009 | 8515 | August rent | ZOld2 BOA Chk x0652 1/97-1/10 | √ | 1,515.00 |
| | | | | | | 13,585.00 |

**EXHIBIT "28"**

| Name of Shareholder | Address | Date of Issuance | -- Certificate Issued -- Certificate Number | Number of Shares | Percent of Shares |
|---|---|---|---|---|---|
| Robert Chastain | 310 Ballymore Circle San Jose, CA 95136 | 8/24/1998 | 9 | 262,650 | 51% |
| Susan Chastain | 310 Ballymore Circle San Jose, CA 95136 | 8/24/1998 | 10 | 252,350 | 49% |
| **Chastain Family Trust** | **310 Ballymore Circle San Jose, CA 95136** | 9/15/2005 | **11** | **262,650** | 51% |
| **Chastain Family Trust** | **310 Ballymore Circle San Jose, CA 95136** | 9/15/2005 | **12** | **252,350** | 49% |
| Robert Chastain | 6 Shorebreeze Ct East Palo Alto, CA 94303 | 8/22/2008 | 13 | 262,650 | 51% |
| Susan Chastain | 6 Shorebreeze Ct East Palo Alto, CA 94303 | 8/22/2008 | 14 | 252,350 | 49% |
| **Robert Chastain** | **6 Shorebreeze Ct East Palo Alto, CA 94303** | **12/22/2008** | **15** | **515,000** | 100% |



# BOARD OF VETERANS' APPEALS

FOR THE SECRETARY OF VETERANS AFFAIRS

IN THE APPEAL OF
**ROBERT L. CHASTAIN**
Represented by
Colin E. Kemmerly, Attorney

C XX XXX 018
Docket No. 20-01 364

DATE: September 6, 2022

## ORDER

Entitlement to a disability rating in excess of 0 percent for a right knee scar has been withdrawn.



Entitlement to service connection for an acquired psychiatric disability, to include posttraumatic stress disorder (PTSD), is granted.

## REMANDED

Entitlement to a disability rating in excess of 30 percent for a right knee disability is remanded.

## FINDINGS OF FACT

1. On May 20, 2021, prior to the promulgation of a decision in the appeal, the Board received notification from the appellant's authorized representative that a withdrawal of the claim of entitlement to a disability rating in excess of 0 percent for a right knee scar is requested.

2. Resolving reasonable doubt in the Veteran's favor, his PTSD is at least as likely as not (likelihood is at least approximately balanced or nearly equal, if not higher) related to his in-service stressors while serving on active duty in the Republic of Vietnam.

IN THE APPEAL OF                                    C XX XXX 018
**ROBERT L. CHASTAIN**                       Docket No. 20-01 364

### CONCLUSIONS OF LAW

1. The criteria for withdrawal of the claim of entitlement to a disability rating in excess of 0 percent for a right knee scar by the appellant's authorized representative have been met. 38 U.S.C. § 7105; 38 C.F.R. § 19.55.

2. The criteria for entitlement to service connection for an acquired psychiatric disability, to include PTSD, have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304.

### REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the U.S. Marine Corps from July 1969 to July 1972, to include service in the Republic of Vietnam.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2018 rating decision of the Department of Veterans Affairs (VA) regional office (RO) which denied the Veteran's claims of entitlement to increased ratings for a right knee scar and a right knee disability and entitlement to service connection for an acquired psychiatric disability, to include PTSD. The Veteran timely appealed.

In May 2021, the Veteran testified before the undersigned Veterans Law Judge in a videoconference hearing. A copy of the hearing transcript is of record.

#### Withdrawal

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C. § 7105. An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. Withdrawal may be made by the appellant or by his or her authorized representative. 38 C.F.R. § 19.55.

2

IN THE APPEAL OF                                            C XX XXX 018
**ROBERT L. CHASTAIN**                           Docket No. 20-01 364

## 1. Entitlement to a disability rating in excess of 0 percent for a right knee scar is withdrawn.

In the present case, the appellant's authorized representative has withdrawn in writing the appeal for entitlement to a disability rating in excess of 0 percent for a right knee scar. Hence, there remain no allegations of errors of fact or law for appellate consideration. Accordingly, the Board does not have jurisdiction to review this appeal and it is dismissed.

### Service Connection



Service connection may be granted for a current disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303. Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). Establishing service connection generally requires evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. *Shedden v. Principi*, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

There are particular requirements for establishing PTSD in 38 C.F.R. § 3.304 (f), that are separate from those for establishing service connection generally. *Arzio v. Shinseki*, 602 F.3d 1343, 1347 (Fed. Cir. 2010). In order to be entitled to service connection for PTSD, there must be medical evidence of PTSD, medical evidence that establishes a link between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. *See* 38 C.F.R. § 3.304 (f); *Shedden*, 381 F.3d at 1167.

Corroboration of the stressor is not required when a VA psychiatrist or psychologist diagnoses PTSD resulting from a fear of hostile military or terrorist activity when that fear is consistent with the circumstances of the Veteran's service. 38 C.F.R. § 3.304 (f)(3). Corroboration of the existence of a stressor is also not required in certain circumstances when the Veteran was diagnosed with PTSD in service, the Veteran engaged in combat with the enemy and the claimed stressor is related to that experience, or the Veteran was a prisoner of war, and the claimed stressor is

3

related to that experience. 38 C.F.R. § 3.304 (f)(1), (2), (4). Corroboration of the existence of an in-service stressor is necessary in all other cases.

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits. In evaluating a claim, the Board must determine the value of all evidence submitted, including lay and medical evidence. 38 U.S.C. § 1154 (a); *Buchanan v. Nicholson*, 451 F.3d 1331, 1335 (Fed. Cir. 2006).

In determining whether service connection is warranted, the Board shall consider the benefit-of-the-doubt doctrine. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102. That is, the claimant is entitled to the benefit of the doubt when the evidence is in "approximate" balance, i.e., "nearly equal," but does not require that the evidence be in exact equipoise. *Lynch v. McDonough*, 21 F.4th 776 (Fed. Cir. 2021).

### 2. Entitlement to service connection for an acquired psychiatric disability, to include PTSD, is granted.

The Veteran maintains that he suffers from PTSD as a result of experiences during his confirmed service in the Republic of Vietnam. Specifically, he states that his unit was routinely shelled by mortar and rocket fire and gunshots daily. He also indicates that he saw fellow servicemen in body bags every day. These situations caused him to be fearful for his life.

In May 2018, the Veteran underwent a VA examination. The examiner found that the Veteran did not meet the diagnostic criteria for PTSD. Although the examiner found that the Veteran described stressors related to "hostile military or terrorist activity" that were adequate to support a diagnosis of PTSD, she found that the Veteran's overall symptomatology better aligned with a diagnosis of unspecified depressive disorder with maladaptive personality characteristics.

In contrast, the Veteran submitted a private disability benefits questionnaire (DBQ) completed by a private psychiatrist that October. The private psychiatrist endorsed a review of the Veteran's service treatment records, personnel records, post-service medical records, and lay statements. He provided the Veteran with a mental status evaluation, including formal  sychiatric testing. The private psychiatric ultimately determined that the Veteran's military history, to include constant mortar and

4

IN THE APPEAL OF
**ROBERT L. CHASTAIN**

C XX XXX 018
Docket No. 20-01 364

rocket attacks, combined with his reported symptomatology of repeated disturbing thoughts, memories, and images of war trauma, periods when he suddenly feels like the trauma is recurring, unpleased physiological arousal with reminder of the trauma, loss of interest in formerly enjoyable pursuits, a sense of a foreshortened future, emotional numbing and feeling isolated from others, problems with memory and concentration, constant irritability, easy startle response, hypervigilance, anxiety, and depression, persistent, exaggerated negative beliefs, and suicidal ideation, results in diagnoses of PTSD, chronic due to combat trauma, and bipolar disorder, type II. The examiner found that the Veteran's PTSD was at least as likely as not caused by his reported in-service stressors and had worsened; it was not in remission.

The Veteran's VA treatment records also show that the Veteran has been diagnosed with PTSD at various points throughout the appeal period either through PTSD screening or by VA medical personnel, and it is routinely present on his Active Problem List.

The benefit of the doubt rule does not require diagnostic certainty. *See Wise v. Shinseki*, 26 Vet. App. 517, 531 (2014). Rather, the *Wise* court instructed that the benefit of the doubt standard reflects the nation's recognition of debt to our veterans and has assumed the risk of error in awarding benefits to the veteran. As there are valid opinions for and against whether the Veteran's service-connected disorder should be diagnostically categorized as PTSD versus other acquired psychiatric disorders, the Board resolves reasonable doubt in favor of the Veteran and finds that he manifests PTSD as a result of stressors during his confirmed active duty service in the Republic of Vietnam. Therefore, service connection for an acquired psychiatric disability, to include PTSD, is granted.

OF9AD01200B19400060008  220873

IN THE APPEAL OF                                    C XX XXX 018
   **ROBERT L. CHASTAIN**                 Docket No. 20-01 364

## REASONS FOR REMAND

**Entitlement to a disability rating in excess of 30 percent for a right knee disability is remanded.**

The Veteran maintains entitlement to a disability rating in excess of 30 percent for a right knee disability. The Veteran's last VA examination was in July 2018, and he testified at his May 2021 videoconference hearing that his right knee symptoms are steadily worsening. The duty to assist includes providing the Veteran a thorough and contemporaneous examination. *See Green v. Derwinski*, 1 Vet. App. 121, 124 (1991) (VA has a duty to provide the Veteran with a thorough and contemporaneous medical examination); *see also Caffrey v. Brown*, 6 Vet. App. 377, 381 (1994) (an examination too remote for rating purposes cannot be considered contemporaneous). The Board finds that the Veteran is entitled to a new VA examination to assess the current severity of this disability.

The matter is REMANDED for the following action:

> 1. Schedule the Veteran for an examination by an appropriate clinician to determine the current severity of his service-connected right knee disability. The examiner should provide a full description of the disability and report all signs and symptoms necessary for evaluating the Veteran's disability under the rating criteria.
>
> In so doing, the examiner must test the Veteran's active motion, passive motion, and pain with weight-bearing and without weight-bearing. If it is not possible to provide a specific measurement without speculation, the examiner must state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), a deficiency in the record (additional facts are required), or the examiner (does not have the knowledge or training).

6

IN THE APPEAL OF
**ROBERT L. CHASTAIN**

C XX XXX 018
Docket No. 20-01 364



The examiner must also attempt to elicit information regarding the severity, frequency, and duration of any flare-ups, and the degree of functional loss during flare-ups. If it is not possible to provide a specific measurement based on direct observation, the examiner should provide an estimate, if at all possible, of the additional impairment due to flare-ups based on the other evidence of record and the Veteran's statements. If it is not possible to provide a specific measurement without speculation, the examiner must state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), a deficiency in the record (additional facts are required), or the examiner (does not have the knowledge or training).

Jennifer Hwa

**JENNIFER HWA**
Veterans Law Judge
Board of Veterans' Appeals

Attorney for the Board                                    L. Bush

*The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.*

7

OF9AD01200819400070008 220875

**Department of Veterans Affairs**

# YOUR RIGHTS TO APPEAL OUR DECISION

The attached decision by the Board of Veterans' Appeals (Board) is the final decision for all issues addressed in the "Order" section of the decision. The Board may also choose to remand an issue or issues to the local VA office for additional development. If the Board did this in your case, then a "Remand" section follows the "Order." However, you cannot appeal an issue remanded to the local VA office because a remand is not a final decision. *The advice below on how to appeal a claim applies only to issues that were allowed, denied, or dismissed in the "Order."*

If you are satisfied with the outcome of your appeal, you do not need to do anything. Your local VA office will implement the Board's decision. However, if you are not satisfied with the Board's decision on any or all of the issues allowed, denied, or dismissed, you have the following options, which are listed in no particular order of importance:

- Appeal to the United States Court of Appeals for Veterans Claims (Court)
- File with the Board a motion for reconsideration of this decision
- File with the Board a motion to vacate this decision
- File with the Board a motion for revision of this decision based on clear and unmistakable error.

Although it would not affect this BVA decision, you may choose to also:

- Reopen your claim at the local VA office by submitting new and material evidence.

There is *no* time limit for filing a motion for reconsideration, a motion to vacate, or a motion for revision based on clear and unmistakable error with the Board, or a claim to reopen at the local VA office. Please note that if you file a Notice of Appeal with the Court and a motion with the Board at the same time, this may delay your appeal at the Court because of jurisdictional conflicts. If you file a Notice of Appeal with the Court *before* you file a motion with the Board, the Board will not be able to consider your motion without the Court's permission or until your appeal at the Court is resolved.

**How long do I have to start my appeal to the court?** You have **120 days** from the date this decision was mailed to you (as shown on the first page of this decision) to file a Notice of Appeal with the Court. If you also want to file a motion for reconsideration or a motion to vacate, you will still have time to appeal to the court. *As long as you file your motion(s) with the Board within 120 days of the date this decision was mailed to you,* you will have another 120 days from the date the Board decides the motion for reconsideration or the motion to vacate to appeal to the Court. You should know that even if you have a representative, as discussed below, *it is your responsibility to make sure that your appeal to the Court is filed on time.* Please note that the 120-day time limit to file a Notice of Appeal with the Court does not include a period of active duty. If your active military service materially affects your ability to file a Notice of Appeal (e.g., due to a combat deployment), you may also be entitled to an additional 90 days after active duty service terminates before the 120-day appeal period (or remainder of the appeal period) begins to run.

**How do I appeal to the United States Court of Appeals for Veterans Claims?** Send your Notice of Appeal to the Court at:

**Clerk, U.S. Court of Appeals for Veterans Claims**
**625 Indiana Avenue, NW, Suite 900**
**Washington, DC 20004-2950**

You can get information about the Notice of Appeal, the procedure for filing a Notice of Appeal, the filing fee (or a motion to waive the filing fee if payment would cause financial hardship), and other matters covered by the Court's rules directly from the Court. You can also get this information from the Court's website on the Internet at: http://www.uscourts.cavc.gov, and you can download forms directly from that website. The Court's facsimile number is (202) 501-5848.

To ensure full protection of your right of appeal to the Court, you must file your Notice of Appeal **with the Court**, not with the Board, or any other VA office.

**How do I file a motion for reconsideration?** You can file a motion asking the Board to reconsider any part of this decision by writing a letter to the Board clearly explaining why you believe that the Board committed an obvious error of fact or law, or stating that new and material military service records have been discovered that apply to your appeal. It is important that your letter be as specific as possible. A general statement of dissatisfaction with the Board decision or some other aspect of the VA claims adjudication process will not suffice. If the Board has decided more than one issue, be sure to tell us which issue(s) you want reconsidered. Issues not clearly identified will not be considered. Send your letter to:

**Litigation Support Branch**
**Board of Veterans' Appeals**
**P.O. Box 27063**
**Washington, DC 20038**

VA FORM
DEC 2016   **4597**

CONTINUED ON NEXT PAGE

Remember, the Board places no time limit on filing a motion for reconsideration, and you can do this at any time. However, if you also plan to appeal this decision to the Court, you must file your motion within 120 days from the date of this decision.

**How do I file a motion to vacate?** You can file a motion asking the Board to vacate any part of this decision by writing a letter to the Board stating why you believe you were denied due process of law during your appeal. *See* 38 C.F.R. 20.904. For example, you were denied your right to representation through action or inaction by VA personnel, you were not provided a Statement of the Case or Supplemental Statement of the Case, or you did not get a personal hearing that you requested. You can also file a motion to vacate any part of this decision on the basis that the Board allowed benefits based on false or fraudulent evidence. Send this motion to the address on the previous page for the Litigation Support Branch, at the Board. Remember, the Board places no time limit on filing a motion to vacate, and you can do this at any time. However, if you also plan to appeal this decision to the Court, you must file your motion within 120 days from the date of this decision.

**How do I file a motion to revise the Board's decision on the basis of clear and unmistakable error?** You can file a motion asking that the Board revise this decision if you believe that the decision is based on "clear and unmistakable error" (CUE). Send this motion to the address on the previous page for the Litigation Support Branch, at the Board. You should be careful when preparing such a motion because it must meet specific requirements, and the Board will not review a final decision on this basis more than once. You should carefully review the Board's Rules of Practice on CUE, 38 C.F.R. 20.1400-20.1411, and *seek help from a qualified representative before filing such a motion*. See discussion on representation below. Remember, the Board places no time limit on filing a CUE review motion, and you can do this at any time.

**How do I reopen my claim?** You can ask your local VA office to reopen your claim by simply sending them a statement indicating that you want to reopen your claim. However, to be successful in reopening your claim, you must submit new and material evidence to that office. *See* 38 C.F.R. 3.156(a).

**Can someone represent me in my appeal?** Yes. You can always represent yourself in any claim before VA, including the Board, but you can also appoint someone to represent you. An accredited representative of a recognized service organization may represent you free of charge. VA approves these organizations to help veterans, service members, and dependents prepare their claims and present them to VA. An accredited representative works for the service organization and knows how to prepare and present claims. You can find a listing of these organizations on the Internet at: http://www.va.gov/vso/. You can also choose to be represented by a private attorney or by an "agent." (An agent is a person who is not a lawyer, but is specially accredited by VA.)

If you want someone to represent you before the Court, rather than before the VA, you can get information on how to do so at the Court's website at: http://www.uscourts.cavc.gov. The Court's website provides a state-by-state listing of persons admitted to practice before the Court who have indicated their availability to the represent appellants. You may also request this information by writing directly to the Court. Information about free representation through the Veterans Consortium Pro Bono Program is also available at the Court's website, or at: http://www.vetsprobono.org, mail@vetsprobono.org, or (855) 446-9678.



**Do I have to pay an attorney or agent to represent me?** An attorney or agent may charge a fee to represent you after a notice of disagreement has been filed with respect to your case, provided that the notice of disagreement was filed on or after June 20, 2007. *See* 38 U.S.C. 5904; 38 C.F.R. 14.636. If the notice of disagreement was filed before June 20, 2007, an attorney or accredited agent may charge fees for services, but only after the Board first issues a final decision in the case, and only if the agent or attorney is hired within one year of the Board's decision. *See* 38 C.F.R. 14.636(c)(2).

The notice of disagreement limitation does not apply to fees charged, allowed, or paid for services provided with respect to proceedings before a court. VA cannot pay the fees of your attorney or agent, with the exception of payment of fees out of past-due benefits awarded to you on the basis of your claim when provided for in a fee agreement.

**Fee for VA home and small business loan cases:** An attorney or agent may charge you a reasonable fee for services involving a VA home loan or small business loan. *See* 38 U.S.C. 5904; 38 C.F.R. 14.636(d).

**Filing of Fee Agreements**: If you hire an attorney or agent to represent you, a copy of any fee agreement must be sent to VA. The fee agreement must clearly specify if VA is to pay the attorney or agent directly out of past-due benefits. See 38 C.F.R. 14.636(g)(2). If the fee agreement provides for the direct payment of fees out of past-due benefits, a copy of the direct-pay fee agreement must be filed with the agency of original jurisdiction within 30 days of its execution. A copy of any fee agreement that is not a direct-pay fee agreement must be filed with the Office of the General Counsel within 30 days of its execution by mailing the copy to the following address: Office of the General Counsel (022D), Department of Veterans Affairs, 810 Vermont Avenue, NW, Washington, DC 20420. See 38 C.F.R. 14.636(g)(3).

The Office of the General Counsel may decide, on its own, to review a fee agreement or expenses charged by your agent or attorney for reasonableness. You can also file a motion requesting such review to the address above for the Office of the General Counsel. See 38 C.F.R. 14.636(i); 14.637(d).

VA FORM
DEC 2016   **4597**   Page 2     SUPERSEDES VA FORM 4597, APR 2015,
                                 WHICH WILL NOT BE USED

**EXHIBIT "29"**

K7

THIS IS AN IMPORTANT RECORD
SAFEGUARD IT.

| | | | | |
|---|---|---|---|---|
| **PERSONAL DATA** | 1. LAST NAME—FIRST NAME—MIDDLE NAME<br>CHASTAIN, Robert Lee | 2. SERVICE NUMBER<br>2611661 | 3. SOCIAL SECURITY NUMBER | |

| | | | | | |
|---|---|---|---|---|---|
| 4. DEPARTMENT, COMPONENT AND BRANCH OR CLASS<br>USMC | 5a. GRADE, RATE OR RANK<br>LCpl | 5. PAY GRADE<br>E-3 | 6. DATE OF RANK | DAY 01 | MONTH Dec | YEAR 71 |

| 7. U. S. CITIZEN | 8. PLACE OF BIRTH (City and State or Country) | 9. DATE OF BIRTH |
|---|---|---|
| ☐ YES  ☐ NO | Olean, N.Y. | DAY | MONTH | YEAR |

**SELECTIVE SERVICE DATA**

| 10a. SELECTIVE SERVICE NUMBER<br>30 81 50 670 | b. SELECTIVE SERVICE LOCAL BOARD NUMBER, CITY, COUNTY, STATE AND ZIP CODE<br>LB#81 Lockport, N.Y. | c. DATE INDUCTED |
|---|---|---|
| | | DAY | MONTH | YEAR<br>N/A |

**TRANSFER OR DISCHARGE DATA**

| 11a. TYPE OF TRANSFER OR DISCHARGE<br>Discharged | b. STATION OR INSTALLATION AT WHICH EFFECTED<br>MCAS, EL TORO, SANTA ANA, CALIF. |
|---|---|

| c. REASON AND AUTHORITY<br>273 Phys Dsbl w/Sev Pay Par 10401<br>MARCORSEPMAN&CMC Msg 062011Z dtd Jul72 & VA Codes* | d. EFFECTIVE DATE<br>DAY 17 | MONTH Jul | YEAR 72 |
|---|---|

| 12. LAST DUTY ASSIGNMENT AND MAJOR COMMAND<br>HMA 323, MAG 11, 3dMAW,<br>MCAS, EL TORO, CALIF. | 13a. CHARACTER OF SERVICE<br>HONORABLE | b. TYPE OF CERTIFICATE ISSUED<br>DD256MC |
|---|---|---|

| 14. DISTRICT, AREA COMMAND OR CORPS TO WHICH RESERVIST TRANSFERRED<br>N/A | 15 REENLISTMENT CODE<br>RE-3P |
|---|---|

| 16. TERMINAL DATE OF RESERVE UMT & S OBLIGATION<br>DAY  MONTH  YEAR<br>N/A | 17. CURRENT ACTIVE SERVICE OTHER THAN BY INDUCTION<br>a. SOURCE OF ENTRY:<br>☒ ENLISTED (First Enlistment)  ☐ ENLISTED (Prior Service)  ☐ REENLISTED<br>☐ OTHER | b. TERM OF SERVICE (Years)<br>4 | c. DATE OF ENTRY<br>DAY 22 | MONTH Jul | YEAR 69 |
|---|---|---|---|

**SERVICE DATA**

| 18. PRIOR REGULAR ENLISTMENTS<br>None | 19. GRADE, RATE OR RANK AT TIME OF ENTRY INTO CURRENT ACTIVE SVC<br>Pvt E-1 | 20. PLACE OF ENTRY INTO CURRENT ACTIVE SERVICE (City and State)<br>Buffalo, N.Y. |
|---|---|---|

| 21. HOME OF RECORD AT TIME OF ENTRY INTO ACTIVE SERVICE (Street, RFD, City, County, State and ZIP Code)<br>Lockport, Niagara, N.Y. 14094 | 22. | | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| | a. CREDITABLE FOR BASIC PAY PURPOSES | (1) NET ACTIVE SERVICE THIS PERIOD | 02 | 11 | 26 |
| | | (2) OTHER SERVICE | 00 | 00 | 00 |
| | | (3) TOTAL (Line (1) plus Line (2)) | 02 | 11 | 26 |
| 23a. SPECIALTY NUMBER & TITLE<br>6077<br>A/CMaint | b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER<br>621.281<br>A/Cfh ELECTRICIAN | b. TOTAL ACTIVE SERVICE | 02 | 11 | 26 |
| | | c. FOREIGN AND/OR SEA SERVICE | 00 | 02 | 28 |

| 24. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED |
|---|
| National Defense Service Medal  Vietnamese Service Medal w/1* Navy Unit Citation  Vietnamese Campaign Medal w/Device Pistol Expert |

| 25. EDUCATION AND TRAINING COMPLETED |
|---|
| HighScol-4yrs<br>Avionics Tech<br>Electronic Measurement<br>3M Basic Crs |

**VA AND EMP. SERVICE DATA**

| 26a. NON-PAY PERIODS/TIME LOST (Preceding Two Years)<br>None | b. DAYS ACCRUED LEAVE PAID<br>None due | 27a. INSURANCE IN FORCE (NSLI or USGLI)<br>☐ YES  ☒ NO | b. AMOUNT OF ALLOTMENT<br>$ N/A | c. MONTH ALLOTMENT DISCONTINUED<br>N/A |
|---|---|---|---|---|
| 700804 - 700805 | 28. VA CLAIM NUMBER<br>c. N/A | 29. SERVICEMEN'S GROUP LIFE INSURANCE COVERAGE<br>☒ $15,000  ☐ $5,000  ☐ NONE | | |

**REMARKS**

| 30. REMARKS |
|---|
| Good Conduct Medal Period Commences: 25Jan71 (1stAwd)<br>Served in Vietnam: 24Feb71 to 11May71<br>*Cont on 11c: 5010, 5003 |

**AUTHENTICATION**

| 31. PERMANENT ADDRESS FOR MAILING PURPOSES AFTER TRANSFER OR DISCHARGE (Street, RFD, City, County, State and ZIP Code)<br>1802 W. 19th St.   Santa Ana,<br>Orange, Calif. 92709 | 32. SIGNATURE OF PERSON BEING TRANSFERRED OR DISCHARGED<br>*Robert Lee Chastain*<br>NOT AVAILABLE FOR SIGNATURE |
|---|---|
| 33. TYPED NAME, GRADE AND TITLE OF AUTHORIZED OFFICER<br>L.J. OSWALT, MAJOR, USMC, OIC<br>REASSIGNMENT BRANCH | 34. SIGNATURE OF OFFICER AUTHORIZED TO SIGN<br>*Oswalt* |

DD FORM 214 MC (1900)  JUL 66  PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE  ARMED FORCES OF THE UNITED STATES REPORT OF TRANSFER OR DISCHARGE  S/N 0102-002-0000  INDIV-1

**EXHIBIT "30"**

```
                                                           01/14/2008 07:1
************  CONFIDENTIAL Patient Health Journal SUMMARY   pg. 1 ***********
CHASTAIN,ROBERT L       ██████████      ─────────────── DOB: ██████████ 5
---------------------------------- Primary Provider ---------------------------



                Current Primary Care Team:    PACT1(PAD)
                Current PC Practitioner:      OSTERBERG,LARS G
----------------------- PHJ - Problem List (PHJ) ----------------------
                                             9 Active Problems
   PROBLEM                                   LAST MOD
   OBESITY, UNSP (ICD 278.00); Obesity * (ICD-9-CM  01/11/2006
   278.00)

   EPISODIC MOOD DISORD NEC (ICD 296.99); Other     06/24/2005
   specified episodic mood Disorder (ICD-9-CM
   296.99)

   POSTTRAUMATIC STRESS DIS (ICD 309.81);           06/24/2005
   Posttraumatic Stress Disorder * (ICD-9-CM
   309.81)

   DEPRESSIVE DISORDER NEC (ICD 311.); Depression *  04/07/2005
   (ICD-9-CM 300.4/311.)

   VENOUS THROMBOSIS NEC (ICD 453.8); Deep Vein     11/10/2003
   Thrombosis (ICD-9-CM 453.8)

   Osteoarthrosis, unspecified whether generalized  06/09/2003
   or localized, involving lower leg (ICD 715.96)

   Osteoarthrosis, unspecified whether generalized  08/01/2002
   or localized, involving unspecified site (ICD
   715.90)

   Other and unspecified hyperlipidemia (ICD 272.4)  05/02/2002

   Nonspecific abnormal findings (radiological) of  05/02/2002
   musculoskeletal system (ICD 793.7)
```

**EXHIBIT "31"**



# BOARD OF VETERANS' APPEALS

FOR THE SECRETARY OF VETERANS AFFAIRS

IN THE APPEAL OF
**ROBERT L. CHASTAIN**
Represented by
Colin E. Kemmerly, Attorney

C XX XXX 018
Docket No. 20-01 364

DATE: September 6, 2022

## ORDER

Entitlement to a disability rating in excess of 0 percent for a right knee scar has been withdrawn.



Entitlement to service connection for an acquired psychiatric disability, to include posttraumatic stress disorder (PTSD), is granted.

## REMANDED

Entitlement to a disability rating in excess of 30 percent for a right knee disability is remanded.

## FINDINGS OF FACT

1. On May 20, 2021, prior to the promulgation of a decision in the appeal, the Board received notification from the appellant's authorized representative that a withdrawal of the claim of entitlement to a disability rating in excess of 0 percent for a right knee scar is requested.

2. Resolving reasonable doubt in the Veteran's favor, his PTSD is at least as likely as not (likelihood is at least approximately balanced or nearly equal, if not higher) related to his in-service stressors while serving on active duty in the Republic of Vietnam.

IN THE APPEAL OF
**ROBERT L. CHASTAIN**

C XX XXX 018
Docket No. 20-01 364

## CONCLUSIONS OF LAW

1. The criteria for withdrawal of the claim of entitlement to a disability rating in excess of 0 percent for a right knee scar by the appellant's authorized representative have been met. 38 U.S.C. § 7105; 38 C.F.R. § 19.55.

2. The criteria for entitlement to service connection for an acquired psychiatric disability, to include PTSD, have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304.

## REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the U.S. Marine Corps from July 1969 to July 1972, to include service in the Republic of Vietnam.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2018 rating decision of the Department of Veterans Affairs (VA) regional office (RO) which denied the Veteran's claims of entitlement to increased ratings for a right knee scar and a right knee disability and entitlement to service connection for an acquired psychiatric disability, to include PTSD. The Veteran timely appealed.

In May 2021, the Veteran testified before the undersigned Veterans Law Judge in a videoconference hearing. A copy of the hearing transcript is of record.

### Withdrawal

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C. § 7105. An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. Withdrawal may be made by the appellant or by his or her authorized representative. 38 C.F.R. § 19.55.

2

IN THE APPEAL OF
**ROBERT L. CHASTAIN**

C XX XXX 018
Docket No. 20-01 364

## 1. Entitlement to a disability rating in excess of 0 percent for a right knee scar is withdrawn.

In the present case, the appellant's authorized representative has withdrawn in writing the appeal for entitlement to a disability rating in excess of 0 percent for a right knee scar. Hence, there remain no allegations of errors of fact or law for appellate consideration. Accordingly, the Board does not have jurisdiction to review this appeal and it is dismissed.

### Service Connection



Service connection may be granted for a current disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303. Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). Establishing service connection generally requires evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. *Shedden v. Principi*, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

There are particular requirements for establishing PTSD in 38 C.F.R. § 3.304 (f), that are separate from those for establishing service connection generally. *Arzio v. Shinseki*, 602 F.3d 1343, 1347 (Fed. Cir. 2010). In order to be entitled to service connection for PTSD, there must be medical evidence of PTSD, medical evidence that establishes a link between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. *See* 38 C.F.R. § 3.304 (f); *Shedden*, 381 F.3d at 1167.

Corroboration of the stressor is not required when a VA psychiatrist or psychologist diagnoses PTSD resulting from a fear of hostile military or terrorist activity when that fear is consistent with the circumstances of the Veteran's service. 38 C.F.R. § 3.304 (f)(3). Corroboration of the existence of a stressor is also not required in certain circumstances when the Veteran was diagnosed with PTSD in service, the Veteran engaged in combat with the enemy and the claimed stressor is related to that experience, or the Veteran was a prisoner of war, and the claimed stressor is

3

related to that experience. 38 C.F.R. § 3.304 (f)(1), (2), (4). Corroboration of the existence of an in-service stressor is necessary in all other cases.

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits. In evaluating a claim, the Board must determine the value of all evidence submitted, including lay and medical evidence. 38 U.S.C. § 1154 (a); *Buchanan v. Nicholson*, 451 F.3d 1331, 1335 (Fed. Cir. 2006).

In determining whether service connection is warranted, the Board shall consider the benefit-of-the-doubt doctrine. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102. That is, the claimant is entitled to the benefit of the doubt when the evidence is in "approximate" balance, i.e., "nearly equal," but does not require that the evidence be in exact equipoise. *Lynch v. McDonough*, 21 F.4th 776 (Fed. Cir. 2021).

## 2. Entitlement to service connection for an acquired psychiatric disability, to include PTSD, is granted.

The Veteran maintains that he suffers from PTSD as a result of experiences during his confirmed service in the Republic of Vietnam. Specifically, he states that his unit was routinely shelled by mortar and rocket fire and gunshots daily. He also indicates that he saw fellow servicemen in body bags every day. These situations caused him to be fearful for his life.

In May 2018, the Veteran underwent a VA examination. The examiner found that the Veteran did not meet the diagnostic criteria for PTSD. Although the examiner found that the Veteran described stressors related to "hostile military or terrorist activity" that were adequate to support a diagnosis of PTSD, she found that the Veteran's overall symptomatology better aligned with a diagnosis of unspecified depressive disorder with maladaptive personality characteristics.

In contrast, the Veteran submitted a private disability benefits questionnaire (DBQ) completed by a private psychiatrist that October. The private psychiatrist endorsed a review of the Veteran's service treatment records, personnel records, post-service medical records, and lay statements. He provided the Veteran with a mental status evaluation, including formal  psychiatric testing. The private psychiatric ultimately determined that the Veteran's military history, to include constant mortar and

4

IN THE APPEAL OF
**ROBERT L. CHASTAIN**

C XX XXX 018
Docket No. 20-01 364

rocket attacks, combined with his reported symptomatology of repeated disturbing thoughts, memories, and images of war trauma, periods when he suddenly feels like the trauma is recurring, unpleased physiological arousal with reminder of the trauma, loss of interest in formerly enjoyable pursuits, a sense of a foreshortened future, emotional numbing and feeling isolated from others, problems with memory and concentration, constant irritability, easy startle response, hypervigilance, anxiety, and depression, persistent, exaggerated negative beliefs, and suicidal ideation, results in diagnoses of PTSD, chronic due to combat trauma, and bipolar disorder, type II. The examiner found that the Veteran's PTSD was at least as likely as not caused by his reported in-service stressors and had worsened; it was not in remission.

The Veteran's VA treatment records also show that the Veteran has been diagnosed with PTSD at various points throughout the appeal period either through PTSD screening or by VA medical personnel, and it is routinely present on his Active Problem List.

The benefit of the doubt rule does not require diagnostic certainty. *See Wise v. Shinseki*, 26 Vet. App. 517, 531 (2014). Rather, the *Wise* court instructed that the benefit of the doubt standard reflects the nation's recognition of debt to our veterans and has assumed the risk of error in awarding benefits to the veteran. As there are valid opinions for and against whether the Veteran's service-connected disorder should be diagnostically categorized as PTSD versus other acquired psychiatric disorders, the Board resolves reasonable doubt in favor of the Veteran and finds that he manifests PTSD as a result of stressors during his confirmed active duty service in the Republic of Vietnam. Therefore, service connection for an acquired psychiatric disability, to include PTSD, is granted.

5

IN THE APPEAL OF
**ROBERT L. CHASTAIN**

C XX XXX 018
Docket No. 20-01 364

### REASONS FOR REMAND

**Entitlement to a disability rating in excess of 30 percent for a right knee disability is remanded.**

The Veteran maintains entitlement to a disability rating in excess of 30 percent for a right knee disability. The Veteran's last VA examination was in July 2018, and he testified at his May 2021 videoconference hearing that his right knee symptoms are steadily worsening. The duty to assist includes providing the Veteran a thorough and contemporaneous examination. *See Green v. Derwinski*, 1 Vet. App. 121, 124 (1991) (VA has a duty to provide the Veteran with a thorough and contemporaneous medical examination); *see also Caffrey v. Brown*, 6 Vet. App. 377, 381 (1994) (an examination too remote for rating purposes cannot be considered contemporaneous). The Board finds that the Veteran is entitled to a new VA examination to assess the current severity of this disability.

The matter is REMANDED for the following action:

> 1. Schedule the Veteran for an examination by an appropriate clinician to determine the current severity of his service-connected right knee disability. The examiner should provide a full description of the disability and report all signs and symptoms necessary for evaluating the Veteran's disability under the rating criteria.
>
> In so doing, the examiner must test the Veteran's active motion, passive motion, and pain with weight-bearing and without weight-bearing. If it is not possible to provide a specific measurement without speculation, the examiner must state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), a deficiency in the record (additional facts are required), or the examiner (does not have the knowledge or training).

6

IN THE APPEAL OF
**ROBERT L. CHASTAIN**

C XX XXX 018
Docket No. 20-01 364



> The examiner must also attempt to elicit information regarding the severity, frequency, and duration of any flare-ups, and the degree of functional loss during flare-ups. If it is not possible to provide a specific measurement based on direct observation, the examiner should provide an estimate, if at all possible, of the additional impairment due to flare-ups based on the other evidence of record and the Veteran's statements. If it is not possible to provide a specific measurement without speculation, the examiner must state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), a deficiency in the record (additional facts are required), or the examiner (does not have the knowledge or training).

*Jennifer Hwa*

**JENNIFER HWA**
Veterans Law Judge
Board of Veterans' Appeals

Attorney for the Board

L. Bush

*The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.*

7

**Department of Veterans Affairs**

# YOUR RIGHTS TO APPEAL OUR DECISION

The attached decision by the Board of Veterans' Appeals (Board) is the final decision for all issues addressed in the "Order" section of the decision. The Board may also choose to remand an issue or issues to the local VA office for additional development. If the Board did this in your case, then a "Remand" section follows the "Order." However, you cannot appeal an issue remanded to the local VA office because a remand is not a final decision. *The advice below on how to appeal a claim applies only to issues that were allowed, denied, or dismissed in the "Order."*

If you are satisfied with the outcome of your appeal, you do not need to do anything. Your local VA office will implement the Board's decision. However, if you are not satisfied with the Board's decision on any or all of the issues allowed, denied, or dismissed, you have the following options, which are listed in no particular order of importance:

- Appeal to the United States Court of Appeals for Veterans Claims (Court)
- File with the Board a motion for reconsideration of this decision
- File with the Board a motion to vacate this decision
- File with the Board a motion for revision of this decision based on clear and unmistakable error.

Although it would not affect this BVA decision, you may choose to also:

- Reopen your claim at the local VA office by submitting new and material evidence.

There is *no* time limit for filing a motion for reconsideration, a motion to vacate, or a motion for revision based on clear and unmistakable error with the Board, or a claim to reopen at the local VA office. Please note that if you file a Notice of Appeal with the Court and a motion with the Board at the same time, this may delay your appeal at the Court because of jurisdictional conflicts. If you file a Notice of Appeal with the Court *before* you file a motion with the Board, the Board will not be able to consider your motion without the Court's permission or until your appeal at the Court is resolved.

**How long do I have to start my appeal to the court?** You have **120 days** from the date this decision was mailed to you (as shown on the first page of this decision) to file a Notice of Appeal with the Court. If you also want to file a motion for reconsideration or a motion to vacate, you will still have time to appeal to the court. *As long as you file your motion(s) with the Board within 120 days of the date this decision was mailed to you,* you will have another 120 days from the date the Board decides the motion for reconsideration or the motion to vacate to appeal to the Court. You should know that even if you have a representative, as discussed below, *it is your responsibility to make sure that your appeal to the Court is filed on time.* Please note that the 120-day time limit to file a Notice of Appeal with the Court does not include a period of active duty. If your active military service materially affects your ability to file a Notice of Appeal (e.g., due to a combat deployment), you may also be entitled to an additional 90 days after active duty service terminates before the 120-day appeal period (or remainder of the appeal period) begins to run.

**How do I appeal to the United States Court of Appeals for Veterans Claims?** Send your Notice of Appeal to the Court at:

**Clerk, U.S. Court of Appeals for Veterans Claims**
**625 Indiana Avenue, NW, Suite 900**
**Washington, DC 20004-2950**

You can get information about the Notice of Appeal, the procedure for filing a Notice of Appeal, the filing fee (or a motion to waive the filing fee if payment would cause financial hardship), and other matters covered by the Court's rules directly from the Court. You can also get this information from the Court's website on the Internet at: http://www.uscourts.cavc.gov, and you can download forms directly from that website. The Court's facsimile number is (202) 501-5848.

To ensure full protection of your right of appeal to the Court, you must file your Notice of Appeal **with the Court**, not with the Board, or any other VA office.

**How do I file a motion for reconsideration?** You can file a motion asking the Board to reconsider any part of this decision by writing a letter to the Board clearly explaining why you believe that the Board committed an obvious error of fact or law, or stating that new and material military service records have been discovered that apply to your appeal. It is important that your letter be as specific as possible. A general statement of dissatisfaction with the Board decision or some other aspect of the VA claims adjudication process will not suffice. If the Board has decided more than one issue, be sure to tell us which issue(s) you want reconsidered. Issues not clearly identified will not be considered. Send your letter to:

**Litigation Support Branch**
**Board of Veterans' Appeals**
**P.O. Box 27063**
**Washington, DC 20038**

Remember, the Board places no time limit on filing a motion for reconsideration, and you can do this at any time. However, if you also plan to appeal this decision to the Court, you must file your motion within 120 days from the date of this decision.

**How do I file a motion to vacate?** You can file a motion asking the Board to vacate any part of this decision by writing a letter to the Board stating why you believe you were denied due process of law during your appeal. *See* 38 C.F.R. 20.904. For example, you were denied your right to representation through action or inaction by VA personnel, you were not provided a Statement of the Case or Supplemental Statement of the Case, or you did not get a personal hearing that you requested. You can also file a motion to vacate any part of this decision on the basis that the Board allowed benefits based on false or fraudulent evidence. Send this motion to the address on the previous page for the Litigation Support Branch, at the Board. Remember, the Board places no time limit on filing a motion to vacate, and you can do this at any time. However, if you also plan to appeal this decision to the Court, you must file your motion within 120 days from the date of this decision.

**How do I file a motion to revise the Board's decision on the basis of clear and unmistakable error?** You can file a motion asking that the Board revise this decision if you believe that the decision is based on "clear and unmistakable error" (CUE). Send this motion to the address on the previous page for the Litigation Support Branch, at the Board. You should be careful when preparing such a motion because it must meet specific requirements, and the Board will not review a final decision on this basis more than once. You should carefully review the Board's Rules of Practice on CUE, 38 C.F.R. 20.1400-20.1411, and *seek help from a qualified representative before filing such a motion.* See discussion on representation below. Remember, the Board places no time limit on filing a CUE review motion, and you can do this at any time.

**How do I reopen my claim?** You can ask your local VA office to reopen your claim by simply sending them a statement indicating that you want to reopen your claim. However, to be successful in reopening your claim, you must submit new and material evidence to that office. *See* 38 C.F.R. 3.156(a).

**Can someone represent me in my appeal?** Yes. You can always represent yourself in any claim before VA, including the Board, but you can also appoint someone to represent you. An accredited representative of a recognized service organization may represent you free of charge. VA approves these organizations to help veterans, service members, and dependents prepare their claims and present them to VA. An accredited representative works for the service organization and knows how to prepare and present claims. You can find a listing of these organizations on the Internet at: http://www.va.gov/vso/. You can also choose to be represented by a private attorney or by an "agent." (An agent is a person who is not a lawyer, but is specially accredited by VA.)

If you want someone to represent you before the Court, rather than before the VA, you can get information on how to do so at the Court's website at: http://www.uscourts.cavc.gov. The Court's website provides a state-by-state listing of persons admitted to practice before the Court who have indicated their availability to the represent appellants. You may also request this information by writing directly to the Court. Information about free representation through the Veterans Consortium Pro Bono Program is also available at the Court's website, or at: http://www.vetsprobono.org, mail@vetsprobono.org, or (855) 446-9678.



**Do I have to pay an attorney or agent to represent me?** An attorney or agent may charge a fee to represent you after a notice of disagreement has been filed with respect to your case, provided that the notice of disagreement was filed on or after June 20, 2007. *See* 38 U.S.C. 5904; 38 C.F.R. 14.636. If the notice of disagreement was filed before June 20, 2007, an attorney or accredited agent may charge fees for services, but only after the Board first issues a final decision in the case, and only if the agent or attorney is hired within one year of the Board's decision. *See* 38 C.F.R. 14.636(c)(2).

The notice of disagreement limitation does not apply to fees charged, allowed, or paid for services provided with respect to proceedings before a court. VA cannot pay the fees of your attorney or agent, with the exception of payment of fees out of past-due benefits awarded to you on the basis of your claim when provided for in a fee agreement.

**Fee for VA home and small business loan cases:** An attorney or agent may charge you a reasonable fee for services involving a VA home loan or small business loan. *See* 38 U.S.C. 5904; 38 C.F.R. 14.636(d).

**Filing of Fee Agreements**: If you hire an attorney or agent to represent you, a copy of any fee agreement must be sent to VA. The fee agreement must clearly specify if VA is to pay the attorney or agent directly out of past-due benefits. See 38 C.F.R. 14.636(g)(2). If the fee agreement provides for the direct payment of fees out of past-due benefits, a copy of the direct-pay fee agreement must be filed with the agency of original jurisdiction within 30 days of its execution. A copy of any fee agreement that is not a direct-pay fee agreement must be filed with the Office of the General Counsel within 30 days of its execution by mailing the copy to the following address: Office of the General Counsel (022D), Department of Veterans Affairs, 810 Vermont Avenue, NW, Washington, DC 20420. See 38 C.F.R. 14.636(g)(3).

The Office of the General Counsel may decide, on its own, to review a fee agreement or expenses charged by your agent or attorney for reasonableness. You can also file a motion requesting such review to the address above for the Office of the General Counsel. See 38 C.F.R. 14.636(i); 14.637(d).