UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L. CHASTAIN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SUSAN L. HOWARD, et al.,<br><br>Defendants. | Case No. 22-cv-06747-PCP<br><br>**ORDER DISMISSING ALL CLAIMS WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 13, 14, 15, 24. |

Plaintiffs Dr. Robert L. Chastain and Chastain Research Group, Inc. bring this action for fraud, breach of the implied covenant of good faith and fair dealing, misrepresentation, and negligence against Susan L. Howard and Harriet Major. Defendants have moved to dismiss plaintiffs' claims, and Ms. Howard has also moved to strike all claims under California's Anti-SLAPP law, Cal. Code Civ. Proc. § 425.16. For the reasons that follow, the motions to dismiss are granted with leave to amend and the motion to strike is denied.

**I.   Background**

The following facts are alleged in plaintiffs' complaint and accepted as true for purposes of defendants' Rule 12(b)(6) motions.

Dr. Chastain founded R&C Consulting as a sole proprietorship in 1983. In October 1992, he married Ms. Howard. In September 1993, Chastain Research Group (CRG) was incorporated with Dr. Chastain and Ms. Howard (then Ms. Chastain) as the initial directors. Through at least 2008, Ms. Howard was the Secretary, Treasurer, and Chief Financial Officer of CRG. She also began working as an employee in early 1995, initially doing payroll twice a month.

In late 1997, after finishing law school and passing the bar, Dr. Chastain began working at a law firm. Shortly thereafter, CRG was sued for trade secrets violations. The case settled. Dr.

Chastain alleges that Ms. Howard had conspired with another CRG employee to illegally solicit clients using lists that had been stolen from another company. The lawsuit allegedly "destroyed" Dr. Chastain's legal career and CRG's revenue and profits "plummeted." Compl., Dkt. No. 1, at 6. Dr. Chastain maintains that Ms. Howard is responsible for the ensuing losses.

Dr. Chastain "returned" to CRG in 1998 and resumed his position as CEO. Compl. at 6. By August 1998, CRG had three directors: Dr. Chastain, Ms. Howard, and Ms. Howard's mother Harriet Major. According to the purported minutes of an August 18, 1998 meeting, the CRG board unanimously adopted a resolution "that 51% of all shares will be transferred to Robert L. Chastain effective August 18, 1998 due to his increasing role as Chief Executive Officer and General Counsel," and that the "remainder of all shares shall continue to be retained by Susan L. Chastain." Compl. Ex. 7, Dkt. No. 1, at 65.

A decade later, on October 27, 2008, Dr. Chastain updated an application to certify CRG as a Service-Disabled Veteran Owned Small Business in order to qualify for certain federal contracts. Dr. Chastain claims that Ms. Howard told him that day that his application was fraudulent because she in fact owned a majority of CRG. Dr. Chastain claims that Ms. Howard provided a different version of the minutes from the same August 18, 1998 board meeting. Her version of the minutes showed that the resolution adopted authorized "that 49% of all shares will be transferred to Robert L. Chastain effective August 18, 1998 due to his increasing role as Chief Executive Officer and General Counsel," with the remainder (now 51%) remaining with Ms. Howard. Compl. Ex. 9, Dkt. No. 1, at 70. After being shown this version of the minutes in October 2008, Dr. Chastain says he asked Ms. Howard to transfer 2% of the shares to him so that he would not have to withdraw his application, but she refused.

The next day, after Ms. Howard again refused to transfer 2% of her shares to Dr. Chastain, he separated from her, quit CRG, and took a different job. On December 22, 2008, Dr. Chastain and Ms. Howard signed a marriage settlement agreement which transferred all CRG shares to Dr. Chastain, who became the 100% sole owner. The agreement also included several provisions governing potential claims between the divorcing parties:

2

> [**Section IX, paragraph (2):**] The confirmation of the Chastain Research Group, Inc. to husband … is subject to the following agreements: … The parties intend to execute all necessary corporate documents to ensure that 100% of the stock is transferred to Husband and Husband shall execute a document by which he will hold Wife and Wife's mother, both of whom are former members of the Board of Directors, free and harmless from all past, present and future liabilities arising from said business.…
>
> [**Section XI, paragraph (9):**] Except as otherwise expressly provided … the parties mutually waive, relinquish, release, discharge, and acknowledge the satisfaction of any and all rights, claim and demands which either may now have against the other. The parties have read and fully understand Sections 1100 and 1101 of the Family Code and, without limiting the generality of the foregoing, do hereby waive, relinquish, release, discharge and acknowledge the satisfaction of any and all rights, claims and demands, known or unknown, which either may now or hereafter have against the other arising out of the aforesaid Family Code sections.
>
> [**Exhibit B, paragraph 12** (providing that the following is sole property of Dr. Chastain):] Subject to Section IX, 920 hereof, all of the parties' right, title and interest in and to [CRG], including all [various assets], subject to all claims, demands, debts and obligations, line of credit arising out of or in any way connected with any past, present or future ownership or operation of said business. With respect to said claims, demands, debts and obligations, Husband shall assume, pay and discharge same, when due, and hold Wife (and Wife's mother) free and harmless therefrom.

Dkt. No. 14, Exhibit A. The Chastains' divorce was finalized shortly thereafter.

In July 2021, Ms. Howard sued Dr. Chastain in state court seeking enforcement of the parties' divorce agreement. On November 15, 2021, while that litigation was underway, Dr. Chastain emailed Naomi Parker, a former attorney for the Chastain Family Trust, requesting documents she had in her possession pertaining to the trust. Compl. Ex. 14, Dkt. No. 1, at 85. Ms. Parker responded with "copies of what I have that relates to your corporation." *Id.* She attached a copy of an August 2008 fax she received from Ms. Howard which included copies of two re-issued CRG stock certificates, both dated August 22, 2008. The certificates show 51% of shares issued to Dr. Chastain and 49% to Ms. Howard. Compl. Ex. 15, Dkt. No. 1, at 88–89. According to Dr. Chastain, this provides "substantial proof" that Ms. Howard "knowingly lied about being majority owner" when she later told him in October that she was the majority owner. Compl. at 8.

3

On November 23, 2021, in response to a discovery request in the state court case, Dr. Chastain obtained copies of four earlier stock certificates he says he did not previously have. One pair, dated August 24, 1998, shows 51% of shares issued to Ms. Howard, and 49% to Dr. Chastain. Another pair, issued September 15, 2005, again shows 51% to Ms. Howard and 49% to Dr. Chastain, but this time each in their capacity as trustees of the Robert and Susan Chastain Trust. Compl. Ex. 18, Dkt. No. 1, at 97–100. Another discovery response shows yet a third version of the minutes of the August 18, 1998 board meeting, including a resolution "that 10% of all shares will be transferred to Robert L. Chastain effective August 18, 1998 due to his increasing role as Chief Executive Officer and General Counsel," with the remainder again staying with Ms. Howard. Compl. Ex. 20, Dkt. No. 1, at 108.

Dr. Chastain claims that if he knew his then-wife had not transferred 51% of the shares to him in August 1998 as allegedly agreed, he would have resigned from CRG and divorced Ms. Howard then, in 1998, and sued for return of the company. He alleges a range of damages resulting from this failure to transfer the shares as agreed. He also claims that a "reasonable and diligent investigation" would not have uncovered these actions until November 23, 2021, because "at all times the relevant and accurate CRG documents were in Defendants' possession and intentionally hidden or fraudulently altered."

Harriet Major is Ms. Howard's mother and a former director of CRG. Aside from her vote at the August 1998 board meeting, very few of Dr. Chastain's allegations directly pertain to Ms. Major. Dr. Chastain alleges that Ms. Major and Ms. Howard "conspired" to "steal" CRG ownership and "reward[] themselves with corporate monies," including $70,000 towards the 2009 purchase of their house. Compl. at 11. Ms. Major also received stipends from 2002 through 2008.

On November 1, 2022, Dr. Chastain and CRG filed the present action. They assert four causes of action against Ms. Howard and Ms. Major, including fraud, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and negligence. Defendants thereafter moved to dismiss plaintiffs' claims, and Ms. Howard moved to strike the claims under California's Anti-SLAPP statute.

4

## II. Legal Standards

A complaint can be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) challenge may be facial, contending that the complaint's allegations even if true are insufficient to invoke federal jurisdiction, or factual, in which the challenger disputes the allegations that otherwise invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In reviewing a factual challenge, courts may "review evidence beyond the complaint" and "need not presume the truthfulness of the plaintiff's allegations." *Id.*

A complaint that does not state a claim upon which relief can be granted can be dismissed under Rule 12(b)(6). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009).

## III. Analysis

### A. Plaintiffs' Claims Do Not Fall Within the Domestic Relations Exception.

Ms. Howard first argues that plaintiffs' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because they fall within the domestic relations exception to federal diversity jurisdiction and this Court therefore lacks jurisdiction.

The "domestic relations exception … divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). It "encompasses only cases involving the issuance" of such a decree, *id.* at 704, or the "modification of an existing decree," *Bailey v. MacFarland*, 5 F.4th 1092, 1096 (9th Cir. 2021).

Dr. Chastain and Ms. Howard are divorced. But the fact that a state court has previously issued a divorce decree and that facts pertaining to the divorce are asserted in this case does not itself divest this Court of jurisdiction. To be certain, the parties disagree about the effect of certain provisions of their marital settlement agreement, including the waiver provisions, on the claims being pursued in this lawsuit, and plaintiffs claim that certain allegedly fraudulent conduct by Ms. Howard predating the divorce proceedings affected how Dr. Chastain negotiated the marital settlement agreement. But plaintiffs do not seek to undo the distribution of marital property

established within that agreement or otherwise modify the agreement. Instead, plaintiffs seek damages for the underlying conduct predating the parties' divorce. Because this case does not involve issuance or modification of a divorce decree, it does not fall within the domestic relations exception.

### B. The Parties' Marital Settlement Agreement Did Not Waive Plaintiffs' Claims.

Defendants next argue that Dr. Chastain waived the claims he asserts in this case as part of the marital settlement agreement. Ms. Howard requests judicial notice of the agreement, which was entered in San Mateo County Superior Court in the action *Robert Chastain v. Susan Howard (fka Chastain)*, Case No. FAM0101854, alongside a February 11, 2009 Notice of Judgment of Dissolution and Judgment of Dissolution. These court filings are judicially noticeable under Federal Rule of Evidence 201(b) and the Court therefore grants Ms. Howard's unopposed request.

Two provisions of the agreement are relevant. First, in Section XI(9), the parties waived "all rights, claims and demands, known or unknown, which either may now or hereafter have against the other arising out of … Family Code sections [1100 and 1101]." Dkt. No. 14-1, at 30. Ms. Howard argues that this waiver of "all known or unknown claims" applies to the claims against her in this case because Dr. Chastain received CRG as part of the divorce settlement. Dkt. No. 13, at 12. By its plain terms, however, this waiver provision only applies to claims arising out of Sections 1100 or 1101 of the California Family Code, which govern spouses' rights with respect to community property. While plaintiffs' claims may be factually related to the community property distributed as part of the divorce settlement, the claims themselves do not arise under either of these sections and therefore are not covered by the waiver provision in Section XI of the settlement agreement.

Second, Exhibit B of the marital settlement agreement provides "Confirmation of Husband's Separate Property and Husband's Share of the Agreed To Division of Community Property." Dkt. No. 14-1, at 33. This attachment provides that "all of the parties' right, title, and interest in and to … Chastain Research Group, Inc., … subject to all claims, demands, debts and obligations … arising out of or in any way connected with any past, present, or future ownership or operation of said business" are Dr. Chastain's property. The agreement specified that "[w]ith

6

respect to said claims, … Husband shall assume, pay and discharge same, when due, and hold Wife (and Wife's mother) free and harmless therefrom." *Id.* at 34. Both Ms. Howard and Ms. Major argue that this hold-harmless clause is an "insurmountable bar to all of the claims" against each of them. Dkt. No. 13, at 13; Dkt. No. 24, at 10. In context, however, it is clear that the "claims" that are subject to this waiver provision are claims *against* CRG rather than the claims by CRG as in this action: The claims at issue are only those that Dr. Chastain could "assume, pay and discharge" on CRG's behalf. The claims in this action therefore are not barred by the hold-harmless provision in Exhibit B of the marital settlement agreement.

### C. Plaintiffs' Claims Do Not Involve Intrinsic Fraud.

Defendants next argue that plaintiffs' fraud allegations involve intrinsic fraud that cannot be used as a basis for setting aside a final judgment. But as discussed above, plaintiffs do not seek to modify the marital settlement agreement entered as part of the judgment of dissolution by the state court, to reopen those proceedings, or to reconsider that judgment. Whether any allegedly fraudulent conduct by defendants was intrinsic or extrinsic to the state court proceedings therefore has no bearing on the claims at issue in this action.

### D. Plaintiffs' Claims Are Time-Barred, and They Have Not Pleaded Facts That Would Justify Extending the Statute of Limitations.

Defendants finally argue that all of plaintiffs' claims are time barred. The events that serve as the substantive basis for plaintiffs' claims all occurred in or before 2008. Plaintiffs do not dispute that the statute of limitations periods for the various claims are either three or four years. Dr. Chastain asserts, however, that "he did not discover or know of any facts that would have caused a reasonable person to discover" the conduct he says serves as a basis for his claims until November 2021, when he requested and received documents from the former attorney for the Chastain Family Trust. Compl. at 12.

State statutes of limitation and associated tolling rules apply to state law claims in federal court because they are substantive rather than procedural. *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945). One such tolling rule is the discovery rule. Under California law, the "discovery rule delays accrual until the plaintiff has, or should have had, notice of facts sufficient

to put a prudent person on inquiry regarding his or her claim. In a cause of action for fraud, the statute of limitations begins to run after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." *Lauckhart v. El Macero Homeowners Assn.*, 92 Cal. App. 5th 889, 900 (Cal. Ct. App. 2023) (citations omitted).

For purposes of defendants' motion, the Court must accept as true Dr. Chastain's allegation that he did not discover defendants' allegedly fraudulent conduct until November 2021. But the email communications he has submitted controvert the proposition that he *could not* have discovered the information prior to that date. Indeed, his own pleadings suggest that, by late 2008, the couples' trust attorney had copies of the documents that subsequently motivated him to bring this action. Moreover, Dr. Chastain alleges that on October 27, 2008, he thought *he* was the majority owner of CRG but Ms. Howard told him that she was in fact the majority owner and showed him purported 1998 board minutes establishing this. This allegation suggests that Dr. Chastain was on notice and should reasonably have been suspicious of potential fraud with respect to the 1998 minutes of the company as of late 2008. Even if his causes of action did not accrue until 2008, the statute of limitations period had clearly run by the time he filed this action.

Accordingly, all of plaintiffs' claims are time barred and must be dismissed. This dismissal is with leave to amend. If plaintiffs can provide additional facts that explain why Dr. Chastain could not have discovered defendants' alleged misconduct any earlier than November 2021 and why the trust attorney's knowledge (and possession) of the documents at issue should not be imputed to Dr. Chastain, they may file an amended complaint by March 1, 2024.

### E. Ms. Howard's Motion to Strike Is Denied.

Separately, Ms. Howard has moved to strike all of plaintiffs' claims under California's Anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16. That statute provides in relevant part:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

8

Ms. Howard argues that this provision extends to protect litigation filings and discovery, and that plaintiffs' claims stem from Ms. Howard's "litigation-related conduct regarding the underlying divorce dissolution proceedings in 2008, as well as her recent 2021 enforcement of the divorce judgment." Dkt. No. 15, at 10.

As the California Supreme Court has explained, however, "the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail it is one arising from such. In the anti-SLAPP context, the critical consideration is whether the cause of action is *based* on the defendant's protected free speech or petitioning activity." *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002). "In short, the statutory phrase 'cause of action ... arising from' means simply that the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002).

Here, the alleged facts underlying plaintiffs' causes of action are not actions in furtherance of defendants' right to pursue litigation or other speech rights. To the contrary, the conduct underlying plaintiffs' claims involves actions defendants took in relation to CRG, its stock, and its board minutes long before any divorce proceedings. Plaintiffs' claims therefore do not "aris[e] from any act" of Ms. Howard or Ms. Major "in furtherance" of their "right of petition or free speech." Accordingly, Ms. Howard's motion to strike is denied.

## IV. Conclusion

Defendants' motions to dismiss are granted. Any amended complaint must be filed by March 1, 2024. Ms. Howard's motion to strike is denied.

**IT IS SO ORDERED.**

Dated: February 9, 2024

P. Casey Pitts
United States District Judge

9